| AmRisc, LP | **Flood Notice** | AR FN 04 11 |

**If the policy issued by AmRisc, LP excludes Flood, the following shall apply:**

### Flood Exclusion Acknowledgement

I understand the policy issued by AmRisc, LP does NOT provide coverage for loss or damage caused by or resulting from Flood, including any flooding and/or storm surge associated with windstorm events.

I understand that Flood insurance can be purchased elsewhere from a private flood insurer or the National Flood Insurance Program.

It is strongly recommended that Insureds in "Special Flood Hazard Areas" or areas subject to Flooding, including flooding and/or storm surge from windstorm events, obtain Flood coverage.

I also understand that execution of this form does NOT relieve me of any obligation that I may have to my mortgagees or lenders to purchase Flood insurance.

**If the policy issued by AmRisc, LP includes Flood, the following shall apply:**

### Flood Coverage

I understand the policy issued by AmRisc, LP does provide coverage for loss or damage caused by or resulting from Flood, including any flooding and/or storm surge associated with windstorm events.

I understand that loss or damage caused by or resulting from Flood, including any flooding and/or storm surge associated with windstorm events, will be subject to the Flood sublimit stated elsewhere in the policy

I understand that if I do not sign this form that my application for coverage may be denied or that my policy issued by AmRisc, LP may be cancelled or non-renewed. I have read and I understand the information above.

Named Insured:     Port Cargo Service LLC
Account No.:           377201

_____
Policyholder/Applicant's Signature

_____
Print Name

_____
Date

**EXHIBIT**

**1**

## DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

**INSURED:**  <u>Port Cargo Service LLC</u>                          **Account ID:**          377201

**LIMITS:**  <u>As per the attached Authorization or Indication</u>

You are hereby notified that under the Terrorism Risk Insurance Act of 2002, as amended ("TRIA"), that you now have a right to purchase insurance coverage for losses arising out of acts of terrorism, as defined in Section 102(1) of the Act, as amended: The term "act of terrorism" means any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States-to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Any coverage you purchase for 'acts of terrorism' shall expire at 12:00 midnight December 31, 2020, the date on which the TRIA Program is scheduled to terminate unless the TRIA Program is reauthorized or the expiry date of the policy whichever occurs first, and shall not cover any losses or events which arise after the earlier of these dates.

YOU SHOULD KNOW THAT COVERAGE PROVIDED BY THIS POLICY FOR LOSSES CAUSED BY CERTIFIED ACTS OF TERRORISM IS PARTIALLY REIMBURSED BY THE UNITED STATES UNDER A FORMULA ESTABLISHED BY FEDERAL LAW. HOWEVER, YOUR POLICY MAY CONTAIN OTHER EXCLUSIONS WHICH MIGHT AFFECT YOUR COVERAGE, SUCH AS AN EXCLUSION FOR NUCLEAR EVENTS. UNDER THIS FORMULA, THE UNITED STATES PAYS 85% THROUGH 2015; 84% BEGINNING ON JANUARY 1, 2016; 83% BEGINNING ON JANUARY 1, 2017; 82% BEGINNING ON JANUARY 1, 2018; 81% BEGINNING ON JANUARY 1, 2019 AND 80% BEGINNING ON JANUARY 1, 2020; OF COVERED TERRORISM LOSSES EXCEEDING THE STATUTORILY ESTABLISHED DEDUCTIBLE PAID BY THE INSURER(S) PROVIDING THE COVERAGE. YOU SHOULD ALSO KNOW THAT THE TERRORISM RISK INSURANCE ACT, AS AMENDED, CONTAINS A $100 BILLION CAP THAT LIMITS U.S. GOVERNMENT REIMBURSEMENT AS WELL AS INSURERS' LIABILITY FOR LOSSES RESULTING FROM CERTIFIED ACTS OF TERRORISM WHEN THE AMOUNT OF SUCH LOSSES IN ANY ONE CALENDAR YEAR EXCEEDS $100 BILLION. IF THE AGGREGATE INSURED LOSSES FOR ALL INSURERS EXCEED $100 BILLION, YOUR COVERAGE MAY BE REDUCED.

THE PREMIUM CHARGED FOR THIS COVERAGE IS PROVIDED BELOW AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT.

| | |
|---|---|
| ☐ | I hereby elect to purchase coverage for acts of terrorism for a prospective premium of    $46314 |
| ☒ | I hereby elect to have coverage for acts of terrorism excluded from my policy. I understand that I will have no coverage for losses arising from acts of terrorism. |

_____
Policyholder/Applicant's Signature

_____
Print Name    Bishu M. Yagragau

_____
Date    2/22/16

**This notice applies to the following carriers and their respective participation quoted herein:**
Certain Underwriters at Lloyds
Indian Harbor Insurance Company
QBE Specialty Insurance Co.
Steadfast Insurance Company
General Security Indemnity Company of Arizona
United Specialty Insurance Company
Lexington Insurance Company
Princeton Excess and Surplus Lines Insurance Co
International Insurance Company of Hannover

### AmRISC Property Application and Statement of Values



Unless notified otherwise, completion of this form replaces the application, statement of values, hard copy loss runs and formally executed loss letters. This form contains the information submitted to date. The form must be **completed, signed** and returned for underwriter's review and acceptance **within 30 days of inception.** Any inaccurate information identified on the returned form is automatically deemed noted and agreed by underwriters upon receipt, so please return as soon as possible.

**Named Insured:** Port Cargo Service LLC      **Account ID:** 377201
**Mailing Address:** 1450 L and A Road Suite 100    Metairie    LA    70001
**Nature of business:** WAREMIX-Transof/Storage of imports/exports

| Loc No. | Address | City | State | Zip | Building Area (Sq. ft.) | % Automatic Sprinklers | Original Year Built | ISO Const. (1 to 6) | No. of buildings | Initial each Section |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Per Schedule on file | | | | | | | | | |
| 2 | with AmRisc | | | | | | | | | |
| 3 | | | | | | | | | | |
| 4 | | | | | | | | | | |
| 5 | | | | | | | | | | |
| 6 | | | | | | | | | | |
| **Totals:** | | | | | 3,000,461 | 81% | | | 61 | |

If you have any questions regarding the type of construction or other information, discuss with your agent prior to signing this application.

| Valuation: | RCV | RCV | ALS | ALS | ALS | |
|---|---|---|---|---|---|---|
| Coins: | N/A | N/A | 1/6th monthly | 1/6th monthly | 1/6th monthly | |
| Loc No. | Building | BPP | BI | Rents | EE | Loc TIV |
| 1 | Per Schedule on file | | | | | |
| 2 | with AmRisc | | | | | |
| 3 | | | | | | |
| 4 | | | | | | |
| 5 | | | | | | |
| 6 | | | | | | |
| **Totals:** | $97,637,500 | $2,288,168 | $15,886,414 | $0 | | $116,812,082 |

These values often form the basis of the policy's limit of liability. Please review carefully

List ALL losses caused by requested perils for the prior 5 years that did or may exceed the specified threshold. Please add any losses if not listed. Incomplete loss history is considered material and may void coverage.      **Threshold:** $5,000

| DOL | Description/COL | Incurred | Status (O/C) | DOL | Description/COL | Incurred | Status (O/C) |
|---|---|---|---|---|---|---|---|
| 08/25/05 | H. Katrina | $10,135,391 | C | 03/21/12 | Vandalism | $62,830 | C |
| 02/25/08 | H. Gustav | $500,000 | C | | | | |
| 07/01/09 | Damaged Sprinklers | $818 | C | | | | |
| 08/10/11 | Theft AC Units | $17,014 | C | | | | |
| 02/24/11 | Theft AC Units | $7,930 | C | | | | |

| | | | | |
|---|---|---|---|---|
| Has any policy or coverage been declined, cancelled or non-renewed during the prior 3 years (not applicable in MO.) | NO | Has any applicant been convicted of arson in the past 10 years? | NO | |
| Is the applicant a S-Chapter Corporation, partnership or any other type of sole proprietor organization? | NO | Has any bankruptcies or tax credit liens against applicant in prior 6 years? | NO | |
| Does the applicant have any reason that they would not be aware of all losses for the past 5 years? | NO | Has net income been negative for 2 of the past 3 years?  If so, please attach financials or tax returns for 3 years | NO | |
| For apartments, are there any HUD managed or Section 8 developments? | NO | If habitational, is there any aluminum distribution wiring? | NO | |

Explain any Yes answers.  If necessary, add additional pages, which are hereby made part of the application.

**Warranties:**    Warrant fire protection sprinklers are provided throughout all buildings, as noted in AmRisc Application.

Warrant no losses last 5 years on properties to be covered unless specified in AmRisc Application.

Warrant no expiring AmRisc markets that are quoted herein unless exception by the underwriter.

Warrant no EIFS Construction.

List any Discrepancies.  Discrepancies received by underwriters prior to a loss shall be deemed noted and agreed by underwriters.  However, additional premium may be charged as of the date the information is received by underwriters.

Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree.  Severe cancellation penalties apply to CAT exposed property - Form is available upon request.  Carriers' participation may change prior to binding or throughout the coverage period.

**To the best knowledge of the applicant and the producer, the above information is true and complete.  Initial each Section.**

Applicant Printed Name        Title      CFO        Producer Printed Name

Applicant Signature      Date        Producer Signature     Date

Initial Each Section Above        AR APP 11 09

**Surplus Lines Statement**



2/26/2016
Michael Coelho
Swett & Crawford
michael_coelho@swett.com

|  | Policy #: | Company: |
|---|---|---|
| Port Cargo Service LLC | AMR-36298-02 | Certain Underwriters at Lloyds |
| RE: | AMP7520729-03 | Indian Harbor Insurance Company |
| Account ID:   377201 | MSP-10453-07 | QBE Specialty Insurance Co. |
|  | CPP9184255-05 | Steadfast Insurance Company |
|  | 10T029659-04148-16-01 | General Security Indemnity Company of Arizona |
|  | USI-14624-01 | United Specialty Insurance Company |
|  | LEX-084298886-01 | Lexington Insurance Company |
|  | 7DA3CM0003996-01 | Princeton Excess and Surplus Lines Insurance Co |
|  | HAN-14116-01 | International Insurance Company of Hannover |

This policy is being written on a surplus lines basis in a state where the above listed companies are not licensed.

It is your responsibility to arrange for applicable tax filings as well as the payment of the state taxes and/or stamping fee on the policy.

Please acknowledge that you understand this requirement of the Insurance Department for placing surplus lines business out of state by completing the statement below.

Very truly yours,

Brett Dupre
AmRisc, LP

The producer signing below is hereby responsible for applicable surplus lines filings and the payment of state taxes and fees on this policy.

The producer hereby represents that all Due Diligence statements required by law have been satisfactorily completed and obtained and will be kept on file by the filing broker. Such Due Diligence statements shall be transmitted to AmRisc or their assigns upon request.

The producer hereby represents that all Surplus Lines taxes and fees shall be stamped or otherwise identified in a prominent manner on the evidence of coverage in accordance with applicable laws and regulations.

_Wendy Olson_
Producer Signature
Arrangements have been made for such filing (premium by state breakdown attached) and payment with:

Please check if Home State Filing:  [X]  Identify State: _____ LA _____  Please fill in License Information below:

|  | State 1 | State 2 | State 3 | State 4 | Home State |
|---|---|---|---|---|---|
| State | LA |  |  |  |  |
| SL Broker Information: |  |  |  |  |  |
| Name |  |  |  |  |  |
| Company | Swett And Crawford of Georgia, Inc. |  |  |  |  |
| License Number | 461350 |  |  |  |  |
| Street Address | 3350 Riverwood Pkwy SE, Suite 1100 |  |  |  |  |
| City | Atlanta |  |  |  |  |
| State | GA |  |  |  |  |
| ZipCode | 30339 |  |  |  |  |
| Email Address |  |  |  |  |  |
| Phone Number |  |  |  |  |  |

*NOTE: A copy of this executed form must be received in our office as a condition of binding.*

**This Declaration Page is attached to and forms part of Certificate provisions.**

Previous Account No. 324868             Account No. 377201

| | |
|---|---|
| Certain Underwriters at Lloyd's, London | Certificate No. AMR-36298-02 |
| Indian Harbor Insurance Company | Policy No. AMP7520729-03 |
| QBE Specialty Insurance Company | Policy No. MSP-10453-07 |
| Steadfast Insurance Company | Policy No. CPP9184255-05 |
| General Security Indemnity Company of Arizona | Policy No. 10T029659-04148-16-01 |
| United Specialty Insurance Company | Policy No. USI-14624-01 |
| Lexington Insurance Company | Policy No. LEX-084298866-01 |
| Princeton Excess and Surplus Lines Insurance Company | Policy No. 7DA3CM0003996-01 |
| International Insurance Company of Hannover SE | Policy No. HAN-14116-01 |

Name and address of the Insured        Producer

Port Cargo Service, LLC             Swett & Crawford Group

1450 L and A Road, Suite 100       3350 Riverwood Parkway, S.E. Ste 1100

Metairie, LA 70001               Atlanta, GA 30339

Effective From     03/01/2016     to     03/01/2017     ;

Both days at 12:01 a.m. standard time at the Insured's mailing address.

Insurance is effective with: Insurer(s) as stated on Form AR CA - Contract Allocation Endorsement

**This Policy consists of the following coverage parts for which a premium is indicated - This premium may be subject to adjustment.**

COMMERCIAL PROPERTY COVERAGE PART                Premium

| | | | |
|---|---|---|---|
| Certain Underwriters at Lloyd's, London | Property | $ | 195,900 |
| One Lime Street, London EC3M 7HA | TRIA | $ | 0 |
| c/o Thompson Heath and Bond Limited, 107 Leadenhall Street, London EC3A 4AF | | | |
| Indian Harbor Insurance Company | Property | $ | 39,180 |
| 505 Eagleview Blvd., Ste. 100; Dept: Regulatory | TRIA | $ | 0 |
| Exton, PA 19341-1120 | | | |
| QBE Specialty Insurance Company | Property | $ | 150,190 |
| 88 Pine Street, 16th Floor, Wall Street Plaza | TRIA | $ | 0 |
| New York, NY 10005 | | | |
| Steadfast Insurance Company | Property | $ | 78,360 |
| 1400 American Lane | TRIA | $ | 0 |
| Schaumburg, IL 60196 | | | |
| General Security Indemnity Company of Arizona | Property | $ | 45,710 |
| One Seaport Plaza, 199 Water Street | TRIA | $ | 0 |
| New York, NY 10038-3526 | | | |
| United Specialty Insurance Company | Property | $ | 58,770 |
| 1900 L. Don Dodson Drive | TRIA | $ | 0 |
| Bedford, TX 76021 | | | |
| Lexington Insurance Company | Property | $ | 52,240 |
| 100 Summer Street #2000 | TRIA | $ | 0 |
| Boston, MA 02110 | | | |
| Princeton Excess and Surplus Lines Insurance Company | Property | $ | 19,590 |
| 555 College Road East | TRIA | $ | 0 |
| Princeton, NJ 08543 | | | |
| International Insurance Company of Hannover SE | Property | $ | 13,060 |
| Roderbruchstrasse 26, 30655 Hannover, Germany | TRIA | $ | 0 |
| Attn: Ralph Beutter | | | |
| Inspection Fee | | $ | 6,000 |
| **Total** | | $ | 659,000 |

Minimum Earned Premium = $   228,550

Dated    03/15/16    by

Correspondent and/or Program Manager for the Company(ies)
AmRisc, LLC, 20405 SH 249, Suite 430, Houston, TX 77070

State stamp if applicable
CERTCO 09 15

The Correspondent and/or Program Manager is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever.

# SCHEDULE OF FORMS AND ENDORSEMENTS

| Account No.<br>377201 | NAMED INSURED<br>Port Cargo Service, LLC |
|---|---|

### Forms and Endorsements

| | |
|---|---|
| CHANGE END PAGE. | ENDORSEMENT PAGE |
| AR CA 12 14 | CONTRACT ALLOCATION ENDORSEMENT |
| AR COMPASS 01 15. | COMMERCIAL PROPERTY COMPASS FORM |
| COMPASS CCP 09 11 | AmRISC CAT COVERED PROPERTY ENDORSEMENT |
| LLOYDS SOS 10 14 | LLOYDS OF LONDON AMENDATORY ENDT |
| XL SOP 11 12 | INDIAN HARBOR INSURANCE COMPANY AMENDATORY ENDT |
| PN CW 01 0915 | FRAUD NOTICE |
| QBIL-0217 04 15 | QBE SERVICE OF PROCESS ENDT |
| STF-CL-111-A CW 11.08 | STEADFAST INSURANCE COMPANY AMENDATORY ENDT |
| U-GU-873-A CW 6.11 | ZURICH DISCLOSURE STATEMENT |
| U-GU-874-A CW 6.11 | ZURICH DISCLOSURE NOTICE |
| U-GU-1041-A  LMA3100 | OFAC NOTICE and SANCTION LIMITATION CLAUSES |
| VRS COS SOS 09 15 | VARIOUS COMPANIES SERVICE OF SUIT CLAUSES ENDT |
| AR COMPASS SINKHOLE 01 15 | COMPASS SINKHOLE LOSS EXTENSION |
| COEQ 07 04 | CONTRACTORS EQUIPMENT EXTENSION |
| CP 04 38 10 12 | FUNCTIONAL BUILDING VALUATION ENDT |
| LSW1667A 01.01.10-LA SLN 11.13 | LOUISIANA NOTICES |
| AR TRIA EXCL 02 15 | EXCLUSION OF CERTIFIED ACTS OF TERRORISM ENDT |

### Additional Miscellaneous Forms

Forms Schedule

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 1

This endorsement, effective on ___03/01/2016___ , at 12:01 A.M. standard time, forms a part of:

Account No. __377201__

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-36298-02 |
| Indian Harbor Insurance Company Policy No. | AMP7520729-03 |
| QBE Specialty Insurance Company Policy No. | MSP-10453-07 |
| Steadfast Insurance Company Policy No. | CPP9184255-05 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-04148-16-01 |
| United Specialty Insurance Company Policy No. | USI-14624-01 |
| Lexington Insurance Company | LEX-084298866-01 |
| Princeton Excess and Surplus Lines Insurance Company | 7DA3CM0003996-01 |
| International Insurance Company of Hannover SE | HAN-14116-01 |

Issued to:  Port Cargo Service, LLC

By:  See Contract Allocation Endorsement AR CA

Authorized Representative

1. Replacement Cost Valuation shall apply as regards to Real & Personal Property; Except:

    a. Roof coverings for ISO 1 or 2 construction to be Actual Cash Value if originally installed or last fully replaced prior to 1997.

    b. All buildings built prior to 1950 shall be covered at Functional Replacement Cost Valuation basis (per schedule on file with AmRisc) (per form CP 04 38 10 12).

2. Coverage explicitly excludes all flooding, including but not limited to flooding during windstorm events.

3. Coverage excludes all damage directly or indirectly caused by any Named Storm in existence upon AmRisc receipt of written request to bind.

4. This policy excludes loss or damage (including but not limited to the cracking or settling of walls, floors and foundations or collapse of the building), caused by or resulting from the storage of ingots.

5. All Buildings with outstanding damage are excluded.  Contact Underwriter if waiver needed.

6. Any additional premium or return premium under $500 shall be waived.

7. Item 1.k. of form Compass CCP 09 11 "AmRisc Cat Covered Property Endorsement" is deleted in its entirety.

8. Form CP 04 38 10 12 "Functional Building Valuation" is extended to apply to form AR COMPASS 01 15 "Commercial Property Compass Form".

PAGE 2

9. Warrant fire protection sprinklers are provided throughout all
   buildings, as noted in AmRisc Application – Statement of Values.

10. Warrant no losses in the last 5 years on properties to be covered
    unless specified in AmRisc Application – Statement of Values.

11. The complete named insured listing is per schedule on file with
    AmRisc.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:  2/7/2017

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous:  "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below.  The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract.  An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives.  Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters.  This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below.  This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $117,558,425 excess of | Deductibles | AR EXCL NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,229,090 | 7.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,229,090 | 7.0000% | $0.471 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,526,753 | 3.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,526,753 | 3.0000% | $0.471 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | XLA16-Tech | IndianH | AMP7520729-03 | $7,053,506 | 6.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | NW | XLA16-Tech | IndianH | AMP7520729-03 | $7,053,506 | 6.0000% | $0.471 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,877,921 | 5.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $17,633,764 | 15.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | B123016AMR253 | Lloyds | AMR-36298-02 | $11,755,843 | 10.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,877,921 | 5.0000% | $0.471 |
| $117,558,425 excess of | Deductibles | NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $14,694,803 | 12.5000% | $0.471 |
| $117,558,425 excess of | Deductibles | NW | B123016AMR252 | Lloyds | AMR-36298-02 | $14,694,803 | 12.5000% | $0.471 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | STF16-Tech | Steadfast | CPP9184255-05 | $14,107,011 | 12.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | NW | STF16-Tech | Steadfast | CPP9184255-05 | $14,107,011 | 12.0000% | $0.471 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | HAN16 | HAN | HAN-14116-01 | $2,351,169 | 2.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | NW | HAN16 | HAN | HAN-14116-01 | $2,351,169 | 2.0000% | $0.471 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | LEX16 | LEX | LEX-084298866-01 | $9,404,674 | 8.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | NW | LEX16 | LEX | LEX-084298866-01 | $9,404,674 | 8.0000% | $0.471 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | QBE16 | QBE | MSP-10453-07 | $27,038,438 | 23.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | NW | QBE16 | QBE | MSP-10453-07 | $27,038,438 | 23.0000% | $0.471 |
| $117,558,425 excess of | Deductibles | AR EXCL NW | USI16 | USI | USI-14624-01 | $10,580,258 | 9.0000% | $0.103 |
| $117,558,425 excess of | Deductibles | NW | USI16 | USI | USI-14624-01 | $10,580,258 | 9.0000% | $0.471 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts. The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyd's, London |
| | Broad | BR | Indian H | Indian Harbor Insurance Company |
| | Special | SP | | |
| | All Risk excl F/Q | AR | QBE | QBE Specialty Insurance Company |
| | Difference in Conditions | DIC | Steadfast | Steadfast Insurance Company |
| | Windstorm and Hail | WH | | |
| | Named Windstorm | NW | GSI | General Security Indemnity Company of Arizona |
| | All Other Windstorm | AOW | USI | United Specialty Insurance Company |
| | Named Storm Flood | NF | | |
| | Flood | F | LEX | Lexington Insurance Company |
| | All Other Flood | AOF | Peslic | Princeton Excess and Surplus Lines Insurance Company |
| | Earthquake | Q | | |
| | Terrorism Coverages (T3) | T | HAN | International Insurance Company of Hannover |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #        __377201__

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

Account #:    377201

Certificate #:    AMR-36298-02

| Syndicate Number | Syndicate Abbreviation |
| --- | --- |
| 510 | KLN |
| 33 | HIS |
| 1886 | QBP |
| 510 | KLN |
| 2003 | SJC |
| 2987 | BRT |
| 4444 | CNP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 1980 | ISN |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 2007 | NVA |
| 2014 | ACA |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 1183 | TAL |
| 1969 | APL |
| 1225 | AES |
| 2015 | CHN |
| 2987 | BRT |
| 727 | SAM |
| 780 | ADV |
| 1861 | ANV |
| 5820 | JCD |
| 318 | MSP |
| 5820 | JCD |
| 1861 | ANV |
| 727 | SAM |
| 623 | BEA |

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:  3/1/2016

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous:  "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below.  The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract.  An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives.  Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated limits herein.

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters.  This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below.  This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $115,812,082 excess of | Deductibles | AR EXCL, NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,106,846 | 7.0000% | $0.101 |
| $115,812,082 excess of | Deductibles | NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,106,846 | 7.0000% | $0.463 |
| $115,812,082 excess of | Deductibles | AR EXCL NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,474,362 | 3.0000% | $0.101 |
| $115,812,082 excess of | Deductibles | NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,474,362 | 3.0000% | $0.463 |
| $115,812,082 excess of | Deductibles | AR EXCL, NW | XLA16-Tech | IndianH | AMP7520729-03 | $6,948,725 | 6.0000% | $0.101 |
| $115,812,082 excess of | Deductibles | NW | XLA16-Tech | IndianH | AMP7520729-03 | $6,948,725 | 6.0000% | $0.463 |
| $115,812,082 excess of | Deductibles | AR EXCL NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,790,604 | 5.0000% | $0.101 |
| $115,812,082 excess of | Deductibles | AR EXCL NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $14,476,510 | 12.5000% | $0.101 |
| $115,812,082 excess of | Deductibles | AR EXCL NW | B123016AMR253 | Lloyds | AMR-36298-02 | $14,476,510 | 12.5000% | $0.101 |
| $115,812,082 excess of | Deductibles | NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,790,604 | 5.0000% | $0.463 |
| $115,812,082 excess of | Deductibles | NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $14,476,510 | 12.5000% | $0.463 |
| $115,812,082 excess of | Deductibles | NW | B123016AMR252 | Lloyds | AMR-36298-02 | $14,476,510 | 12.5000% | $0.463 |
| $115,812,082 excess of | Deductibles | AR EXCL NW | STF16-Tech | Steadfast | CPP9184255-05 | $13,897,450 | 12.0000% | $0.101 |
| $115,812,082 excess of | Deductibles | NW | STF16-Tech | Steadfast | CPP9184255-05 | $13,897,450 | 12.0000% | $0.463 |
| $115,812,082 excess of | Deductibles | AR EXCL NW | HAN16 | HAN | HAN-14116-01 | $2,316,242 | 2.0000% | $0.101 |
| $115,812,082 excess of | Deductibles | NW | HAN16 | HAN | HAN-14116-01 | $2,316,242 | 2.0000% | $0.463 |
| $115,812,082 excess of | Deductibles | AR EXCL NW | LEX16 | LEX | LEX-084298866-01 | $9,264,967 | 8.0000% | $0.101 |
| $115,812,082 excess of | Deductibles | NW | LEX16 | LEX | LEX-084298866-01 | $9,264,967 | 8.0000% | $0.463 |
| $115,812,082 excess of | Deductibles | AR EXCL NW | QBE16 | QBE | MSP-10453-07 | $26,636,779 | 23.0000% | $0.101 |
| $115,812,082 excess of | Deductibles | NW | QBE16 | QBE | MSP-10453-07 | $26,636,779 | 23.0000% | $0.463 |
| $115,812,082 excess of | Deductibles | AR EXCL NW | USI16 | USI | USI-14624-01 | $10,423,087 | 9.0000% | $0.101 |
| $115,812,082 excess of | Deductibles | NW | USI16 | USI | USI-14624-01 | $10,423,087 | 9.0000% | $0.463 |

ALLOCATION OF LIABILITY:

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts. The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|---|
| | Basic | BA | Lloyds | Certain Underwriters at Lloyd's, London |
| | Broad | BR | Indian H | Indian Harbor Insurance Company |
| | Special | SP | | |
| | All Risk excl F/Q | AR | QBE | QBE Specialty Insurance Company |
| | Difference in Conditions | DIC | Steadfast | Steadfast Insurance Company |
| | Windstorm and Hail | WH | | |
| | Named Windstorm | NW | GSI | General Security Indemnity Company of Arizona |
| | All Other Windstorm | AOW | USI | United Specialty Insurance Company |
| | Named Storm Flood | NF | | |
| | Flood | F | LEX | Lexington Insurance Company |
| | All Other Flood | AOF | Peslic | Princeton Excess and Surplus Lines Insurance Company |
| | Earthquake | Q | | |
| | Tria Coverages | T | HAN | International Insurance Company of Hannover |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | |
| | Non-Certified Terrorism | T2 | | |
| | Equipment Breakdown | EBD | | |
| | Excluding | EXCL | | |
| | Including | INCL | | |
| | Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T1 and T2 | |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #        __377201__

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

| Account #: | 377201 |
| Certificate #: | AMR-36298-02 |

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 510 | KLN |
| 33 | HIS |
| 1886 | QBP |
| 510 | KLN |
| 2003 | SJC |
| 2987 | BRT |
| 4444 | CNP |
| 1980 | ISN |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 2007 | NVA |
| 2014 | ACA |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 1183 | TAL |
| 1225 | AES |
| 2015 | CHN |
| 2987 | BRT |
| 727 | SAM |
| 780 | ADV |
| 1969 | APL |
| 1861 | ANV |
| 5820 | JCD |
| 318 | MSP |
| 5820 | JCD |
| 1861 | ANV |
| 727 | SAM |
| 623 | BEA |



## COMMERCIAL PROPERTY COMPASS FORM

In consideration of the premium charged, this policy covers for direct physical loss of or damage to the Covered Property caused by a covered Cause of Loss occurring during the policy period. Coverage shall be subject to the terms, conditions, definitions, exclusions, limitations and provisions contained herein.

### SECTION I - COVERAGES AND LIMITS OF LIABILITY

Terms which appear in boldface type have special meaning. See Section VIII. POLICY DEFINITIONS.

A.   NAMED INSURED:   First Named Insured (as shown in the Declarations) and/or its affiliated and subsidiary companies and/or corporations as now exist or may hereafter be constituted or acquired including their interests as may appear in partnerships or joint ventures which the Insured is responsible or legally obligated to insure.

B.   LOSS PAYEE(S), LENDER'S LOSS PAYEE(S), MORTGAGEE(S), AND ADDITIONAL INSURED(S): Per Certificates of Insurance (or similar document, list or schedule) on file with AmRisc.   Any Certificates of Insurance issued in connection with this Policy shall be issued solely as a matter of convenience or information (and do not alter or amend coverage) for the addressee(s) or holders(s) of said Certificates of Insurance, except where any Loss Payee(s), Lender's Loss Payee(s), Mortgagee(s), or Additional Insured(s) are named pursuant to the Special Provisions of said Certificate of Insurance.   In the event any Loss Payee(s), Lender's Loss Payee(s), Mortgagee(s), or Additional Insured(s) are so named by contract, this Policy shall be deemed to have endorsed accordingly, subject to all other terms, conditions and exclusions stated herein, and provided the Certificate of Insurance is issued prior to a loss.   Such endorsement adding any Loss Payee(s), Lender's Loss Payee(s), Mortgagee(s), or Additional Insured(s) will be deemed attached to the policy and the Insured will pay any required premium.

C.   COVERAGE TERRITORY:   Coverage under this Policy applies to **Occurrences** within the United States of America and Canada.

D.   LIMIT OF LIABILITY ("Policy Limit"):   The total maximum liability for all insurance companies and Lloyd's of London, London England (all hereinafter, the "Companies" as shown on the Policy Declarations and Contract Allocation Endorsement pages) in any one **Occurrence** as a result of all covered loss or damage regardless of the number of **Locations**, coverages, or perils insured under this Policy shall not exceed the lesser of: 1. (a, b, or c; as indicated by an 'X'); OR 2.:

  1.   a.   ___      As respects each **Location** insured by this Policy: _____ % of the total combined stated values for all categories of Covered Property and Time Element exposures shown for that **Location** on the latest Statement of Values or other documentation on file with AmRisc;

        b.   X      As respects each item (e.g. Building, Personal Property, Time Element), insured by this Policy: __100.00__ % of the total stated value shown for that item on the latest Statement of Values or other documentation on file with AmRisc;

    c.  \_\_\_ As respects each **Location** insured by this Policy: _____% of the total combined stated values for all categories of Covered Property shown for that **Location**; and separately, _____ % of the total combined stated values for Time Element shown for that **Location**; all on the latest Statement of Values or other documentation on file with AmRisc;

OR

    2. $ 115,812,082      maximum limit of liability.

E. SUBLIMITS OF LIABILITY: Sublimits of Liability stated below are included within and not in addition to the Limit of Liability shown in Paragraph D., above. These Sublimits of Liability and the specified limits of liability contained in the forms, endorsements and extensions attached, if any, are per **Occurrence**, unless otherwise indicated.

If the words "NOT COVERED" are shown, instead of a limit, sublimit amount or number of days, or if a specified amount or number of days is not shown corresponding to any coverage or Covered Cause of Loss, then no coverage is provided for that coverage or Covered Cause of Loss.

1. **Earth Movement:**

    $ NOT COVERED     Annual Aggregate, for all insured **Locations**, combined; however, further subject to:

    a. $ NOT COVERED     Annual Aggregate for all **Earth Movement** in California, Alaska and Hawaii, combined.

    b. $ NOT COVERED     Annual Aggregate for **Pacific Northwest States**, combined.

    c. $ NOT COVERED     Annual Aggregate for **New Madrid Earthquake Zone Counties**, combined.

2. **Flood:**

    $ NOT COVERED     Annual Aggregate, for all insured **Locations**, combined; however, further subject to:

    a. $ NOT COVERED     Annual Aggregate as respects **Flood** for all **Locations** combined, wholly or partially within **Special Flood Hazard Areas**.

3. **Named Storm:**

    $ N/A     Regardless of the number of Coverages, **Locations** or Perils involved including, but not limited to, wind, wind gusts, tornados, cyclones, hail, or rain, all arising out of a **Named Storm**, the maximum amount the Companies will pay per **Occurrence** as respects all covered loss or damage.

In the event a loss involves more than one of the above perils (E.1. - E.3.) and provided it is a covered peril(s), each peril's sublimit above shall be considered a separate sublimit apart from the other peril's sublimits above.

However, the Sublimits below (E.4. - E.35.) shall be considered sublimits within the above applicable covered peril sublimits (E.1. - E.3.).

4. Accounts Receivable:     $1,000,000

5. Builder's Risks:     $1,000,000     Property in the Course of Construction or renovation; excluding Soft Costs.

6.  Builder's Risk Soft Costs:          $100,000

7.  Civil or Military Authority:        30    Days, but in no event will the Companies pay more than $1,000,000.

8.  Contingent Time Element:            60 Days    or $1,000,000;        whichever is less.

9.  Debris Removal: The Companies' total liability for Debris Removal per **Occurrence** for all insured **Locations** sustaining covered direct physical loss or damage payable under this Policy shall not exceed the lesser of:

    a. 25%    of the amount of covered physical loss or damage to covered Property (excluding Time Element), payable for all insured **Locations**;  or

    b. $5,000,000.

10. **Electronic Data and Media:**      $500,000

11. Errors and Omissions:               $100,000;     subject to all other sublimits contained herein.

12. Extended Period of Indemnity:       180 Days

13. Extra Expense/Expediting Expense:$INCLUDED

14. Fine Arts:                          $250,000

15. Fire Brigade Charges:               $100,000

16. **Fungus, Molds, Mildew, Spores, Yeast**  $15,000        Annual Aggregate

17. Ingress/Egress Coverage:                30 Days    ; but in no event will the Companies pay more than $250,000.

18. Leased or Rented Equipment:         $100,000;     but not to exceed:
                                        $25,000       any one item.

19. Leasehold Interest:                 $100,000

20. Limited Pollution Coverage:         $100,000        Annual Aggregate

21. Lock Replacement:                   $25,000

22. **Miscellaneous Unnamed Locations:**  $100,000;        subject to all other sublimits contained herein.

23. Newly Acquired Property:            60 Days    but in no event will the Companies pay more than  $1,000,000, subject to all other sublimits contained herein.

24. Ordinance or Law:
    a. Coverage A: Included in **Building** Limit.
    b. Coverage B: 20%   of the scheduled **Building** value, not to exceed  $5,000,000.
    c. Coverage C: Included with Coverage B.
    d. Coverage D: Included in the Time Element (if covered).

25. Ordinary Payroll:                   30 Days    (provided values are included in the reported Time Element Values).

26. Plants, lawns, trees or shrubs:     $100,000

    Any one plant, lawn, tree or shrub:  $25,000

27. Professional Fees:              $100,000          per occurrence and annual aggregate for all claims combined.

28. Reclaiming, restoring or repairing land improvements: $10,000

29. Reward Reimbursement:           $25,000

30. Royalties:                      $100,000

31. Service Interruption:           $250,000;          however, a qualifying period of 72 hours applies to this coverage (if Time Element is covered).

32. Spoilage:                       $25,000

33. Time Element Monthly Limitation: 1/6   Monthly; applicable to all Time Element coverages, except those that have a sublimit in this Paragraph E.

34. Transit:                        $100,000

35. **Valuable Papers and Records:**  $1,000,000

F.  MAXIMUM AMOUNT PAYABLE:  In the event of a Covered Cause of Loss hereunder, total liability of the Companies shall be limited to the least of the following:

   1.  The actual adjusted amount of loss, less applicable deductible(s), or

   2.  The limit of liability or applicable sublimit of liability shown in this Policy or endorsed hereon.

G.  DEDUCTIBLE: Each claim for loss or damage under this Policy shall be subject to a per **Occurrence** deductible amount of:

   1) $ 25,000        Property Damage & Time Element, combined; OR

   2) $   N/A         Property Damage; and

      $   N/A         Time Element.

   unless a specific deductible shown below applies for the indicated peril(s).

   1.  **Flood:**

       a.  $  N/A          Per **Occurrence**, except as follows in Subparagraph G.1.b.:

       b.  As respects **Locations** wholly or partially within **Special Flood Hazard Areas:**

           Maximum available limits with National Flood Insurance Program (NFIP), whether purchased or not; plus $  N/A          per Occurrence.

   2.  **Earth Movement:**

       a.  $  N/A          Per **Occurrence**, except as follows in Subparagraph G.2.b., G.2.c. or G.2.d.:

       b.  N/A  % of the **TIV** at each **Location** involved in the loss or damage, subject to a minimum of $  N/A          any one **Occurrence**, as respects **Locations** in California, Hawaii and Alaska;

       c.  N/A  % of the **TIV** at each **Location** involved in the loss or damage, subject to a minimum of $  N/A          any one **Occurrence**, as respects **Locations** in the **Pacific Northwest States;**

    d. N/A   % of the **TIV** at each **Location** involved in the loss or damage, subject to a minimum of $ N/A any one **Occurrence**, as respects **Locations** in the **New Madrid Earthquake Zone Counties.**

   3.  **Windstorm or Hail:**

     a.  $ 100,000   Per Occurrence; OR

       $ N/A   Per Occurrence, Per Location;

except as follows in Subparagraphs G.3.b. or G.3.c.:

   b. N/A   % of the **TIV** at each **Location** involved in the loss arising out of a **Named Storm**, subject to a minimum deductible of $ N/A any one **Occurrence**; as respects **Locations** in: N/A.

   c. 5.0   % of the **TIV** at each **Building** involved in the loss arising out of a **Named Storm**, subject to a minimum deductible of $100,000 any one **Occurrence**; as respects **Locations** in: All Locations, as per Statement of Values on file with AmRisc.

The following two paragraphs apply to Subparagraphs G.1. through G.3., inclusive:

   In each case of loss or damage covered by this Policy, the Companies shall not be liable unless the Insured sustains loss or damage in a single **Occurrence** greater than any applicable deductible described herein and then, if this is a quota share Policy, only for each Companies' share in excess of such deductible.  When this Policy covers more than one **Location**, the deductible shall apply against the total loss or damage covered by this Policy in any one **Occurrence**, unless otherwise stated in this Paragraph G.

   If two or more peril deductible amounts provided in this Policy apply to a single **Occurrence**, the total to be deducted shall not exceed the largest deductible applicable, unless otherwise stated in this Policy.  However, if a Time Element deductible and another deductible apply to a single occurrence, then the Companies shall apply both deductibles to the Occurrence.

## SECTION II - COVERED CAUSES OF LOSS

A.  COVERED CAUSES OF LOSS:  This Policy insures against all risks of direct physical loss or damage to Covered Property, except as excluded.

B.  EXCLUSIONS:  The Companies do not insure for loss or damage caused directly or indirectly by any of the following.  Such loss or damage is excluded regardless of any other cause or event contributing concurrently or in any sequence to the loss or damage.  These exclusions apply whether or not the loss event results in widespread damage or affects a substantial area:

   1.  NUCLEAR, BIOLOGICAL, CHEMICAL AND RADIOLOGICAL EXCLUSIONS

     a.  The Companies will not pay for any loss, damage, cost or expense, whether real or alleged, that is caused, results from, is exacerbated by or otherwise impacted by, either directly or indirectly, any of the following:

       1)  Nuclear Hazard - including, but not limited to, nuclear reaction, nuclear detonation, nuclear radiation, radioactive contamination and all agents, materials, products or substances, whether engineered or naturally occurring, involved therein or released thereby;

    2) Biological Hazard – including, but not limited to, any biological and/or poisonous or pathogenic agent, material, product or substance, whether engineered or naturally occurring, that induces or is capable of inducing physical distress, illness, or disease;

    3) Chemical Hazard – including, but not limited to, any chemical agent, material, product or substance;

    4) Radioactive Hazard – including, but not limited to, any electromagnetic, optical, or ionizing radiation or energy, including all generators and emitters thereof, whether engineered or naturally occurring.

b.   The provisions of subparagraphs a.2) and a.3) will not apply where the agent, material, product or substance at issue is utilized in the course of business by an Insured.

c.   Only if and to the extent required by state law, the following exception to the exclusions in Paragraph a. applies:

If a hazard excluded under Paragraph a. results in Fire (and provided Fire is a Covered Peril), the Companies will pay for the loss, damage, cost or expense caused by that Fire, subject to all applicable policy provisions including the Limit of Insurance on the affected Covered Property. Such coverage for Fire applies only to direct loss or damage by Fire to Covered Property. This coverage does not apply to insurance provided under Time Element, including but not limited to, Business Income, Rental Value or Extra Expense coverage or endorsements that apply to those coverages.

2.  a.   War, hostile or warlike action in time of peace or war, whether or not declared, including action in hindering, combating, or defending against an actual, impending, or expected attack:

    i.   By any government or sovereign power (de jure or de facto) or by any authority maintaining or using military, naval, or air forces; or

    ii.  By military, naval, or air forces; or

    iii. By an agent of any such government, power, authority, or force;

  b.   Any weapon of war employing atomic fission or radioactive force, whether in time of peace or war, whether or not its discharge was accidental; or

  c.   Insurrection, rebellion, revolution, civil war, usurped power, or action taken by governmental authority in hindering combating, or defending against such **Occurrence**, seizure or destruction;

Including any consequence of Subparagraphs 2.a., 2.b., or 2.c. above.

3.   Any fraudulent or dishonest act or acts, intended to result in financial gain, committed alone or in collusion with others: by any proprietor, partner, director, trustee, officer or employee of the Insured (including leased employees), or by any party to whom the property may have been entrusted (other than a carrier for hire).

However, a willful act of destruction by an employee of the Insured (including leased employees), or others listed above without the knowledge of the Insured is covered.

4.   Asbestos

  a)   The Companies will not pay for loss, damage or remediation expenses caused by or resulting from the presence of asbestos or asbestos-containing materials. As used in this exclusion, remediation expenses are expenses incurred for or in connection with the investigation, monitoring, removal, disposal, treatment, abatement or neutralization of asbestos or asbestos-containing materials to the extent required by federal, state or local laws, regulations or statutes or any subsequent amendments thereof to address asbestos.

b) However, this Asbestos exclusion does not apply to the extent that coverage is provided under the following:

This policy insures asbestos located within an insured **Building** or structure, and then only that part of the asbestos which has been physically damaged during the policy period by one of these Listed Perils:

FIRE; SMOKE; EXPLOSION; LIGHTNING; WINDSTORM; HAIL; DIRECT IMPACT OF VEHICLE, AIRCRAFT OR VESSEL; RIOT OR CIVIL COMMOTION; VANDALISM OR MALICIOUS MISCHIEF; ACCIDENTAL DISCHARGE OF FIRE PROTECTIVE EQUIPMENT

This coverage is subject to all limitations in the policy and, in addition, to each of the following specific limitations:

a. The said **Building** or structure must be insured under this policy for damage by this Listed Peril.

b. The Listed Peril must be the immediate, sole cause of the damage to the asbestos.

c. The Insured must report to the Companies the existence and cost of the damage as soon as practicable after the Listed Peril first damaged the asbestos. However, this policy does not insure any such damage first reported to the Companies more than 12 (twelve) months after the expiration, or termination, of the policy period.

d. Insurance under this policy in respect of asbestos shall not include any sum relating to:

(1) any faults in the design, manufacture or installation of the asbestos;
(2) asbestos not physically damaged by a Listed Peril including any governmental or regulatory authority direction or request of whatsoever nature relating to undamaged asbestos.

5. Pollution/Contamination Exclusion
   NMA 2340 11/24/1988 (USA date) - amended

   Seepage And/Or Pollution And/Or Contamination Exclusion

   This Policy does not insure:

   (a) any loss, damage, cost or expense, or

   (b) any increase in insured loss, damage, cost or expense, or

   (c) any loss, damage, cost, expense, fine or penalty, which is incurred, sustained or imposed by order, direction, instruction or request of, or by any agreement with, any court, government agency or any public, civil or military authority, or threat thereof, (and whether or not as a result of public or private litigation), which arises from any kind of seepage or any kind of pollution and/or contamination, or threat thereof, whether or not caused by or resulting from a peril insured, or from steps or measures taken in connection with the avoidance, prevention, abatement, mitigation, remediation, clean-up or removal of such seepage or pollution and/or contamination or threat thereof.

   The term "any kind of seepage or any kind of pollution and/or contamination" as used in this clause includes (but is not limited to):

   (a) seepage of, or pollution and/or contamination by, anything, including but not limited to, any material designated as a "hazardous substance" by the United States Environmental Protection Agency or as a "hazardous material" by the United States Department of Transportation, or

defined as a "toxic substance" by the Canadian Environmental Protection Act for the purposes of Part II of that Act, or any substance designated or defined as toxic, dangerous, hazardous or deleterious to persons or the environment under any other Federal, State, Provincial, Municipal or other law, ordinance or regulation; and

(b) the presence, existence, or release of anything which endangers or threatens to endanger the health, safety or welfare of persons or the environment.

6. Delay, loss of market, or loss of use.

7. Indirect, remote, or consequential loss or damage.

8. Mysterious disappearance or loss or shortage disclosed on taking inventory or any unexplained loss.

9. Voluntary parting with title or possession of any property, including voluntary parting which is the result of any fraudulent scheme, trick, devise, false pretenses, or any other similar act.

10. Faulty workmanship, material, construction, installation, or design from any cause; or faulty planning, zoning, development, surveying or siting; all unless physical damage not excluded by this Policy ensues, in which event, this Policy will cover only such resulting damage.

11. Loss attributable to manufacturing or processing operations which result in damage to stock or materials while such stock or materials are being processed, manufactured, tested or otherwise being worked upon; all unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

12. Deterioration, depletion, rust, corrosion, erosion, wet or dry rot, decay, evaporation, leakage, wear and tear, animal, insect or vermin damage, inherent vice or latent defect, shrinkage or change in color, flavor, texture or finish, extremes or changes of temperature damage or changes in relative humidity damage, all whether atmospheric or not; all unless physical damage not excluded by this Policy results, in which event, this Policy shall cover only such resulting damage.

13. Settling, cracking, shrinking, bulging, or expansion of pavements, foundations, walls, floors, or ceilings; all unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage.

14. Lack of incoming electricity, fuel, water, gas, steam, refrigerant, or outgoing sewerage, or incoming or outgoing data or telecommunications, all of which are caused by an **Occurrence** away from the **Location**(s) insured under this Policy, unless specifically provided herein and only to the extent provided herein.

15. Costs, expenses, fines or penalties incurred or sustained by or imposed on the Insured at the order of any government agency, court or other authority arising from any cause whatsoever.

16. Electronic Data Exclusion

a. This policy does not insure loss, damage, destruction, distortion, erasure, corruption, alteration, loss of use, reduction in functionality, cost, or expense resulting from "Computer Virus".

"Computer Virus" means a set of corrupting, harmful or otherwise unauthorized instructions or code including a set of maliciously introduced unauthorized instructions or code, programmatic or otherwise, that propagate themselves through a computer system or network of whatsoever nature. "Computer Virus" includes, but is not limited to, "Trojan Horses," "worms" and "time or logic bombs".

b. However, in the event that a **Defined Cause of Loss** results from any of the matters described in paragraph a. above, this Policy, subject to all its terms, conditions and

exclusions, will cover physical damage occurring during the policy period to property insured by this Policy directly caused by such **Defined Cause of Loss**.

17. Electronic Date Recognition Exclusion (EDRE)
    NMA 2802 12/17/1997 (USA Date) - amended

    This policy does not cover any loss, damage, cost, claim or expense, whether preventative, remedial or otherwise, directly or indirectly arising out of or relating to:

    a.  the calculations, comparison, differentiation, sequencing or processing of data involving the date change to the year 2000, or any other date change, including leap year calculations, by any computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not; or

    b.  any change, alteration or modification involving the date change to the year 2000, or any other date change, including leap year calculations, to any such computer system, hardware, program or software and/or any microchip, integrated circuit or similar device in computer equipment or non-computer equipment, whether the property of the Insured or not.

    This clause applies regardless of any other cause or event that contributes concurrently or in any sequence to the loss, damage, cost, claim or expense.

18. Loss or damage in the form of, caused by, arising out of, contributed to, or resulting from **Fungus, Mold(s), Mildew, Spores or Yeast;** or any spores or toxins created or produced by or emanating from such **Fungus, Mold(s), Mildew, Spores or Yeast**.

    However, this exclusion shall not apply provided the Insured establishes that the fungus, mold(s), mildew, spores or yeast is a direct result of a covered loss from a **Defined Cause of Loss** or **Flood** (provided **Flood** is a covered peril) and provided this loss is reported to the Companies within twelve (12) months from the expiration date of the policy. The Companies' liability shall then be limited to the sublimit stated under Section I.E.16.

19. Loss or damage caused by hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel,...or an electrical insulation breakdown test of any type of electrical equipment, unless physical damage not excluded by this Policy results, in which event, this Policy will cover only such resulting damage.

20. Loss or damage arising out of:

    a.  **Building** or any part of a **building** that is in danger of falling down or caving in,

    b.  Any part of a **building** that has separated from another part of the **building**, or

    c.  A **building** or any part of a **building** that is standing which shows evidence of cracking, bulging, sagging, bending, leaning, settling, shrinkage or expansion.

    However, the Companies do cover loss or damage arising out of **Collapse**.

21. Loss or damage caused by **Equipment Breakdown** to vehicles (or any equipment on vehicles), draglines, cranes, excavation or construction equipment.

22. Terrorism Exclusion
    NMA 2920; 10/8/01 (USA Date) – amended

    This policy excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any act of terrorism regardless of any other cause or event contributing concurrently or in any other sequence to the loss.

For the purpose of this exclusion, an "act of terrorism" means an act, including but not limited to the use of force or violence and/or the threat thereof, of any person or group(s) of persons, whether acting alone or on behalf of or in connection with any organization(s) or government(s), committed for political, religious, ideological or similar purposes including the intention to influence any government and/or to put the public, or any section of the public, in fear.

This clause also excludes loss, damage, cost or expense of whatsoever nature directly or indirectly caused by, resulting from or in connection with any action taken in controlling, preventing, suppressing or in any way relating to any act of terrorism.

If the Companies allege that by reason of this exclusion, any loss, damage, cost or expense is not covered by this insurance, the burden of proving the contrary shall be upon the Insured.

In the event any portion of this exclusion is found to be invalid or unenforceable, the remainder shall remain in full force and effect.

23. Exclusion Of Loss Due To Virus Or Bacteria (AR 01 40 07 - amended)

    a.  The exclusion set forth in subparagraph b. below, applies to all coverage under all forms and endorsements that comprise this Policy, including but not limited to forms or endorsements that cover property damage to **buildings** or personal property and forms or endorsements that cover business income extra expense or action of civil authority.

    b.  The Companies will not pay for loss or damage caused by or resulting from any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.

However, this exclusion does not apply to loss or damage caused by or resulting from **fungus, mold(s), mildew, spores or yeast**.  Such loss or damage is addressed in a separate exclusion in this Policy.

    c.  With respect to any loss or damage subject to the exclusion in subparagraph b. above, such exclusion supersedes any exclusion relating to pollutants or contaminants.

    d.  The terms of the exclusion in subparagraph b. above, or the inapplicability of this exclusion to a particular loss, do not serve to create coverage for any loss that would otherwise be excluded by this Policy.

24. Water under the ground surface pressing on, or flowing or seeping through:

    a. Foundations, walls, floors or paved surfaces;

    b. Basements, whether paved or not;

    c. Doors, windows or other openings.

25. Rain, snow, ice or sleet to personal property in the open.

26. Loss or damage by rain, snow, or dust, whether driven by wind or not, to the interior of any **building** or structure, or the property inside the **building** or structure, unless the **building** or structure first sustains wind or hail damage to its roof or walls through which the rain, snow,   sand or dust enters.

27. Seizure or destruction of property by order of governmental authority.  However, coverage is provided for loss or damage caused by or resulting from acts of destruction ordered by governmental authority and taken at the time of a fire to prevent its spread, if the fire is a Covered Cause of Loss.

28. **Equipment Breakdown** (see Definitions).

29. Hot Testing; which means:

   a.  Commissioning or performance testing;

   b.  Any testing involving the introduction of flammable or explosive feedstock beginning when such feedstock is first introduced; or

   c.  The rotational operation of any turbine or generator, except for rotational operation by turning gear only when the turbine or generator is not energized.

   Hot Testing does not mean the commissioning or performance testing of:

   a.  Heating;

   b.  Cooling;

   c.  Air handling; or

   d.  Electrical,

   systems that are part of construction works.

30. Loss, damage, cost, or expense covered under any express or implied guarantee or warranty from a manufacturer or supplier, whether or not such manufacturer or supplier is an Insured under this policy.

31. Named Storm Restriction: This policy shall exclude all damage directly or indirectly caused by a **Named Storm** that is in existence at the time that written request to bind is given to AmRisc, until coverage for such **Named Storm** has been bound by written agreement between AmRisc and the First Named Insured.  In addition, no increase in limits or additional coverages will be provided for any insured **Location**(s) threatened by such **Named Storm**, until coverage for such **Named Storm** has been bound by written agreement between AmRisc and the First Named Insured.


# SECTION III - COVERED PROPERTY


A.  COVERED PROPERTY:  Unless otherwise excluded, this Policy covers the following property while on the described **Locations** and within 1,000 feet thereof:

   1.  Real property, including new **buildings** and additions under construction or renovation at an insured **Location**, Personal property and Equipment in which the Insured has an insurable interest;

   2.  Improvements and betterments to **buildings** or structures in which the Insured has an insurable interest.  Such Improvements and Betterments shall be considered Real property.

   3.  At the option of the Insured, Personal property, other than motor vehicles, of officers and employees of the Insured;

   4.  Personal property of others, other than motor vehicles, in the care, custody and control of the Insured, which the Insured is under obligation to keep insured for physical loss or damage of the type insured against by this Policy;

5.  Contractor's and vendor's interests in property covered to the extent of the Insured's liability imposed by law or assumed by written contract prior to the date of direct physical loss or damage. However, such interests will not extend to any Time Element coverage provided by this Policy.

6.  Real and Personal Property and related Time Element Loss at **Miscellaneous Unnamed Location(s)** owned by the Insured or for which the Insured is legally responsible for, and within the Coverage Territory of the policy.  This shall also include Personal Property of the Insured while temporarily at **Miscellaneous Unnamed Location(s)**, including Property on Exhibitions and Salesman's Samples.

B.  PROPERTY EXCLUDED:  This Policy does not insure against loss or damage to:

1.  Currency, money, notes, securities, stamps, furs, jewelry, precious metals, precious stones, and semi-precious stones.  This exclusion does not apply to precious metals and precious stones used by the Insured for industrial purposes;

2.  Air, **Land**, land values, and any substance in or on **Land**, or any alteration to the natural condition of the **Land**.  However, this exclusion does not apply to the cost of reclaiming, restoring or repairing land improvements, provided the loss is from a **Defined Cause of Loss**;

3.  Water, except water which is normally contained within any type of tank, piping system or other process equipment;

4.  Standing timber, growing crops, plants, lawns, trees, shrubs or animals.  However, this exclusion does not apply to plants, lawns, trees or shrubs, provided the loss is from a **Defined Cause of Loss**;

5.  Pavements, paved surfaces, walkways, drainage systems or roadways;

6.  Vehicles licensed for highway use, watercraft, aircraft and railroad rolling stock;

7.  Property sold by the Insured under conditional sale, trust agreement, installment plan or other deferred payment plan after delivery to customers;

8.  Property in transit, except expressly as provided elsewhere in this Policy;

9.  Underground mines or mining shafts and any related mining property and equipment while underground; or underground pipes, flues or drains; or any property below the lowest basement floor;

10. Offshore oil rigs, platforms and property contained therein or thereon;

11. Satellites and spacecraft;

12. Dams, dikes, levees, bridges, tunnels, reservoirs, flood retaining walls and canals; except when scheduled as such on the Statement of Values on file with AmRisc;

13. Docks, piers and wharves; except when scheduled as such on the Statement of Values on file with AmRisc;

14. Transmission and distribution lines, including support structures, of every type and description; except when located on the insured premises or within one-thousand (1000) feet thereof;

15. Personal property in the care, custody, and control of the Insured when the Insured is acting as a bailee, a warehouseman, or a carrier for hire;

16. Contraband, or property in the course of illegal transportation or trade.

17. Property of Unit Owners within individual Condominium units, consisting of:

a.  Personal property and Improvements & Betterments; and

    b.  Floor coverings, wall coverings and ceiling coverings which only serve that unit.

However, this exclusion shall not apply to:

    c.  Appliances; refrigerators; air conditioning equipment (including air conditioning compressors); heating equipment; cooking ranges; dishwashers; clothes washers/dryers; and fixtures, installations or permanent additions initially installed in accordance with the original plans and specifications; all contained within the units; or

    d.  Any property within the individual unit (including the property excluded in a. and b., above) that the Condominium Association Agreement requires be covered by the Condominium Association.

## SECTION IV - VALUATION

Except as otherwise provided in this Paragraph, adjustment of loss or damage under this Policy shall be valued at the cost to repair or replace (whichever is less) at the time and place of the loss with materials of like kind and quality, without deduction for depreciation and obsolescence. The Insured may elect to rebuild on another site, provided that, such rebuilding does not increase the amount of loss or damage that would otherwise be payable to rebuild at the same site. However, if the property is not repaired, rebuilt or replaced as soon as reasonably possible after the loss or damage, the value of the property will be determined on an **Actual Cash Value** basis. In the event the Insured elects to have the loss or damage settled on an **Actual Cash Value** basis, the Insured may still make a claim on a replacement cost basis, provided the Insured notifies the Companies within 180 days after the loss or damage.

Unless otherwise endorsed hereon, the property, as described below, will be valued as follows:

A.  Stock in process: the cost of raw materials and labor expended, plus the proper proportion of overhead charges.

B.  Finished goods manufactured by the Insured: the regular cash selling price at the location where the loss occurs, less all discounts and charges to which the merchandise would have been subject had no loss occurred

C.  Raw materials, supplies and other merchandise not manufactured by the Insured: the replacement cost.

D.  **Valuable Papers and Records**: the cost to replace or restore the property with like kind and quality including the cost to research, gather and assemble information. If not replaced, the Companies will only pay the blank value of the valuable papers or records.

E.  **Electronic Data and Media**: the cost of the blank media, plus the costs of copying the **Electronic Data and Media** from back-up or from originals of a previous generation. These costs will not include research and engineering nor any costs of recreating, gathering or assembling such **Electronic Data and Media**. If the **Electronic Data and Media** is not repaired, replaced or restored, the basis of valuation shall be the cost of the blank media. However, this Policy does not insure any amount pertaining to the value of such **Electronic Data and Media** to the Insured or any other party, even if such **Electronic Data and Media** cannot be recreated, gathered or assembled.

F.  Jigs and fixtures, dies, small tools, patterns, employees' personal property and personal property of third parties: the replacement cost if replacement cost values have been reported to the Companies and if actually replaced; otherwise the **Actual Cash Value**, but not to exceed the cost to repair or replace the property with material of like kind and quality.

G.  Leasehold improvements and betterments:

    1.  If repaired or replaced at the expense of the Insured within two (2) years after the date of the loss, the cost to repair or replace the damaged improvements and betterments.

2. If not repaired or replaced within two (2) years after the date of the loss, a proportion of the Insured's original cost.

The Companies will determine the proportionate value as follows:

a. Multiply the original cost by the number of days from the loss or damage to the expiration of the lease; and

b. Divide the amount determined in Subparagraph a. above by the number of days from the installation of improvements to the expiration of the lease.

If the Insured's lease contains a renewal option, the expiration of the renewal option period will replace the expiration of the lease in this procedure; or

3. Nothing, if others pay for repairs or replacement.

H. Fine Arts:

1. If there is no Agreed Value Schedule on file with AmRisc, then the lesser of:

a. The cost to repair or replace the fine art, or

b. The appraised value, which will be determined as of the time of the loss.

2. If there is an Agreed Value Schedule on file with AmRisc, then the Agreed Value Schedule on file with AmRisc.

3. If a Fine Arts article is part of a pair or set, and a physically damaged article cannot be replaced, or cannot be repaired or restored to the condition that existed immediately prior to the loss, the Companies will be liable for the lesser of the full value of such pair or set or the Agreed Value, as per the schedule on File with AmRisc. The Insured will surrender the pair or set to the Companies.

I. Accounts Receivable: the amount owed the Insured which the Insured is unable to collect from customers, and shall include:

1. Any collection expenses over and above the normal collection costs;

2. Interest charges on any loan to offset impaired collections pending repayment of such sums that cannot be collected; and

3. Other reasonable and necessary expenses incurred by the Insured to recreate Accounts Receivable Records.

Unearned interest and service charges on deferred payment accounts and normal credit losses on bad debts shall be deducted in determining the recovery hereunder.

After payment of loss by the Companies, all amounts recovered by the Insured on Accounts Receivable for which the Insured has been paid will belong to and will be paid to the Companies by the Insured up to the total amount of loss paid by these Companies. All recoveries in excess of such amounts will belong to the Insured.

In the event it is possible to reconstruct the Insured's Accounts Receivable Records after they have been physically lost or damaged, so that no shortage in collection of Accounts Receivable is sustained, the Companies shall only be liable for the costs of the material and the time required to reconstruct such records, with the exercise of due diligence and dispatch, but only to the extent that such amounts are not covered by any other insurance.

J. Property for Sale: If, at the time of the loss, any real property is being offered for sale, the loss or damage to such property will be valued at the lesser of:

   1.  The cost to repair or replace the damaged property, or

   2.  The price at which the property is offered for sale less the market value of the Land.

K.  Property in Transit:  In case of loss, the basis of adjustment shall be:

   1.  Property shipped to or for the account of the Insured: the actual invoice to the Insured, together with such costs and charges as may have accrued and become legally due on such property;

   2.  Property which has been sold by the Insured and has been shipped to or for account of the purchaser (if covered hereunder): the amount of the Insured's selling invoice, including prepaid or advanced freight;

   3.  Property of others not under invoice: the actual market value at the point of destination on the date of the **Occurrence**, less any charges saved which would have become due and payable upon delivery at destination; or

   4.  Property of the Insured not under invoice: valued in accordance with the valuation provisions of this Policy applying at the location from which such property is being transported, less any charges saved which would have become due and payable upon delivery at such destination.

L.  Contractor's equipment and vehicles (if covered): **Actual Cash Value**, unless an agreed value applies.

M.  Catalyst: **Actual Cash Value**.

N.  For all other property:  At replacement cost if actually replaced; otherwise, the **Actual Cash Value**, but not to exceed the cost to repair or replace the property with material of like kind and quality.

With respect to Subparagraphs A. through N., inclusive, unless otherwise specifically stated, the Companies will compute the valuations at the time and place of the loss.

## SECTION V - TIME ELEMENT COVERAGE
### GROSS EARNINGS

This Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Covered Property.

A.  ACTUAL LOSS SUSTAINED:  In the event the Insured is prevented from producing goods or from continuing its business operations or services and is unable:

   1.  To make up lost production within a reasonable period of time (not to be limited to the period during which production is interrupted), or

   2.  To continue business operations or services,

all through the use of any property or service owned or controlled by the Insured, or obtainable from other sources, whether the property or service is at an insured Location or through working extra time or overtime at any other substitute location(s), including any other location(s) acquired for the purpose, then the Companies shall be liable, subject to all other conditions of this Policy not inconsistent herewith, for the actual loss sustained of the following during the Period of Interruption:

   1.  GROSS EARNINGS less all charges and expenses which do not necessarily continue during the interruption of production or suspension of business operations or services.  For the purpose of this coverage, GROSS EARNINGS means:

      a.  For manufacturing operations:  The net sales value of production less the cost of all raw stock, materials and supplies utilized in such production; or

b.  For mercantile or non-manufacturing operations:  The total net sales less cost of merchandise sold, materials and supplies consumed in the operations or services rendered by the Insured;

c.  Plus all other earnings derived from the operation of the business.

In determining net sales, in the event of loss hereunder, for mercantile or non-manufacturing operations, any amount recovered under Property Damage policies for loss or damage to or destruction of merchandise shall be included as though the merchandise had been sold to the Insured's regular customers.

In determining the amount of loss payable under this coverage, due consideration shall be given to the experience of the business before the Period of Interruption and the probable experience thereafter had no loss occurred, and to the continuation of only those normal charges and expenses that would have existed had no interruption of production or suspension of business operations or services occurred.

There is no coverage for any portion of the Insured's Ordinary Payroll expense, unless a specified number of days for Ordinary Payroll are shown in Section I.E.25 and values have been included in the reported Time Element Values  In such case, the Companies will pay Ordinary Payroll for that number of days only.  The number of days need not be consecutive, but must fall within the interruption of production or suspension of business operations or services, or fall within the extension of that period, if an extension is provided.  Ordinary Payroll means the entire payroll expense for all employees of the Insured except officers, executives, department managers, employees under contract, and other essential employees.

2.  EXPENSE TO REDUCE LOSS: Expenses, over and above normal operating expenses, necessarily incurred by the Insured in making up lost production or in reducing loss otherwise payable under this coverage are covered hereunder, but in no event shall these Companies be liable for an amount greater than that for which it would have been liable had the Insured been unable to make up any lost production or to continue any business operations or services.

B.  PERIOD OF INTERRUPTION: In determining the amount payable under this coverage, the Period of Interruption shall be:

1.  The period from the time of physical loss or damage insured against by this Policy to the time when, with the exercise of due diligence and dispatch, either:

a.  normal operations resume; or

b.  physically damaged buildings and equipment could be repaired or replaced and made ready for operations under the same or equivalent physical and operating conditions that existed prior to such loss or damage,

whichever is less.  Such period of time shall not be cut short by the expiration or earlier termination date of the Policy.

2.  In addition, if applicable, such time as may be required with the exercise of due diligence and dispatch:

a.  To restore stock in process to the same state of manufacture in which it stood at the time of the initial interruption of production or suspension of business operations or services; or

b.  To replace physically damaged or destroyed mercantile stock necessary to resume operations; or

c.  To replace raw materials and supplies in order to continue operations.

However, the inability to procure destroyed mercantile stock or suitable raw materials and supplies to replace similar stock or materials and supplies physically damaged or destroyed shall not increase the Period of Interruption.

3. For Property under construction: The time period between the anticipated date of substantial completion had no covered loss occurred and the actual date of completion. In calculating the amount of loss, due consideration will be given to the actual experience of the business compiled after substantial completion and start-up.

The Period of Interruption does not include any additional time:

a. Required for re-staffing or re-training employees; or

b. Due to the Insured's inability to resume operations for reasons other than those enumerated in B.2.a. through B.2.c., inclusive, above; or

c. Required for making change(s) to the buildings, structures, or equipment for any reason except as provided in the Ordinance or Law coverage, if such coverage is provided by this Policy.

## C. ADDITIONAL TIME ELEMENT COVERAGES

1. EXTRA EXPENSE/EXPEDITING EXPENSE: This Policy is extended to cover the loss sustained by the Insured for Extra Expense during the Period of Interruption resulting from direct physical loss or damage from a Covered Cause of Loss to Covered Property utilized by the Insured. Extra Expense means:

a. The reasonable and necessary extra expense incurred to temporarily continue as nearly normal as practicable the conduct of the Insured's business; and

b. The reasonable and necessary extra costs of temporarily using property or facilities of the Insured or others.

c. The reasonable extra costs (expediting expenses) for temporary repair of damaged property and for expediting the permanent repair or replacement of such damaged property. This includes overtime wages and extra costs of express or other rapid means of transportation. This does not include expenses recoverable elsewhere under this policy.

The Insured agrees to use any suitable property or service owned or controlled by the Insured or obtainable from other sources in reducing the Business Income and Extra Expense incurred under this Policy.

2. RENTAL VALUE: As respects Covered Property held for rental to others, this Policy is extended to cover the loss sustained during the Period of Interruption but not exceeding the reduction in Rental Value less charges and expenses which do not necessarily continue.

Rental Value means the sum of:

a. The total anticipated gross rental income from tenant occupancy of the described property as furnished and equipped by the Insured including taxes, rent based on percentage of sales, and other charges paid by tenants in respect of the leased premises; and

b. The amount of all charges which, by the terms of a written lease, are the legal obligation of the tenant(s) and which would otherwise be obligations of the Insured; and

c. The fair rental value of any portion of such property which is occupied by the Insured.

Due consideration will be given to the historic rental expenses prior to the loss and the probable expenses thereafter.

3. ROYALTIES: This Policy is extended to cover loss of income sustained by the Insured under a royalty, licensing fee, or commission agreement between the Insured and another party during the Period of Interruption arising out of direct physical loss or damage by a Covered Cause of Loss during the term of this Policy to real or personal property of such other party, only if such Royalties are shown as such on the Statement of Values. When determining the amount payable,

the Companies will consider the amount of income derived by the Insured from such agreements before, and the probable amount of income after, the date of loss or damage.

4.  SOFT COSTS (BUILDER'S RISK):  For Property under Construction, this Policy is extended to cover Soft Costs incurred by the Insured during the Period of Interruption (described in Paragraph B. above).  Such Soft Costs must be the result of direct damage from a Covered Cause of Loss.

The Companies will pay reasonable and necessary Soft Costs over and above those costs which would have been incurred by the Insured during the Period of Interruption had no loss occurred. Soft Costs  means:

   a.  The amount of actual interim or construction financing interest, including loan fees and other one time charges incurred to negotiate a new construction loan and/or extend the existing one;

   b.  Realty taxes and ground rent if any;

   c.  Advertising and promotional expenses;

   d.  Cost of additional commissions;

   e.  Architects, surveyors, legal, consulting engineers, accounting, licenses, permits, or other fees not otherwise covered by this Policy;

   f.  Project administration expense, but not including development fees;

   g.  Insurance premiums;

   h.  Founder's fee refunds; and

   i.  Net Business Income or Net Rental Income.

5.  CONTINGENT TIME ELEMENT:  If direct physical loss or damage to the real or personal property of a direct supplier or direct customer of the Insured is damaged by a Covered Cause of Loss under this Policy, and such damage:

   a.  wholly or partially prevents any direct supplier to the Insured from supplying their goods and/or services to the Insured; or

   b.  wholly or partially prevents any direct customer of the Insured from accepting the Insured's goods and/or services;

then this Policy is extended to cover the actual loss sustained by the Insured during the Period of Interruption with respect to such real or personal property.  The property of the supplier or customer which sustains loss or damage must be of the type of property which would be Covered Property under this Policy.

This coverage applies to the Insured's direct suppliers or direct customers located in the Coverage Territory.

6.  INTERRUPTION BY CIVIL OR MILITARY AUTHORITY:  This Policy is extended to cover the actual loss sustained during the period of time when access to the Insured's covered **Location** is prohibited by an order of civil or military authority, provided that, such order is a direct result of a Covered Cause of Loss to real property not insured hereunder.  The insured physical loss or damage must occur within five (5) statute miles from the Insured's covered **Location** in order for coverage to apply.  Such period of time begins with the effective date of the order of civil or military authority and ends when the order expires, but no later than the number of days shown in Section I.E.7.

7.  INGRESS & EGRESS:  This Policy is extended to cover the actual loss sustained during the period of time when ingress to or egress from the Insured's covered Location is prohibited as a direct result

of a Covered Cause of Loss to real property not insured hereunder.  The insured physical loss or damage must occur within five (5) statute miles from the Insured's covered **Location** in order for coverage to apply.  Such period of time begins on the date that ingress to or egress from real or personal property is prohibited and ends when ingress or egress is no longer prohibited, but no later than the number of days shown in Section I.E.17.

8.  EXTENDED PERIOD OF INDEMNITY:  Coverage is provided for such additional length of time as is required to restore the Insured's business to the condition that would have existed had no loss occurred, commencing with the later of the following dates:

   a.  the date on which the liability of the Companies for loss or damage would otherwise terminate; or

   b.  the earliest date on which either normal operations resume, or repair, replacement, or rebuilding of the property that has been damaged is actually completed; but in no event for a period of time exceeding the number of days specified in Section I.E.12. starting with later of a. or b. above.  This Extended Period of Indemnity does not apply to any Additional Time Element Coverages, except RENTAL VALUE (Par. 2 above).

   This additional coverage does not include coverage for any increase in loss due to fines or damages for breach of contract or for late or non-completion of orders, or penalties of any nature.

With respect to Additional Time Element Coverages 6. & 7., if a Covered Cause of Loss results in coverage under both Additional Time Element Coverages, the Companies will only pay for loss under one of the two Additional Time Element Coverages, whichever the First Named Insured selects.

D.  ADDITIONAL EXCLUSIONS: Section V - Time Element Coverage does not cover:

   1.  IDLE PERIODS - Any loss during any period in which goods would not have been produced, or business operations or services would not have been maintained, for any reason other than physical loss or damage from a Covered Cause of Loss to which this coverage applies.

   2.  REMOTE LOSS -

      a.  Any increase in loss due to the suspension, cancellation, or lapse of any lease, contract, license or order; or

      b.  Any loss due to fines or damages for breach of contract or for late or non-completion of orders or penalties of whatever nature; or

      c.  Any increase in loss due to interference at the Insured's premises by strikers or other persons with rebuilding, repairing, or replacing the property damaged or destroyed, or with the resumption or continuation of business, or with the re-occupancy of the premises.

   Nor shall the Companies be liable for any other consequential or remote loss, other than as specifically provided in this Section V.

   3.  FINISHED PRODUCTS - Any loss resulting from loss or damage to finished products manufactured by the Insured nor for the time required for their reproduction.

   4.  TRANSIT - Any loss resulting from loss or damage to property in transit.

   5.  BERTH AND/OR PORT BLOCKAGE – Any loss due to Blockage of a port or berth.  Blockage means a blockage of any part of the port or berth arising from an occurrence which results in the sinking or stranding of a ship, or the inability of a ship to gain access to a berth.

E.  TIME ELEMENT MONTHLY LIMITATION OF INDEMNITY: The Companies shall not be liable for more than the Monthly Limitation of Indemnity shown in Section I.E.33. This Monthly Limitation Of Indemnity shall apply to all Time Element coverages, except those that have a sublimit in Section I.E. Time

Element Monthly Limitation means the most the Companies will pay monthly for a Time Element loss sustained by the Insured during the Period of Interruption directly resulting from a Covered Cause of Loss to Covered Property. This Monthly Limitation of Indemnity is payable for each period of 30 consecutive days after the beginning of the Period of Interruption and is calculated by multiplying the scheduled Time Element value by the fraction shown in Section I.E.33.

## SECTION VI - ADDITIONAL COVERAGES

The following additional coverages are subject to the terms and conditions of this Policy, including the deductibles and sublimits of liability corresponding to each such additional coverage shown in Section I. These sublimits are part of, and not in addition to sublimits and limits of liability of this Policy, including, but not limited to, the **Earth Movement**, **Flood**, or **Named Storm** Sublimits of Liability provided herein, if applicable.

A. ACCOUNTS RECEIVABLE: This Policy covers any shortage in the collection of Accounts Receivable directly resulting from a Covered Cause of Loss to Accounts Receivable Records.

This extension of coverage does not apply to loss due to:

1. Bookkeeping, accounting or billing errors and omissions; and

2. Alteration, falsification, manipulation, concealment, destruction, or disposal of Accounts Receivable Records committed to conceal the wrongful giving, taking, obtaining or withholding of money, securities or other property, but only to the extent of such wrongful giving, taking, obtaining or withholding.

B. DEBRIS REMOVAL: This Policy covers the necessary and reasonable expense of removal from the insured **Locations** of debris of Covered Property or property of others remaining as a result of direct physical loss or damage insured against under this Policy that occurs during the policy period when the Insured gives written notice of such direct physical loss or damage to the Companies, but no later than 180 days after the loss. There is no liability for the expense of removing contaminated or polluted uninsured property, nor the **Pollutants or Contaminants** therein or thereon, whether or not the contamination results from an insured event.

C. ELECTRONIC DATA AND MEDIA: This Policy is extended to cover direct physical loss or damage to **Electronic Data and Media.**

D. ERRORS OR OMISSIONS: This Policy is extended to cover direct physical loss or damage at **Locations** within the Coverage Territory that are owned, leased or operated by the Insured, if such loss or damage is not payable under this Policy solely due to:

1. Any error or unintentional omission in the description of the address of the property whether made at the inception of the policy period or subsequent thereto; or

2. Failure through any error or unintentional omission to:

   a. Include any **Location** of the Insured at the inception of the Policy; or

   b. Report any newly acquired location before the period of automatic coverage provided under this Policy for Newly Acquired Location(s) expires.

With respect to Subparagraphs 1. and 2. above, this Errors or Omissions Additional Coverage does not allow the Insured or its representative to correct any value shown in the Statement of Values.

This Policy covers such direct physical loss or damage, to the extent it would have provided coverage had such error or unintentional omission not been made.

It is a condition of this additional coverage that any error or unintentional omission be reported by the Insured to the Companies when discovered and an additional premium be paid, as determined by the Companies.

There is no coverage under this Paragraph for loss or damage which is covered under Newly Acquired Property or **Miscellaneous Unnamed Locations** provisions of this Policy.

E.   FINE ARTS:   This Policy is extended to cover direct physical loss or damage to fine arts.   However, no coverage is provided for:

   1.   Breakage, marring, scratching, chipping or denting of art, glass, windows, statuary, sculptures, marble, glassware, porcelain, bric-a-brac, antique furniture, antique jewelry or similar fragile articles, unless such breakage, marring, scratching, chipping or denting   is caused by a **Defined Cause of Loss**; or

   2.   Physical loss or damage as a result of restoring, repairing or retouching processes.

F.   FIRE BRIGADE CHARGES AND EXTINGUISHING EXPENSES:   This Policy covers the following expenses resulting from a Covered Cause of Loss:

   1.   Fire brigade charges and any extinguishing expenses which the Insured incurs;

   2.   Loss and disposal of fire extinguishing materials expended.

There is no coverage for any costs incurred as a result of a false alarm.

G.   LEASEHOLD IMPROVEMENTS & BETTERMENTS:   This Policy is extended to cover the value of undamaged tenant's improvements and betterments when the Insured's lease is cancelled by the lessor; acting under a valid condition of the lease due to direct physical loss or damage to building or personal property caused by or resulting from a Covered Cause of Loss at an insured **Location**.   No sublimit of liability applies to this additional coverage, but in no event will the Companies be liable for an amount in excess of the applicable sublimit of liability specified for the Leasehold Interest, if any.

H.   LEASEHOLD INTEREST:   If Covered Property is: (1) rendered wholly or partially untenantable by a Covered Cause of Loss during the Policy period and (2) the Insured's lease is canceled by a party, other than the Named Insured, or an entity with any common ownership of the Named Insured, in accordance with the conditions of the lease or as a result of a statutory requirement of the appropriate jurisdiction in which the damaged or destroyed Covered Property is located, then this Policy is extended to cover "The Interest of the Insured as Lessee" (as defined below) or "The Interest of the Insured as Lessor" (as defined below), whichever is applicable, but only for the first three months succeeding the date of the loss and the "Net Lease Interest" (as defined below) shall be paid for the remaining months of the unexpired lease.

Recovery under this additional coverage shall be the pro-rata proportion from the date of loss to expiration date of the lease (to be paid without discount) on the Insured's interest in:

   1.   The amount of bonus paid by the Insured for the acquisition of the lease not recoverable under the terms of the lease;

   2.   Improvements and betterments to real property which are not covered under any other section of this Policy; and

   3.   The amount of advance rental paid by the Insured and not recoverable under the terms of the lease.

Definitions:   The following terms, wherever used in this Paragraph H shall mean:

   1.   The Interest of the Insured as Lessee is defined as:

    a.  the excess of the rental value of similar premises over the actual rental payable by the lessee (including any maintenance or operating charges paid by the lessee) during the unexpired term of the lease; and

    b.  the rental income earned by the Insured from sublease agreements, to the extent not covered under any other section of this Policy, over and above the rental expenses specified in the lease between the Insured and the lessor.

2.  The Interest of the Insured as Lessor is defined as the difference between the rents payable to the lessor under the terms of the lease in effect at the time of loss and the actual rent collectible by the lessor during the unexpired term of the lease provided the lease is canceled by the lessee, to the extent not covered under any other section of this Policy.

3.  Net Lease Interest is defined as that sum, which placed at 6% interest compounded annually will be equivalent to The Interest of the Insured as Lessee or Lessor.

The Companies shall not be liable for any increase of loss which may be occasioned by the suspension, lapse or cancellation of any license or by the Named Insured exercising any option to cancel the lease.   Furthermore, the Named Insured shall use due diligence, including all things reasonably practicable, to diminish loss under this additional coverage.

I.    LIMITED POLLUTION COVERAGE:  This Policy is extended to cover the reasonable and necessary additional expense incurred to remove, dispose of, or clean-up the actual presence of **Pollutants or Contaminants** from **Land** or water at an insured **Location** when such **Land** or water is contaminated or polluted due to a Covered Cause of Loss that occurs during the policy period.  There will be no coverage unless such expenses are reported to the Companies within 180 days of the date of direct physical loss or damage.

J.    LOCK REPLACEMENT:  This policy covers the necessary expense to repair or replace the exterior or interior door locks of a covered **Building**:

1.  If the door keys are stolen in a covered theft loss; or

2.  When the covered property is damaged and the door keys are stolen by burglars.

K.    NEWLY ACQUIRED PROPERTY:  This Policy covers real or personal property of the type insured under this Policy for the perils insured under this Policy that is rented, leased, or purchased by the Insured after the inception date of this Policy.  Coverage under this additional coverage ceases at the earlier of the following dates:

1.  See Section I.E.23 from the date of acquisition or lease of such property; or

2.  When the newly acquired location is bound by the Companies; or

3.  AmRisc notifies the Insured that it will not bind the newly acquired location.

There is no coverage for any property that is partially or wholly insured under any other insurance.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or **Miscellaneous Unnamed Locations** provisions of this Policy.

L.    ORDINANCE OR LAW:  In the event of direct physical loss or damage under this Policy that results in the enforcement of any law, ordinance, governmental directive or standard in effect at the time of loss or damage regulating the construction, repair or use and occupancy of the property, the Companies shall pay:

1.  Coverage A:  For the loss in value of the undamaged portion of the building as a consequence of enforcement of an ordinance or law that requires demolition of undamaged parts of the same building.

2. Coverage B: For the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of enforcement of an ordinance or law that requires demolition of such undamaged property.

3. Coverage C: For the increased cost of repair or replacement of the damaged and undamaged Building on the same or another site, limited to the cost that would have been incurred in order to comply with the minimum requirements of such law or ordinance regulating the repair or reconstruction of the damaged property on the same site. However, these Companies shall not be liable for any increased cost of construction loss unless the damaged property is actually rebuilt or replaced.

4. Coverage D: For the additional loss in Time Element (if covered), that the Insured sustains during the increased period of suspension of operations caused by or resulting from a consequence of enforcement of an ordinance or law.

The Companies shall not be liable for any cost of demolition or increased cost of reconstruction, repair, debris removal or loss of use (including Time Element) necessitated by the enforcement of any law or ordinance regulating any form of contamination or pollution.

M. PAIRS OR SETS: If two or more components or parts are necessary for a whole or complete product, then this Policy covers the reduction in value of insured components or parts of products due to direct physical loss or damage insured against by this Policy to the other insured components or parts of such products.

N. PROFESSIONAL FEES:   This Policy is extended to cover reasonable and necessary "Claim Preparation Costs" (as defined below) incurred by the Insured at the request of the Companies for the purpose of determining the extent or amount of insured loss or damage as a result of a Covered Cause of Loss under this Policy, provided that, the Insured obtains the prior written approval of the Companies for the vendor to be engaged by the Insured.

Claim Preparation Costs means:

1. The cost of taking inventory and the cost of gathering and preparing other data to substantiate the extent or amount of loss or damage; and

2. The cost of services provided by accountants, contractors and engineers solely for the purpose of determining the extent or amount of loss.

Claim Preparation Costs does not mean and does not include:

1. Legal fees, charges and expenses;

2. Fees and costs of a public claims adjuster, claim consultant, insurance broker or agent (except forensic accounting services), or any person acting for or on behalf of a public claims adjuster, claim consultant, or insurance broker or agent;

3. Costs associated with negotiation or presentation of any claim or part of a claim that the Companies have advised the Insured is disputed or denied;

4. Costs associated with establishing that any claim or part of a claim is covered by the Policy; or

5. Costs which represent overhead or operating expense of any Insured, including salaries of such Insured's employees.

O. PROPERTY REMOVED FROM INSURED LOCATIONS: This Policy covers direct physical loss or damage to personal property of the Insured by a Covered Cause of Loss at any **Location** within the Coverage Territory when such personal property is removed from the insured **Locations** for the purpose of being repaired or serviced, excluding:

1. Personal property insured under another policy or floater;

2.  Personal property excluded under this Policy; or

3.  Personal property removed from the insured **Locations** for normal storage or processing or preparation for sale or delivery.

P.  REWARD REIMBURSEMENT:  This Policy covers monetary rewards for information that leads to a criminal conviction in connection with loss or damage to covered property by a Covered Cause of Loss.

Q.  SERVICE INTERRUPTION:  This Policy is extended to cover the loss or damage to Covered Property and Time Element (provided Time Element values are reported) resulting from direct physical loss or damage from a Covered Cause of Loss to: (1) incoming electrical, gas, water and telecommunication equipment and outgoing sewer; or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines; all situated outside the insured **Locations**.

However, this extension of coverage DOES NOT apply to any loss caused by damage to any utility service listed in (1) or (2) above, if located more than five (5) statute miles from the Insured's covered Location.

There shall be no loss payable under this Additional Coverage unless the interruption exceeds the qualifying period shown in Section I.E.31. In such case, the loss shall be measured from date and time of the loss. With respect to any Time Element Coverage provided herein, the Period of Interruption ends when: (1) incoming electrical, gas, water, or telecommunication equipment or outgoing sewer or (2) electrical, telecommunication, fuel, water, steam, refrigeration, or other service transmission lines, is restored.

The Sublimit shown in Section I.E.31. applies to all loss or damage to Covered Property and/or Time Element Coverage, combined arising out of one Service Interruption.  None of the additional Time Element Coverages set forth in Section V.C. apply to the Time Element Coverage provided herein, except Rental Value.

R.  SPOILAGE:  This policy is extended to cover spoilage as a direct result of a Covered Cause of Loss and subject to the additional exclusions listed below.  The Companies shall be liable for direct physical loss or damage to:

1.  Perishable goods due to spoilage;

2.  Perishable goods due to contamination from the release of refrigerant, including but not limited to ammonia;

3.  Perishable goods due to spoilage caused by a Covered Cause of Loss to equipment that is owned by a utility, landlord, or other supplier of any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

If the Insured is unable to replace the perishable goods before its anticipated sale, payment will be determined on the basis of the sales price of the perishable goods at the time of the loss, less discounts and expenses that otherwise would have been incurred. Otherwise, payment will be determined in accordance with the Valuation provision of this Policy.

Perishable Goods means personal property:

1.  maintained under controlled conditions for its preservation, and

2.  susceptible to loss or damage if the controlled conditions change.

Additional Exclusions:  The Companies shall not be liable for loss or damage caused by or resulting from:

1.  The disconnection of any refrigerating, cooling or humidity control system from the source of power.

   2.   The deactivation of electrical power caused by the manipulation of any switch or other device used to control the flow of electrical power or current.

S.   TRANSIT:  This Policy is extended to cover personal property, not otherwise excluded by this Policy, while such property is in transit.

It is agreed that coverage under this extension shall include the following:

   1.   Personal property shipped to customers on F.O.B., C & F, or similar terms.  The Insured's contingent interest in such shipments is admitted.

   2.   The interest of the Insured in, and legal liability for, personal property of others in the actual or constructive custody of the Insured.

   3.   Personal property of others sold by the Insured which the Insured has agreed prior to loss to insure during course of delivery.

It is agreed that the following additional exclusions apply to coverage as provided under this additional coverage:

   1.   Property insured under import or export ocean cargo policies.

   2.   Waterborne shipments to and from the Coverage Territory.

   3.   Shipments made by air, unless via regularly scheduled airlines.

   4.   Property shipped by mail.

   5.   Property of others, including the Insured's legal liability therefor, hauled on vehicles owned, leased, or operated by the Insured when acting as a common or contract carrier as defined by the Interstate Commerce Commission Regulations or other state regulatory agencies.

   6.   Any transporting vehicle or conveyance.

This additional coverage attaches from the time the property leaves the original point of shipment for the commencement of transit and covers thereafter continuously in the due course of transit within the Coverage Territory until delivered at destination.

Coverage on export shipments not insured under ocean cargo policies does not extend beyond the time when the property is loaded on board overseas vessels or aircraft.  Coverage on import shipments not insured under ocean cargo policies does not attach until after discharge from overseas vessels or aircraft.

This additional coverage does not cover or apply to delay, loss of market, or any Time Element coverage.

Permission is granted to the Insured without prejudice to this insurance to accept the ordinary bills of lading used by carriers, including released and/or undervalued bills of lading and/or shipping or messenger receipts.  The Insured may waive subrogation against railroads under sidetrack agreements, but the Insured shall not enter into any special agreement with carriers releasing them from their common law or statutory liability.

T.   VALUABLE PAPERS AND RECORDS:  This Policy is extended to cover **Valuable Papers and Records.**

# SECTION VII - CONDITIONS

A. ABANDONMENT: There can be no abandonment to the Companies of any property.

B. ADJUSTMENT OF LOSSES and FIRST NAMED INSURED CLAUSE:  Loss or damage shall be adjusted with and payable to the First Named Insured, subject to any Certificates of Insurance on file with AmRisc which require payment to a loss payee or mortgagee.

If this Policy insures more than one entity, the First Named Insured is authorized to act on behalf of all other Insureds with respect to their rights, obligations and duties under this Policy.  Payment of loss or return premium under this Policy to the First Named Insured shall satisfy the Companies' obligations with respect to all Insureds.

C. ARBITRATION CLAUSE:   All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

Unless the parties agree upon a single Arbitrator within thirty days of one receiving a written request from the other for Arbitration, the Claimant (the party requesting Arbitration) shall appoint his Arbitrator and give written notice thereof to the Respondent.  Within thirty days or receiving such notice, the Respondent shall appoint his Arbitrator and give written notice thereof to the Claimant, failing which the Claimant may nominate an Arbitrator on behalf of the Respondent.

Should the Arbitrators fail to agree, they shall appoint, by mutual agreement only, an Umpire to whom the matter in difference shall be referred.

Unless the parties otherwise agree, the Arbitration Tribunal shall consist of persons employed or engaged in a senior position in Insurance underwriting or claims.

The Arbitration Tribunal shall have power to fix all procedural rules for the holding of the Arbitration including discretionary power to make orders as to any matters which it may consider proper in the circumstances of the case with regard to pleadings, discovery, inspection of documents, examination of witnesses and any other matter whatsoever relating to the conduct of the Arbitration and may receive and act upon such evidence whether oral or written strictly admissible or not as it shall in its discretion think fit.

All costs of the Arbitration shall be in the discretion of the Arbitration Tribunal who may direct to and by whom and in what manner they shall be paid.

The seat of the Arbitration shall be in New York and the Arbitration Tribunal shall apply the law of New York as the proper law of this insurance.

The Arbitration Tribunal may not award exemplary, punitive, multiple or other damages of a similar nature.

The award of the Arbitration Tribunal shall be in writing and binding upon the parties who covenant to carry out the same.  If either of the parties should fail to carry out any award the other may apply for its enforcement to a court of competent jurisdiction in any territory in which the party in default is domiciled or has assets or carries on business.

D. ASSIGNMENT: The Insured may not assign this Policy without the Companies' prior written consent.

E. BRANDS AND LABELS:  If branded or labeled merchandise covered by this Policy is physically damaged and the Companies elect to take all or any part of such merchandise at the value established by the terms of this Policy, the Insured may, at their own expense, stamp "SALVAGE" on the merchandise or its containers, or may remove or obliterate the brands or labels, if such stamp, removal or obliteration will not physically damage the merchandise, but the Insured must re-label the merchandise or containers in compliance with the requirements of law.

F.  CANCELLATION AND ADDITIONS OR DELETIONS:

1.  This Policy can be canceled by the First Named Insured by providing the Companies with:

   a.  An advanced written request for cancellation stating when the cancellation shall be effective, and

   b.  The original Policy or a lost policyholder release signed by the First Named Insured or its legal representative.

2.  This Policy may be canceled by the Companies by giving to the Insured at least ninety (90) days written notice of cancellation or in the case of non-payment of premium or material mis-statement, at least ten (10) days written notice of cancellation.

3.  The cancellation will be effective even if the Companies have not made or offered a refund.  If notice is mailed, proof of mailing will be sufficient proof of notice.

4.  If this Policy is canceled, the Companies will send the First Named Insured any premium refund due.

5.  Earned Premium:

   a.  For **Locations** NOT "Exposed to Hurricanes", if the Insured cancels this Policy or removes a **Location**, the short rate return premium is 90% of applicable pro-rata premium subject to any Minimum Earned Premium stipulations in the Policy.

   b.  For **Locations** "Exposed to Hurricanes", if the Insured cancels this Policy, removes a **Location** or reduces the amount of insurance on a **Location** and coverage existed any time during the period of June 1st to November 1st, the amount of premium the Companies will return will be the Unearned Premium for the **Location**. The Unearned Premium is the **Location** premium times the Unearned Factor noted below:

   | Days Policy in Force | Unearned Factor |
   |---|---|
   | 1-180 | 20.0% |
   | 181-210 | 15.0% |
   | 211-240 | 10.0% |
   | 241-270 | 7.5% |
   | 271-300 | 5.0% |
   | 301-330 | 2.5% |
   | 331 or more | 0% |

   However, subject to receipt of closing documents within 30 days of closing, this Policy allows pro-rata return premium for locations sold (but not for loss of management contract), subject to a maximum of 25% of scheduled values.

   c.  For **Locations** "Exposed to Hurricanes", if added (or coverage increased at an existing **location** which is "Exposed to Hurricanes") during the term of the Policy and coverage exists at any time during the period of June 1st to November 1st, the premium will be calculated at 100% of the annual rate, less the Unearned Factor noted in b. above.  Otherwise, it shall be pro-rata.

However, subject to receipt of closing documents, this Policy allows pro-rata additional premium for **Locations** purchased during the policy term.

d.  **Locations** of like kind and quality shall be added at the account rate, subject to the Unearned Factor noted in b. above.  **Locations** of differing kind or quality or locations in Dade, Broward or Palm Beach counties of Florida must be approved by AmRisc prior to attachment.

e.  If a **Location** is "Exposed to Hurricanes", the provisions of this clause replace any short rate provisions stipulated in this Policy, all subject to the Minimum Earned Premium provisions.

f.  "Exposed to Hurricanes" is defined to include any **Location** within 100 miles of the closest salt water of the Atlantic Ocean or the Gulf of Mexico.

g.  Coverage cannot be increased nor additional **Locations** added if they are "Exposed to Hurricanes" and a **Named Storm** is in existence, unless with the express written consent of AmRisc.

h.  Nothing herein will act to provide coverage outside the automatic acquisition clause elsewhere in the Policy.

i.  Non-payment of premium, material misstatement or non-compliance with underwriting requirements shall be considered a request by the Insured to cancel the Policy.

j.  Proof of mailing will be sufficient proof of notice of cancellation.

G.  CLAIMS REPORTING AND ADJUSTMENT:
All Claims shall be reported to:  AmRisc Claims Department
E-Mail: claims@amrisc.com
Ph: 252-247-8760
Fax: 252-726-2855

All Claims shall be adjusted by:  CJW and Associates
1420 Edgewater Drive, Suite 101, Orlando, FL 32804

and/or its assigned adjusters and the costs of such adjustments shall be borne by each Company in proportion to its pro-rata participation in this policy.

In the event the Company(s) elects to use its own adjusters or independent adjusters or consultants other than as listed above, expenses so incurred shall be borne solely by the Company.

It is further understood and agreed that, notwithstanding any provision contained elsewhere in this policy to the contrary, the Insured will be deemed to be in full compliance with any claim notice requirements, if notice of an occurrence is made to the Company[s] as soon as practicable after knowledge by the Insured or their representatives, that such occurrence will, or is likely to result in a claim under the policy. Any unintentional failure to report any occurrence or claim shall not invalidate coverage with respect to any such occurrence or claim.

H.  CONTROL OF DAMAGED MERCHANDISE:  The Insured, exercising reasonable discretion, shall be the sole judge as to whether the goods involved in any loss under this Policy are fit for normal intended use or consumption.  No goods so deemed by the Insured to be unfit for consumption shall be sold or otherwise disposed of except by the Insured or with the Insured's consent, but the Insured shall allow the Companies any salvage obtained by the Insured on any sale or other disposition of such goods. The Insured shall have full right to the possession of and retain control of all goods involved in any loss under this Policy.

I.  CURRENCY:  Any amount of money specified in the Policy, including Limits of Liability, Deductibles and Premiums shall be considered to be in the currency of the United States of America.

J.  DIVISIBLE CONTRACT:  Subject to Condition N. below, if the **Locations** described in this Policy include two or more **buildings** or the contents of two or more **buildings**, the breach of any condition of this Policy in respect to any one or more of the **buildings** insured or containing the Covered Property,  shall not prejudice the right to recover for physical loss or damage occurring in any **building** insured or containing the Covered Property where, at the time of such loss or damage, a breach of condition  does not exist.

K.  INSPECTION AND AUDIT:  The Companies, at all reasonable times during this Policy period, shall be permitted but not obligated to inspect the property insured by this Policy.  Neither  the Companies' right to make inspections nor the making thereof nor any report thereon shall constitute any undertaking by the Companies, on behalf of or for the benefit of the Insured or others, to determine or warrant that such property is safe or healthful or that they comply with any law, rule or regulation.

The Companies may also examine and audit the Insured's books and records at any reasonable time during the Policy period and within one year after the Policy termination, as long as such examination and audit relate to the subject matter of this Policy.

L.  JOINT LOSS AGREEMENT:  In the event the insurance company, if any, providing boiler and machinery insurance ('B&M insurer') disputes any portion of the claim made against that B&M insurer, but these Companies believe the B&M insurer should have paid that portion of the claim, then these Companies shall, upon written request of the Insured, pay to the Insured one-half of the amount of the loss which is in disagreement, but in no event more than these Companies would have paid if there had been no B&M policy in effect, subject to the following conditions:

1.  The amount of the loss which is in disagreement, after making provisions for any undisputed claims payable under the said policies and after the amount of the loss is agreed upon by the Insured and all of the insurers, is limited to the minimum amount remaining payable under the B&M policy;

2.  The B&M insurer shall simultaneously pay to the Insured one-half of said amount which is in disagreement;

3.  The payments by all of the insurers hereunder and acceptance of the same by the Insured signify the agreement of all the insurers to submit to and proceed with arbitration within 90 days of such payments; the arbitrators shall be three in number, one of whom shall be appointed by the Property insurance Companies and one of whom shall be appointed by the B&M insurer and the third shall be appointed with the consent of the Property insurance Companies and the B&M insurer, and the decision by the arbitrators shall be binding upon all the insurers and that judgment upon such award may be entered in any court of competent jurisdiction;

4.  The Insured agrees to cooperate in connection with such arbitration but not to intervene therein;

5.  The provisions of this clause shall not apply unless such other policy issued by the B&M insurer is similarly endorsed;

6.  Acceptance by the Insured of sums paid pursuant to the provisions of this clause, including an arbitration award, shall not operate to alter, waive, surrender, or in any way affect the rights of the Insured against any of the insurers.

M.  LOSS PAYEES, LENDER'S LOSS PAYEES, AND MORTGAGEES (OR TRUSTEES):

1.  Loss, or damage, if any, under this Policy shall be payable to:

a.  any Loss Payee or Lender's Loss Payee as its interest may appear; and

b.  any Mortgagee (or Trustee) as its interest may appear under all present or future mortgages upon the insured property in which the aforesaid may have an interest as Mortgagee (or Trustee), in order of precedence of said mortgages.

2.  As to the interest of the Lender's Loss Payee or Mortgagee (or Trustee) only, this insurance shall not be invalidated by any act or neglect of the Insured nor by any foreclosure or other proceedings or notice of sale relating to said property nor by any change in the title or ownership of said property, nor by the occupation of the insured **Locations** for purposes more hazardous than are permitted by this Policy; provided, that in case the Insured shall neglect to pay any premium due under this Policy, the Lender's Loss Payee or Mortgagee (or Trustee) shall, on demand pay the same.

The Lender's Loss Payee or Mortgagee (or Trustee) must notify AmRisc, LLC of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of the Lender's Loss Payee or Mortgagee (or Trustee) and, unless permitted by this Policy it shall be noted hereon and the Lender's Loss Payee or Mortgagee (or Trustee) shall, on demand, pay the premium for such increased hazard; otherwise, this entire Clause 2. shall be null and void.

3.  If the Companies cancel this Policy, they will give:

    a)  ten (10) days before the effective date, if cancellation is for non-payment of premium; or

    b)  ninety (90) days before the effective date, if cancellation is for any other reason.

4.  Nothing herein shall affect the rights of the Companies to suspend insurance [which shall include any insurance applying to the interest of the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee)] on any machine, vessel or part thereof in accordance with the Suspension Clause of Equipment Breakdown (if such coverage is provided by endorsement to this policy). The Companies agree to furnish the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) with a copy of the suspension notice at the Loss Payee's, Lender's Loss Payee's, or Mortgagee's (or Trustee's) address.

5.  Whenever the Companies shall pay the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) any sum for loss under this Policy and shall claim that, as to the Insured, no liability therefor existed, the Companies shall, to the extent of such payment, be subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the debt, or may, at their option pay to the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) the whole principal due or to grow due on the debt with interest, and shall thereupon receive a full assignment and transfer of all rights and securities; but no subrogation shall impair the right of the Loss Payee, Lender's Loss Payee, or Mortgagee (or Trustee) to recover the full amount of the Loss Payee's, Lender's Loss Payee's or Mortgagee's (or Trustee's) claim.

N.  MISREPRESENTATION AND FRAUD:  This entire Policy shall be void if, whether before or after a loss, the Insured has willfully concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof, or the interest of the Insured therein, or in case of any fraud, or false swearing by the Insured relating thereto.

O.  OTHER INSURANCE/EXCESS INSURANCE/UNDERLYING INSURANCE:  In the event there is other insurance covering loss or damage insured under this Policy, then this Policy shall apply only as excess and in no event as contributory insurance (unless this Policy is specifically written to be contributory insurance), and then only after all other insurance has been exhausted, whether or not such insurance is collectible. Permission is granted for the Insured to purchase Excess Insurance over the limits provided by this Policy, and underlying insurance on all or any part of the deductibles of this Policy.

P.  PROTECTION AND PRESERVATION OF PROPERTY:  In case of actual or imminent direct physical loss or damage by a Covered Cause of Loss, the expenses incurred by the Insured in taking reasonable and necessary actions for the temporary protection and preservation of Covered Property hereunder shall be added to the total physical loss or damage otherwise recoverable under this Policy and be subject to the applicable deductible, sublimit of liability and the Policy Limit.

Q.   REINSTATEMENT OF LIMITS:  Except for any Covered Cause of Loss which is subject to an annual aggregate limit or sublimit of liability, payment of a claim will not reduce the amount payable under this Policy for any subsequent covered loss.

R.   REQUIREMENTS IN CASE OF LOSS:  The Insured shall:

1.   Give immediate written notice of any loss or damage to AmRisc;

2.   Promptly contact the applicable authority having jurisdiction in the event a law has been broken, and promptly file a written report with such authority;

3.   Protect the property from further loss or damage;

4.   Separate the damaged and undamaged personal property;

5.   Maintain such property in the best possible order;

6.   Furnish a complete inventory of the lost, destroyed, damaged and undamaged property, showing in detail quantities, costs, actual cash value and amount of loss claimed;

7.   Furnish all other documents or insurance policies that the Companies may reasonably require;

8.   Allow the Companies to access and inspect any of the damaged or undamaged property; and

9.   Submit to examination under oath at such times as may be reasonably required about any matter relating to this insurance or any claim;

Within ninety (90) days after the loss, unless such time is extended in writing by the Companies, the Insured shall provide the Companies with a proof of loss, signed and sworn to by the Insured, stating the knowledge and belief of the Insured as to the following:

1.   The time and origin of the loss;

2.   The interest of the Insured and of all others in the property;

3.   The value of each item thereof determined in accordance with the Valuation Provisions of this Policy and the amount of loss thereto and all encumbrances thereon;

4.   All other contracts of insurance, whether collectible or not, covering any of said property; and

5.   Any changes in the title, use, occupation, location, possession or exposures of said property subsequent to the issuance of this Policy, by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of loss whether or not it then stood on leased ground.

S.   REVIEW OF VALUES:  The Insured shall provide AmRisc at Policy inception and each subsequent anniversary date of this Policy, a Statement of Values which consists of the current 100% Property and Time Element values for all insured **Locations.**

Such values shall be reported separately for each **Location**, with separate figures shown for each type of coverage at each **Location**.  The property values shall be shown on a Replacement Cost Basis for property which is covered on a Replacement Cost Basis and on an **Actual Cash Value** basis for other property. The value of stock and supplies to be included in the property values shall be in accordance with the Valuation clause contained in this Policy and shall be based on the approximate average of the stock and supplies on hand during the twelve months immediately preceding the annual review of values.   Time Element values (if covered) shall be provided in accordance with the terms of the applicable Time Element provisions.

Upon inception and at each anniversary date of this Policy, the Annual Premium shall be due and payable to AmRisc.   Receipt of said Statement of Values by AmRisc shall be considered as authorization by the Insured for premiums under this Policy to be calculated.

The premium for this Policy is based upon the Statement of Values on file with AmRisc, or attached to this Policy.

T.  SALVAGE AND RECOVERIES:  All salvages, recoveries and payments, excluding proceeds from subrogation and underlying insurance recovered or received prior to a loss settlement under this Policy, shall reduce the loss accordingly.

U.  SETTLEMENT OF CLAIMS:  The amount of loss for which the Companies may be liable shall be payable within thirty (30) days after proof of loss, as herein required, is received and accepted by the Companies and ascertainment of the amount of loss is made either by agreement between the First Named Insured and the Companies or an amount is determined by binding Arbitration in accordance with the provisions of this Policy.

The Companies shall have the option to take all, or any part of the property at the agreed or arbitrated value, or to repair, rebuild or replace the property physically lost or damaged with other of like kind and quality, within a reasonable time, on giving notice of its intention to do so within sixty (60) days after receipt of the proof of loss herein required.

V.  SEVERAL LIABILITY NOTICE
    LMA5096 03/08 (Combined Certificate) - amended

The liability of an insurer under this Policy is several and not joint with other insurers party to this Policy. An insurer is liable only for the proportion of liability it has underwritten. An insurer is not jointly liable for the proportion of liability underwritten by any other insurer. Nor is an insurer otherwise responsible for any liability of any other insurer that may underwrite this Policy.
The proportion of liability under this Policy underwritten by an insurer (or, in the case of a Lloyd's syndicate, the total of the proportions underwritten by all the members of the syndicate taken together) is shown in this Policy.
In the case of a Lloyd's syndicate, each member of the syndicate (rather than the syndicate itself) is an insurer. Each member has underwritten a proportion of the total shown for the syndicate (that total itself being the total of the proportions underwritten by all the members of the syndicate taken together). The liability of each member of the syndicate is several and not joint with other members. A member is liable only for that member's proportion. A member is not jointly liable for any other member's proportion. Nor is any member otherwise responsible for any liability of any other insurer that may underwrite this Policy. The business address of each member is Lloyd's, One Lime Street, London EC3M 7HA United Kingdom. The identity of each member of a Lloyd's syndicate and their respective proportion may be obtained by writing to Market Services, Lloyd's, at the above address. Although reference is made at various points in this clause to "this Policy" in the singular, where the circumstances so require this should be read as a reference to Policies in the plural.

Wherever the word Insurers is mentioned in this clause, this is deemed to also mean reinsured in respect of reinsurance business.

W.  SUBROGATION: The Companies may require from the Insured an assignment of all right of recovery against any party for loss to the extent that payment has been made by the Companies, but the Companies shall not acquire any rights of recovery which the Insured has expressly waived in writing prior to loss nor shall such waiver in writing affect the Insured's rights under this Policy.

The Companies do waive rights of recovery against any unit-owner of a Condominium Association.

However, notwithstanding the foregoing, the Companies shall be subrogated to all the Insured's rights of recover against:

1.  any Architect or Engineer, whether named as an Insured or not, for any loss or damage arising out of the performance of professional services in their capacity as such and caused by an error, omission, deficiency or act of the Architect or Engineer, by any person employed by them or by any others for whose acts they are legally liable, and

2.  any manufacturer or supplier of machinery, equipment or other property, whether named as an Insured or not, for the cost of making good any loss or damage which said party has agreed to make good under a guarantee or warranty, whether expressed or implied.

Any recovery as a result of subrogation proceedings arising out of an **Occurrence**, after expenses incurred in such subrogation proceedings are deducted, shall accrue to the Insured in the proportion that the deductible amount and/or any provable uninsured loss amount bears to the entire provable loss amount.

The Insured will cooperate with the Companies and, upon the Companies' request and expense will:

    1.  Attend hearings and trials; and

    2.  Assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses, and conducting suits.

X.  SUIT AGAINST COMPANIES:  No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the Insured shall have fully complied with all the requirements of this Policy, nor unless the same be commenced within twelve (12) months next after the date of the loss, provided however, that if under the laws of the jurisdiction in which the property is located such time limitation is invalid, then any such claims shall be void unless such action, suit or proceedings is commenced within the shortest limit of time permitted by the laws of such jurisdiction.

Y.  TERRITORIAL LIMITATIONS:  Payment of loss under this Policy shall only be made in full compliance with all United States of America economic or trade sanction laws or regulations, including, but not limited to, sanctions, laws and regulations administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

Z.  TITLES OF PARAGRAPHS:  The titles of the various paragraphs of this Policy (and of endorsements included in this Policy) are solely for reference and shall not in any way affect the provisions to which they relate.

AA. VACANCY:  The Insured has permission to cease business operations or to have any insured **Building** vacant or unoccupied, provided that the fire protection, security and alarm services are maintained. The insured **Building** is considered vacant or unoccupied when it does not contain adequate Covered Property to conduct customary business operations, but this provision shall not apply to any time period when customary business operations are suspended due to circumstances that are usual to such business operations. The Insured must notify AmRisc no later than 90 days after the cessation of business operations, vacancy or un-occupancy. If not so notified within 90 days, the Deductible shall be the greater of: double the applicable peril deductible; or $100,000.This restriction shall not apply to any **Building** in the course of construction or renovation.


## SECTION VIII - POLICY DEFINITIONS

A.  **Actual Cash Value:**  The following is added to any provision which uses the term Actual Cash Value:

Actual Cash Value is calculated as the amount it would cost to repair or replace Covered Property, at the time of loss or damage, with material of like kind and quality, subject to a deduction for deterioration, depreciation and obsolescence. Actual Cash Value applies to valuation of Covered Property regardless of whether that property has sustained partial or total loss or damage.

The Actual Cash Value of the lost or damaged property may be significantly less than its replacement cost.

B.  **Aircraft or Vehicle Impact** means only physical contact of an aircraft, spacecraft, self-propelled missile, or objects falling therefrom, or vehicle or an object thrown up by a vehicle.

C.  **Average Daily Value (ADV):**  Average Daily Value shall be the total 100% Time Element Value that would have been projected for the Period of Interruption for the **Location(s)** where the physical loss or damage occurs, had no physical loss or damage occurred, divided by the number of working days in

such period.  The sum shall include all Time Element values to which the operations of the Locations(s) directly or indirectly contribute

D.  **Building**:  Building is defined as a fully enclosed permanent structure with walls and a continuous roof.

E.  **Catastrophic Ground Cover Collapse** means direct physical loss or damage to Covered Property caused by or resulting from catastrophic ground cover collapse, meaning geological activity that results in all of the following:

   1.  The abrupt collapse of the ground cover;

   2.  A depression in the ground cover clearly visible to the naked eye;

   3.  Structural damage to the building, including the foundation; and

   4.  The insured **Building** or structure being condemned and ordered to be vacated by the governmental agency authorized by law to issue such an order for that structure.

   However, structural damage consisting merely of the settling or cracking of a foundation, structure or building does not constitute loss or damage resulting from a catastrophic ground cover collapse.

   The Earth Movement exclusion does not apply to coverage for Catastrophic Ground Cover Collapse.

   Coverage for Catastrophic Ground Cover Collapse does not increase the applicable Limit of Insurance. Regardless of whether loss or damage attributable to catastrophic ground cover collapse also qualifies as Sinkhole Loss or Earth Movement (if either or both of these causes of loss are covered), only one Limit of Insurance will apply to such loss or damage.

F.  **Collapse** means an abrupt falling down or caving in of a **building** or any part of a **building** with the result that the **building** or part of the **building** cannot be occupied for its current intended purpose. The Collapse must be caused by or resulting from one or more of the following:

   1.  Building decay that is hidden from view, unless the presence of such decay is known to the Insured prior to collapse;

   2.  Insect or vermin damage that is hidden from view, unless the presence of such damage is known to the Insured prior to collapse;

   3.  Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs during the course of construction, remodeling or renovation.

   4.  Use of defective material or methods in construction, remodeling or renovation if the abrupt collapse occurs after the construction, remodeling or renovation is complete, but only if the collapse is caused in part by:

      a)  A cause of loss listed in F.1. or F.2;

      b)  One or more of the **Defined Causes of Loss**;

      c)  Breakage of building glass;

      d)  Weight of people or personal property; or

      e)  Weight of rain that collects on a roof.

   5.  **Catastrophic Ground Cover Collapse**.

G.  **Companies**:  The following words shall be synonymous with each other:  "Underwriters", "Insurers" and "Companies".

H. **Defined Cause of Loss** means Fire, Lightning, **Explosion, Windstorm or Hail, Smoke, Aircraft or Vehicle Impact, Riot, Strike or Civil Commotion, Vandalism and Malicious Mischief,** or **Leakage From Fire Protection Equipment**.

I. **Earth Movement** means any natural or manmade:

1. Earthquake, including any earth sinking, rising or shifting related to such event;

2. Landslide, including any earth sinking, rising or shifting related to such event;

3. Mine subsidence, meaning subsidence of a man-made mine, whether or not mining activity has ceased;

4. Earth sinking, rising or shifting, including soil conditions which cause settling, cracking or other disarrangement of foundations or other parts of realty. Soil conditions include contraction, expansion, freezing, thawing, erosion, improperly compacted soil and the action of water under the ground surface

5. Shocks, tremors, mudslide, mud flow, rock falls, volcanic eruption, **Sinkhole Loss,** subsidence or any other **Earth Movement**.

6. Sprinkler Leakage caused by or resulting from **Earth Movement**.

J. **Earth Movement Counties:**   As referenced in this Policy, designated Earthquake Zones shall be defined as all **Locations** situated within the States or Counties as specified below:

1. **Pacific Northwest States:**

   Oregon and Washington.

2. **New Madrid Earthquake Zone Counties:**

   Arkansas: Arkansas, Clay, Cleburne, Conway, Craighead, Crittenden, Cross, Desha, Faulkner, Fulton, Independence, Izard, Greene, Jackson, Jefferson, Lawrence, Lee, Lincoln, Lonoke, Mississippi, Monroe, Phillips, Prairie, Poinsett, Pulaski, Randolph, Sharp, St. Francis, Stone, Van Buren, White, and Woodruff.

   Illinois: Alexander, Bond, Calhoun, Christian, Clark, Clay, Clinton, Coles, Crawford, Cumberland, Edwards, Effingham, Fayette, Franklin, Gallatin, Greene, Hamilton, Hardin, Jackson, Jasper, Jefferson, Jersey, Johnson, Lawrence, Macoupin, Madison, Marion, Massac, Monroe, Montgomery, Moultrie, Perry, Pope, Pulaski, Randolph, Richland, Saline, Shelby, St. Clair, Union, Wabash, Washington, Wayne, White, and Williamson.

   Indiana: Daviess, Dubois, Gibson, Knox, Perry, Pike, Posey, Spencer, Sullivan, Vanderburgh, and Warrick.

   Kentucky: Ballard, Caldwell, Calloway, Carlisle, Christian, Crittenden, Daviess, Fulton, Graves, Hancock, Henderson, Hickman, Hopkins, Livingston, Lyon, Marshall, McCracken, McLean, Muhlenberg, Ohio, Todd, Trigg, Union, and Webster.

   Mississippi: Alcorn, Benton, Bolivar, Coahoma, De Soto, Lafayette, Marshall, Panola, Quitman, Sunflower, Tallahatchie, Tate, Tippah, Tunica, and Union.

   Missouri: Bollinger, Butler, Cape Girardeau, Carter, Crawford, Dent, Dunklin, Franklin, Howell, Iron, Jefferson, Lincoln, Madison, Mississippi, New Madrid, Oregon, Pemiscot, Perry, Reynolds, Ripley, Scott, Shannon, St. Charles, St. Francois, St. Louis City, St. Louis, Ste. Genevieve, Stoddard, Warren, Washington, and Wayne.

Tennessee: Benton, Carroll, Chester, Crockett, Decatur, Dickson, Dyer, Fayette, Gibson, Hardeman, Hardin, Haywood, Henderson, Henry, Hickman, Houston, Humphreys, Lake, Lauderdale, Madison, McNairy, Montgomery, Obion, Perry, Shelby, Stewart, Tipton, and Weakley.

K. **Electronic Data and Media** means data, messages, information, coding, programs, instructions or any other software stored on electronic, electromechanical, electromagnetic data processing or electronically controlled production equipment and distributed by means of a computer network or is produced in a format for use with a computer.

L. **Equipment Breakdown** means:

    1. Mechanical breakdown, including rupture or bursting caused by centrifugal force;

    2. Artificially generated electrical current, including electric arcing, that disturbs electrical devices, appliances or wires;

    3. Explosion of steam boilers, steam pipes, steam engines or steam turbines owned or leased by the Insured, or operated under the control of the Insured;

    4. Loss or damage to steam boilers, steam pipes, steam engines or steam turbines caused by or resulting from any condition or event inside such equipment; or

    5. Loss or damage to hot water boilers or other water heating equipment caused by or resulting from any condition or event inside such boilers or equipment.

M. **Explosion:**  Explosion does not include loss or damage occasioned by or incident to explosion in or of the following equipment owned, operated or controlled by the Insured:

    1. Steam boiler, steam turbines, steam engines, and steam pipes interconnecting any of the foregoing;

    2. Moving or rotating machinery or parts thereof when such direct loss or damage is caused by centrifugal force or mechanical breakdown;

    3. Combustion gas turbines;

    4. Any products manufactured by the Insured or other property attached thereto or forming or to form a part thereof undergoing pressure tests to the extent of the loss to such property.

Explosion will include loss or damage arising or resulting from:

    1. The explosion of accumulated combustible gases or unconsumed fuel within the furnace of a boiler or pressure vessel, other than combustion gas turbines, or within the flues or passages which conduct the gases of combustion therefrom;

    2. A combustion explosion outside of any equipment excluded above even though such combustion explosion may have been the direct result of the explosion or such excluded equipment.

The following are not explosions within the intent or meaning of this definition:

    1. Electric arcing or any coincident rupture of electrical equipment due to such arcing;

    2. Bursting or rupture caused by freezing;

    3. Sonic shock waves, generally known as Sonic Boom;

    4. Bursting, rupture or collapse of any safety disc, rupture diaphragm or fusible link.

N. **Exterior Insulation and Finish Systems (EIFS):**  means a nonload bearing, exterior wall cladding system that consists of an insulation board attached either adhesively or mechanically, or both, to the

substrate; an integrally reinforced base coat; and a textured protective finish coat.  For a more detailed description, refer to website http://www.eima.com.

O.  **Fine Arts** means:   paintings; etchings; pictures; tapestries; rare or art glass; art glass windows; valuable rugs; statuary; sculptures; antique furniture; antique jewelry; bric-a-brac; porcelains; and similar property of rarity, historical value, or artistic merit, excluding automobiles, coins, stamps, furs, jewelry, precious stones, precious metal, watercraft, aircraft, money and securities.

P.  **Flood** means, whether natural or manmade: Flood waters, surface water, waves, tide or tidal water, tsunami, overflow or rupture of a dam, levee, dike, floodgates, or other surface containment structure, storm surge, the rising, overflowing or breaking of boundaries of natural or manmade bodies of water, or the spray from any of the foregoing, all whether driven by wind or not.

Water which backups or discharges from sewers, drains or sumps on the Insured's **Location** is not considered Flood, unless such backup or discharge was due to Flood as defined above.

Q.  **Fungus, Mold(s), Mildew, Spores Or Yeast:**

Fungus includes, but is not limited to, any of the plants or organisms belonging to the major group fungi, lacking chlorophyll, and including mold(s), rusts, mildews, smuts and mushrooms.

Mold includes, but is not limited to, any superficial growth produced on damp or decaying organic matter or on living organisms, and fungi that produce mold(s).

Spore means any dormant or reproductive body produced by or arising or emanating out of any fungus, mold(s), mildew, plants, organisms or microorganisms.

R.  **Hurricane:**  A hurricane is a storm system that has been declared to be a Hurricane by the National Hurricane Center of the National Weather Service.

S.  **Land** means land (except land for which values are reported and premiums are charged hereunder), such as dikes, levees, and other surface containment structures.  Surface containment structures are not land to a depth of six inches below such surface containment structures.

T.  **Leakage From Fire Protection Equipment** means direct physical loss or damage from:

1.  Water or other substances discharged from within any part of the **Fire Protection Equipment** for the insured **Location** or for any adjoining **Locations;**

2.  Collapse or fall of tanks forming a part of the **Fire Protection Equipment** or the component parts or supports of such tanks.

The term **Fire Protection Equipment** includes tanks, water mains, hydrants or valves, and any other equipment whether used solely for fire protection or jointly for fire protection and for other purposes, but does not include:

1.  Branch piping from a joint system where such branches are used entirely for purposes other than fire protection;

2.  Any underground water mains or appurtenances located outside of the insured **Location** and forming a part of the public water distribution system;

3.  Any pond or reservoir in which the water is impounded by a dam.

U.  **Location** means the location as specified in the Statement of Values on file with AmRisc, but if not so specified, location means any building, yard, dock, wharf, pier or bulkhead or any group of the foregoing bounded on all sides by public streets, clear Land space or open waterways, each not less than two hundred feet wide.  Any bridge or tunnel crossing such street, space or waterway shall render such separation inoperative for the purpose of this definition.

V. **Miscellaneous Unnamed Location(s)** means a location that has not been included in the Statement of Values on file with AmRisc and has not been reported to AmRisc as may be required in the Policy provisions elsewhere.

There is no coverage under this Paragraph for loss or damage which is covered under the Error or Omissions or Newly Acquired Property provisions of this Policy.

W. **Named Storm:** The term "Named Storm" shall include, but not be limited to, storm, cyclone, typhoon, atmospheric disturbance, depression or other weather phenomena designated by the US National Hurricane Center and where a name (and not only a number) has been applied.

X. **Occurrence** means any one loss, disaster, casualty, incident or series of losses, disasters, casualties or incidents, not otherwise excluded by this Policy and arising out of a single event or originating cause and includes all resultant or concomitant insured losses. The **occurrence** must occur during the policy period.

If more than one event for **Windstorm & Hail, Named Storm, Riot Strike Or Civil Commotion, Vandalism & Malicious Mischief, Earth Movement or Flood** covered by this Policy occurs within any period of seventy-two (72) hours during the term of this Policy, such covered events shall be deemed to be a single **Occurrence.** When filing proof of loss, the Insured may elect the moment at which the 72 hour period shall be deemed to have commenced, which shall not be earlier than the time when the first loss occurs to the Covered Property.

Y. **Pollutants or Contaminants** means any solid, liquid, gaseous or thermal irritant or contaminant, including smog, smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare or causes or threatens damage, deterioration, loss of value, marketability or loss of use to property insured hereunder, including, but not limited to, bacteria, virus, or hazardous substances as listed in the Federal Water Pollution Control Act , Clean Air Act, Resource Conservation and Recovery Act of 1976, and Toxic Substances Control Act or as designated by the U. S. Environmental Protection Agency. Waste includes materials to be recycled, reconditioned or reclaimed.

Z. **Riot, Strike or Civil Commotion** means riot and civil commotion including:

1. Acts of striking employees while occupying the insured **Location**; and

2. Pilferage or looting occurring at the time and place of a riot or civil commotion.

AA. **Sinkhole Loss**

1. As respects locations in all states, EXCEPT Florida:

Sinkhole Loss means: The sudden sinking or collapse of land into underground empty spaces created by the action of water on limestone or dolomite. This does not include:

a. The cost of filling sinkholes; or

b. Sinking or collapse of land into man-made underground cavities.

2. As respects locations in Florida:

A) Sinkhole Loss means: "structural damage" to the "principal building", including the foundation, caused by "sinkhole activity" that occurs during the policy period.

"Sinkhole activity" means settlement or systematic weakening of the earth supporting the "principal building", only if the settlement or systematic weakening results from contemporaneous movement or raveling of soils, sediments, or rock materials into subterranean voids created by the effect of water on a limestone or similar rock formation.

"Sinkhole" means a landform created by the subsidence of soil, sediment, or rock as underlying strata are dissolved by ground water.

A "sinkhole" forms by collapse into subterranean voids created by dissolution of limestone or dolostone or by subsidence as these strata are dissolved.

B) Coverage for direct physical loss caused by "sinkhole loss" that occurs during the policy period is limited to the "principal building", including the costs incurred to:

1. Stabilize the "principal building's" land and "principal building"; and

2. Repair the foundation of the "principal building."

Such work must be in accordance with the requirements of Florida Insurance Law; and in accordance with the recommendations of the Companies' professional engineer and with notice to the Insured.

The professional engineer or professional geologist must be selected or approved by the Companies.

C) Upon receipt of a claim for a sinkhole loss to a "principal building", the Companies will inspect the property to determine if there is "structural damage" that may be a result of "sinkhole activity."

In the event of a "sinkhole loss" to a "principal building", the Insured must repair the damage or loss in accordance with the recommendations of the Companies' professional engineer.

Prior to the Insured entering into a contract for performance of building stabilization or foundation repair, if the Companies professional engineer selected or approved by the Companies determines that the repairs cannot be completed within the applicable Limit of Insurance, the Companies at their option; either:

1. Pay to complete the Companies' professional engineer's recommended repairs; or

2. Pay the policy limits of the applicable building.

However, until the Insured enters into a contract for performance of building stabilization or foundation repair:

1. The Companies will not pay for underpinning or grouting or any other repair technique performed below the existing foundation of the affected "principal building"; and

2. The Companies' payment for "sinkhole loss" to the "principal building" may be limited to the actual cash value of the loss to such property.

After the Insured has entered into a contract for performance of building stabilization or foundation repair, the Companies will pay the amounts necessary to begin and perform such repairs:

1. As the work is performed; and

2. As the expenses are incurred.

If repair has begun and the Companies' professional engineer determines that the repairs will exceed the applicable Limit of Insurance, they will pay only the remaining portion of the applicable Limit of Insurance upon such determination.

The most they will pay for the total of all "sinkhole loss," including:

1.  "Principal building" and the "principal building's" land stabilization; and

2.  Foundation repair of the "principal building",

is the applicable Limit of Insurance shown in the Declarations on the affected building.

The Companies will pay for direct physical loss or damage to Business Personal Property shown in the Declarations, when the following apply:

1.  The Business Personal Property is located within a "principal building"; and

2.  The direct physical loss or damage results from or is caused by direct "sinkhole loss" that occurs during the policy period.

They will not pay for loss or damage to Business Personal Property if the loss or damage is excluded elsewhere in this policy.

Coverage for Business Personal Property caused by "sinkhole loss" does not include building repair, loss or damage to the building, stabilization of the building or land, foundation repair or other property not covered, excluded, or limited elsewhere in this policy.

D)  "Sinkhole loss" does not include:

1.  Sinking or collapse of land into man-made underground cavities; or

2.  Earthquake; or

3.  Land or the replacement, rebuilding, restoration, or value of land except as provided under B.1. above and in accordance with the recommendations of the Companies' professional engineer.

E)  In order to prevent additional damage to the "principal building", the Insured must enter into a contract for the performance of building stabilization and foundation repairs in accordance with the recommendations of the Companies' professional engineer within 90 days after the Companies confirm coverage for "sinkhole loss" and notify the Insured of such coverage.

This time period tolls if either party invokes the neutral evaluation process, and begins again 10 days after the conclusion of the neutral evaluation process.

The stabilization and all other repairs to the "principal building" and Business Personal Property must be completed within 12 months after entering into the contract for repairs unless:

1.  There is mutual agreement between the Insured and the Companies;

2.  The claim is involved with the Neutral Evaluation Process;

3.  The claim is in litigation; or

4.  The claim is under appraisal or mediation.

This Coverage Part applies when the Declarations shows a Limit of Insurance for the affected "principal building."

F) After the Companies inspect the property, they may deny the claim with or without testing provided under Section 627.7072, Florida Statutes.

   1. The Insured may demand testing, which must be communicated to the Companies in writing, within 60 days after the Insured's receipt of the Companies' denial of the claim.

   2. The Insured shall pay 50% of the actual costs of the analyses and services or $2,500, whichever is less.

   3. The Companies shall reimburse the Insured for costs in **2.** above if the Companies' engineer or their geologist provides written certification that there is "sinkhole loss."

G) If the Insured has submitted a sinkhole claim without good faith grounds for submitting such claim and such claim is not withdrawn prior to the Companies' ordering at the Insured's request, sinkhole analysis and services to investigate the claim, the Insured is required after the Companies obtain written certification that there is no "sinkhole activity", to reimburse the Companies for 50% of the actual costs, up to $2,500, of the sinkhole analysis and services provided by a professional engineer or professional geologist to conduct testing to determine the cause of loss; pursuant to Sections 627.7072 and 627.7073, Florida Statutes.

H) As a precondition for accepting payment for a "sinkhole loss," the Insured must file with the county clerk of court a copy of any sinkhole report which was prepared on the Insured's behalf or at their request.

   The Insured will bear the costs of filing and recording the sinkhole report.

I) The Insured may not accept a "rebate" from any person performing repairs, pursuant to Section 627.707, Florida Statutes.

   If the Insured receives a "rebate", coverage is void and they must refund the amount of the rebate to the Companies.

J) With respect to coverage provided by this clause, the Earth Movement and/or Settlement exclusions do not apply.

K) Neutral Evaluation Program - With respect to a claim for alleged sinkhole loss, a neutral evaluation program is available to either party if a sinkhole report has been issued pursuant to Section 627.7073, Florida Statutes.

   1. Following receipt by the Companies of a report from a professional engineer or professional geologist on the cause of loss and recommendations for land stabilization and repair of property, or if they deny the claim, they will notify the Insured of the Insured's right to participate in a neutral evaluation program administered by the Florida Department of Financial Services (hereinafter referred to as the Department).

   2. For alleged "sinkhole loss" to commercial residential properties, this program applies instead of any mediation procedure (if any) set forth elsewhere in this policy.

   3. The Insured or the Companies may file a request with the Department for neutral evaluation; the other party must comply with such request.

4. The Companies will pay the reasonable costs associated with the neutral evaluation, regardless of which party makes the request.

However, if a party chooses to hire a court reporter or stenographer to contemporaneously record and document the neutral evaluation, that party shall bear such costs.

5. The neutral evaluator will be selected from a list maintained by the Department.

The neutral evaluator must be allowed reasonable access to the interior and exterior of the "principal building" to be evaluated or for which a claim has been made.

6. The recommendation of the neutral evaluator will not be binding on the Insured or the Companies.

7. Participation in the neutral evaluation program does not change the Insured's right to file suit against the Companies in accordance with any Suit Against Companies condition in this policy; except that the time for filing suit is extended for a period of:

   a. 60 days following the conclusion of the neutral evaluation process; or

   b. five years, whichever is later.

L) Coverage for "sinkhole loss" under this clause does not increase the applicable Limit of Insurance.

Even if loss or damage qualifies under, or includes, both:

1. **Catastrophic Ground Cover Collapse** (addressed elsewhere in the policy); and

2. "Sinkhole loss,"

only the lesser Limit of Insurance will apply to such loss or damage.

M) Coverage for "sinkhole loss" under this clause does not include visible physical damage or "structural damage" to covered property or to the "principal building" including the foundation caused by "sinkhole", "sinkhole loss", or "sinkhole activity" occurring prior to the inception of this policy.

N) With respect to coverage provided by this clause, the following is added:

Any claim, including, but not limited to, initial, supplemental, and reopened claims under this policy is barred unless notice of the claim is given to the Companies in accordance with the terms of the policy within 2 years after the Insured knew or reasonably should have known about the sinkhole loss.

O) The following Definitions are added as respects to Florida Sinkhole Loss:

1. "Principal building":

   a. If the Companies are insuring Business Personal Property located within a building that they do not insure under this policy, "principal building" means:

      The building including any attached garage located at the Business Personal Property's insured location.

"Principal building" does not include property described in paragraphs b.1) through b.7) below.

b.  If the Companies are insuring a building or structure, "principal building" means each insured building, including any attached garage.

"Principal building" does not include:

1)  Appurtenant structures connected to the "principal building" by a fence, utility line, open space, or breezeway;

2)  Structures whose foundation is not part of or connected to the applicable "principal building" foundation;

These structures include, but are not limited to, screen enclosures, porches, lanais, carports, pools, pool decks, spas, gazebos, buildings that are not fully enclosed, buildings or structures constructed to be open to the weather, and other open sided or ancillary structures;

3)  Driveways, sidewalks, decks or patios; including, but not limited to, walkways, pavement, fences and other similar property;

4)  Structures and other property excluded or not covered elsewhere in the policy;

5)  Materials, equipment, supplies and temporary structures on or within 100 feet of the insured locations used for making additions, alterations or repairs to property other than the "principal building";

6)  Temporary structures on or within 100 feet of the insured locations used for making additions, alterations or repairs to the "principal building"; or

7)  Other buildings or garages whose foundation is not part of or connected to the applicable "principal building" foundation.

2.  "Primary structural member" means a structural element designed to provide support and stability for the vertical or lateral loads of the overall structure.

3.  "Primary structural system" means an assemblage of "primary structural members."

4.  "Structural damage" means when a "principal building", regardless of the date of its construction, has experienced the following:

a.  Interior floor displacement or deflection in excess of acceptable variances as defined in ACI 117-90 or the Florida Building Code, which results in settlement related damage to the interior such that the interior building structure or members become unfit for service or represents a safety hazard as defined within the Florida Building Code;

b.  Foundation displacement or deflection in excess of acceptable variances as defined in ACI 318-95 or the Florida Building Code, which results in settlement related damage to the "primary structural members" or "primary structural systems" that prevents those members or systems from supporting the loads and forces they were designed to support to the extent that stresses in those "primary structural members" or "primary structural systems" exceeds one and one-third the nominal strength allowed under the Florida Building Code for new buildings of similar structure, purpose, or location;

    c.   Damage that results in listing, leaning or buckling of the exterior load bearing walls or other vertical "primary structural members" to an extent that a plumb line passing through the center of gravity does not fall inside the middle one-third of the base as defined within the Florida Building Code;

    d.   Damage that results in the building, or any portion of the building containing "primary structural members" or "primary structural systems", being significantly likely to imminently collapse because of the movement or instability of the ground within the influence zone of the supporting ground within the sheer plane necessary for the purpose of supporting such building as defined within the Florida Building Code; or

    e.   Damage occurring on or after October 15, 2005, that qualifies as "substantial structural damage" as defined in the Florida Building Code.

    5.   "Rebate" manes remuneration, payment, gift, discount, or transfer of any item of value to the Insured by or on behalf of a person performing the repairs as an incentive or inducement to obtain repairs performed by that person.

BB. **Smoke** means loss or damage ensuing from a sudden and accidental release of Smoke.  The peril of Smoke does not include loss or damage caused by Smoke from agricultural smudging or industrial operations.

CC. **Special Flood Hazard Areas** means areas of 100-year flooding as defined by the Federal Emergency Management Agency (FEMA) and shall only include those Flood Zones that are prefixed A or V.

DD. **Tier 1** and **Tier 2**:  Shall be defined as all locations situated within Tier 1 or Tier 2 Counties, Parishes or Independent Cities as specified below:

| State | Tier 1 | Tier 2 |
|---|---|---|
| AL | Baldwin<br>Mobile | Covington<br>Escambia<br>Geneva<br>Houston |
| CT | Fairfield<br>Middlesex<br>New Haven<br>New London | |
| DE | Sussex | Kent |
| FL | All FL counties | Not Applicable |
| GA | Bryan<br>Camden<br>Chatham<br>Glynn<br>Liberty<br>Mcintosh | Brantley<br>Charlton<br>Effingham<br>Long<br>Wayne |

| HI | All HI counties | |
|---|---|---|
| LA | Cameron<br>Iberia<br>Jefferson<br>Lafourche<br>Orleans<br>Plaquemines<br>St Bernard<br>St Martin (South)<br>St Mary<br>St Tammany<br>Terrebonne<br>Vermilion | Acadia<br>Ascension<br>Assumption<br>Calcasieu<br>Iberville<br>Jefferson Davis<br>Lafayette<br>St Charles<br>St James<br>St John The Baptist<br>St Martin (North)<br>Tangipahoa<br>Washington |
| MA | Barnstable<br>Bristol<br>Dukes<br>Essex<br>Nantucket<br>Norfolk<br>Plymouth<br>Suffolk | Middlesex |
| MD | Worcester | Calvert<br>Dorchester<br>St. Mary's<br>Somerset<br>Wilcomico |
| ME | Cumberland<br>Hancock<br>Knox<br>Lincoln<br>Sagadahoc<br>Waldo<br>Washington<br>York | |
| MS | Hancock<br>Harrison<br>Jackson | George<br>Pearl River<br>Stone |
| NC | Beaufort<br>Bertie<br>Brunswick<br>Camden<br>Carteret<br>Chowan | Bladen<br>Columbus<br>Craven<br>Duplin<br>Gates<br>Hertford |

|  | | |
|---|---|---|
|  | Currituck | Jones |
|  | Dare | Lenoir |
|  | Hyde | Martin |
|  | New Hanover | Pitt |
|  | Onslow | Sampson |
|  | Pamlico | |
|  | Pasquotank | |
|  | Pender | |
|  | Perquimans | |
|  | Tyrrell | |
|  | Washington | |
| NH | Rockingham | |
|  | Strafford | |
| NJ | Atlantic | Burlington |
|  | Cape May | Cumberland |
|  | Monmouth | Essex |
|  | Ocean | Hudson |
|  | | Middlesex |
|  | | Union |
| NY | Kings | Bronx |
|  | Nassau | New York |
|  | Queens | Westchester |
|  | Richmond | |
|  | Suffolk | |
| RI | Newport | Bristol |
|  | Washington | Kent |
| SC | Beaufort | Berkeley |
|  | Charleston | Dillon |
|  | Colleton | Dorchester |
|  | Georgetown | Florence |
|  | Horry | Hampton |
|  | Jasper | Marion |
|  | | Williamsburg |
| TX | Aransas | Bee |
|  | Brazoria | Brooks |
|  | Calhoun | Fort Bend |
|  | Cameron | Goliad |
|  | Chambers | Hardin |
|  | Galveston | Harris |
|  | Jefferson | Hidalgo |
|  | Kenedy | Jackson |
|  | Kleberg | Jim Wells |
|  | Matagorda | Liberty |
|  | Nueces | Live Oak |

|    | Refugio<br>San Patricio<br>Willacy | Orange<br>Victoria<br>Wharton |
|----|----|----|
| VA | Accomack<br>Chesapeake<br>Gloucester<br>Hampton<br>Isle of Wight<br>James City<br>Lancaster<br>Mathews<br>Middlesex<br>Newport News<br>Norfolk<br>Northampton<br>Northumberland<br>Poquoson<br>Portsmouth<br>Suffolk<br>Surry<br>Virginia Beach City<br>Westmoreland<br>Williamsburg City<br>York | |

EE. **Total Insurable Values (TIV):**  The Total Insurable Values shall include all Covered Property (Real & Personal Property) and Time Element values reported on the Statement of Values on file with AmRisc.

FF. **Valuable Papers and Records** means documents that are written, printed or otherwise inscribed. These include:

1. Books, manuscripts, abstracts, maps and drawings; film and other photographically produced records, such as slides and microfilm;

2. Legal and financial agreements, such as deeds and mortgages;

3. Addressograph plates; and

4. Any electrically produced data, such as printouts, punched cards, tapes or discs.

**Valuable Papers and Records** does not mean money and securities and converted data, programs or instructions used in data processing operations, including the materials on which the data is stored.

GG. **Vandalism and Malicious Mischief** means willful and malicious damage to, or destruction of, Covered Property.  Vandalism and Malicious Mischief does not include loss or damage caused by or resulting from theft, except for real property loss or damage caused by the breaking or exiting of burglars.

HH.**Warranty:**

1. "Warranty" means any provision of an insurance contract which has the effect of requiring, as a condition precedent of the taking effect of such contract or as a condition precedent of the Companies' liability hereunder, the existence of fact which tends to diminish, or the non-existence of a fact which tends to increase, the risk of the occurrence of loss or damage within the coverage of the contract.

2. A breach of warranty shall not void an insurance contract or defeat recovery hereunder unless such breach materially increases the risk of loss, damage or injury within the coverage of the contract. If the insurance contract specified two or more distinct kinds of loss, damage or injury which are within its coverage, a breach of warranty shall not void such contract or defeat recovery hereunder with respect to any kind of loss, damage or injury other than the kind or kinds to which such warranty relates and the risk of which is materially increased by the breach of such warranty.

II. **Windstorm or Hail:** Direct action of wind or by the direct action of hail, whether accompanied by wind or not, but no liability is assumed under this peril for loss or damage caused by or resulting from frost or cold weather, ice (other than hail), snow or sleet, whether driven by wind or not.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# AmRISC CAT COVERED PROPERTY ENDORSEMENT

This endorsement modifies insurance provided by all insurance companies and Lloyd's of London (all hereinafter, the "Companies"), subject to the Contract Allocation Endorsement AR CA, under the following form (if attached to this policy):

COMMERCIAL PROPERTY COMPASS FORM

As used in this endorsement, the word "peril" is synonymous with "cause of loss"; and the term "limit of liability" is synonymous with "limit of insurance". The word "you" shall refer to the Insured.

As respects the Perils of Hurricane, Windstorm and Hail, the following is added to Section III.B., PROPERTY EXCLUDED in the Commercial Property Compass Form:

**PROPERTY NOT COVERED**

1.  **The Companies do not cover**:

    a.  Other structures

        **The Companies do not cover** other structures on the insured **Location** set apart from the **Building** by clear space. This includes structures connected to the **Building** or mobile home by only a fence, utility line or similar connection.

    b.  Animals, birds, or fish, unless owned by others and boarded by you, or if owned by you, only as "stock" while inside a **Building** described on the Statement of Values on file with AmRisc;

    c.  Accounts, bank notes, bills, bullion, coins, currency, deeds, evidences of debt; letters of credit, tickets and stamps, manuscripts, medals, money, notes, bank notes, passports, personal records, or securities;

    d.  Articles of gold, gold ware; gold-plated ware, silverware, silver-plated ware, platinum; or platinum ware, platinum-plated ware, pewter, pewter ware; or pewter-plated ware. This includes flatware, hollowware, tea sets, trays and trophies made of or including silver, gold, pewter or platinum.

    e.  Aircraft and parts. Aircraft means any contrivance used or designed for flight, except model or hobby aircraft not used or designed to carry people or cargo; or if owned by you, only as "stock" while inside an insured **Building**;.

    f.  Motor vehicles or all other motorized land conveyances; trailers on wheels. This includes:
        (1) Their equipment and accessories; or
        (2) Electronic apparatus that is designed to be operated solely by use of the power from the electrical system of motor vehicles or all other motorized land conveyances. Electronic apparatus includes:
            (a) Accessories or antennas; or
            (b) Tapes, wires, records, discs or other media for use with any electronic apparatus described in this item f.
        The exclusion of property described in f.(1) and f.(2) above, applies only while the property is in or upon the vehicle or conveyance.

**The Companies do cover** vehicles or conveyances, other than autos or vehicles you hold for sale, not subject to motor vehicle registration contained within an enclosed structure on the insured **Location** which are:
  (a) contained within an enclosed structure; and
  (b) used to service an insured **Location**; or
  (c) designed for assisting the handicapped; and
  (d) are self-propelled machines; and
  (e) are not autos or vehicles you hold for sale.

g. Watercraft and their furnishings, other than rowboats and canoes out of water at the insured **Location**, unless:
  (1) owned by you only as "stock" when removed from, out of, or not over water; and
  (2) located in or within 100 feet of the insured **Building**.

h. Data, including data stored in:
  (1) Books of account, card index systems, drawings or other paper records; or
  (2) Electronic data processing tapes, wires, records, drums, cells, discs, magnetic recording, storage or other software media.

  However, the Companies do cover up to $1,000 under item h.(2) the cost of blank or unexposed recording or storage media and of prerecorded computer programs available in the market.  This limit does not increase the contents Limit of Liability.

  If Electronic Data Processing is covered by this policy, this exclusion does not apply to the extent that coverage is provided under such extension.

i. Credit cards or fund transfer cards;

j. Business personal property while airborne, waterborne or in transit;

k. Paint or waterproof material including stain, applied to the exterior of any **Building** or structure;

l. Pilings, piers, wharves, retaining walls, seawalls, bulkheads, beach or diving platforms or appurtenances, docks or boathouses;

m. Trees, shrubs, plants, flowers, lawns, tee boxes, fairways, greens, landscaping, bunkers or sand traps, or artifical turf;

n. Windmills, wind pumps or their towers, or smokestacks;

o. Awnings, canopies or other roof like projection or covering, whether fabric or not, whether permanent or retractable;

p. Steeples and fountains;

q. Grain, hay, straw and other crops, crop silos or their contents;

r. Bridges, boardwalks, trestles, catwalks, bleachers, dune walks, ramps, roadways, walks, decks, and patios and similar structures, or other paved or graveled surfaces, whether or not attached to the **Building**;

s. Amusement equipment;

t. Fabric windscreens on fences;

u. Any structure or attachment, whether attached or separate from the insured **Building**, where that structure's roof coverings are of fabric, thatch, lattice, or slats and similar material; or where that structure's exterior wall coverings are of fabric, thatch, lattice, or slats and similar material, and personal property within or on these structures;

v. Slat houses, chickees, tiki huts, gazebos and pergolas or similar structures and personal property contained within or on these structures;

w. Signs, scoreboards, radio or television antennas or aerials, satellite dishes (including lead-in wiring, masts or towers and their supports), fences, gates, fountains, statues, monuments, utility poles (including light fixtures), light poles, traffic lights and traffic signals.

However, the Companies **do cover** solar paneling and other similar water heating or electrical apparatus when:
(1) outside the **Building** (including lead-in pipes, wiring, masts or towers and their supports), and
(2) permanently installed, and
(3) located on the insured **Location**, and
(4) used for the service of the covered property.

x. Land, including land on which the other structures are located.

2. The Companies **do cover** the following property if, and only if, it is described as separate and specific items on the Statement of Values on file with AmRisc:

a. Any structure, whether attached or separate from the covered **Building**, where that structure's roof covering is of screen;
b. Signs, scoreboards, light poles, fences, gates, fountains, statues, monuments, artificial turf, bleachers, property walls and similar structures separating parcels of land;
c. Greenhouses, glasshouses, hothouses, open-sided sheds, carports, cabanas, gazebos, swimming pools, jacuzzis, hot tubs/spas, or similar structures, including their decking, but not:
(1) business personal property or contents contained within or on these structures, or
(2) when these structures are comprised of fabric, thatch, lattice, slats or similar material.
d. Enclosed garages, enclosed tool sheds, enclosed sheds, enclosed pump houses, enclosed boiler sheds, enclosed pool houses, enclosed air conditioning sheds, enclosed guardhouses, enclosed workshops, enclosed maintenance sheds, and the business personal property or contents contained within or on the structures;
e. Any structure, including the contents and business personal property contained within or on the structure, that is located in whole or in part over water;
f. Mobile homes, temporary **Buildings**, portable **Buildings**, travel trailers and similar structures or conveyances, (including business personal property contained in or on or pertaining to these structures or conveyances);
g. However, the Companies do not cover business personal property or contents of any structure or other property regardless of whether it is described as separate and specific item(s) in the Statement of Values on file with AmRisc, when:
(1) Such structure is comprised of fabric, thatch, lattice, slats or similar material; or
(2) Not covered as explained in other sections of this policy.
h. Self-supported, stand alone canopies.

**LIMIT**

As respects property covered by this Endorsement, the Companies' Limit of Liability shall be limited to the values shown on the Statement of Values on file with AmRisc; however, in no event to exceed $100,000 per Occurrence as respects all property combined.

**DEDUCTIBLE**

As respects property covered by this Endorsement, the Deductible shall be equal to 10% of the total insurable values of the property covered by this endorsement, subject to a minimum deductible of $100,000 per Occurrence.

This deductible shall be a separate deductible from any other deductible stated elsewhere in the policy, but only the largest minimum deductible shall apply.

**DEFINITIONS**

As used in this endorsement these words have the following meaning:

1. "Windstorm" means wind, wind gusts, tornadoes or cyclones which result in direct physical loss or damage to property.

2. "Hurricane" means:
   a. Coverage for loss or damage caused by the peril of windstorm during a hurricane.
   b. "Windstorm" for the purposes of subparagraph a. means wind, wind gusts, hail, rain, or tornadoes or cyclones caused by or resulting from a hurricane which results in direct physical loss or damage to property.
   c. "Hurricane" for the purposes of subparagraphs a. and b. means a storm system that has been declared to be a hurricane by the National Hurricane Center of the National Weather Service. The duration of the hurricane includes the time period, in the state of the insured **Location**:
      (1) Beginning at the time of a hurricane watch or warning is issued by the National Hurricane Center of the National Weather Service;
      (2) Continuing for the time period during which the hurricane conditions exist; and
      (3) Ending 72 hours following the termination of the last hurricane watch or hurricane warning issued by the National Hurricane Center of the National Weather Service.

All other terms and conditions remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LLOYD'S OF LONDON AMENDATORY

WITH RESPECT TO THE COVERAGE PROVIDED BY **CERTAIN UNDERWRITERS AT LLOYD'S, LONDON**, THE FOLLOWING CLAUSES (SERVICE OF SUIT, APPLICABLE LAW, and SLC-3) SHALL APPLY:

## Service of Suit Clause (U.S.A.)
### NMA 1998 4/24/86 (USA date)

It is agreed that in the event of the failure of the Underwriters hereon to pay any amount claimed to be due hereunder, the Underwriters hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon

    1. California Insureds:                2. All other Insureds:
       Foley & Lardner, LLP                Mendes and Mount
       555 California Street, Suite 1700       750 Seventh Avenue
       San Francisco, CA 94104-1520         New York, NY 10019-6829;
       USA                         USA

and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Insured (or Reinsured) to have a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereon hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named person to whom the said officer is authorized to mail such process or a true copy thereof.

## APPLICABLE LAW (U.S.A.)
### LMA5021 9/14/2005 (USA date)

This Insurance shall be subject to the applicable state law to be determined by the court of competent jurisdiction as determined by the provisions of the Service of Suit Clause (USA).

SLC-3 (USA) NMA 2868 (8/24/2000 – USA date)

 # Lloyd's Certificate

**This Insurance** is effected with certain Underwriters at Lloyd's, London.

**This Certificate** is issued in accordance with the limited authorization granted to the Correspondent by certain Underwriters at Lloyd's, London whose syndicate numbers and the proportions underwritten by them can be ascertained from the office of the said Correspondent (such Underwriters being hereinafter called "Underwriters") and in consideration of the premium specified herein, Underwriters hereby bind themselves severally and not jointly, each for his own part and not one for another, their Executors and Administrators.

**The Assured** is requested to read this Certificate, and if it is not correct, return it immediately to the Correspondent for appropriate alteration.

All inquiries regarding this Certificate should be addressed to the following Correspondent:

**SLC-3 (USA)** NMA2868 (08/24/2000 – USA date)

**CERTIFICATE PROVISIONS**

1. **Signature Required.** This Certificate shall not be valid unless signed by the Correspondent on the attached Declaration Page.

2. **Correspondent Not Insurer (all states, except California).** The Correspondent is not an Insurer hereunder and neither is nor shall be liable for any loss or claim whatsoever. The Insurers hereunder are those Underwriters at Lloyd's, London whose syndicate numbers can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

   **Correspondent Not Insurer (California).** The Correspondent is not an Insurer of the insurance described herein and neither is nor shall be liable for any loss or claim whatsoever. The Insurers of such insurance are those Underwriters at Lloyd's, London, whose names can be ascertained as hereinbefore set forth. As used in this Certificate "Underwriters" shall be deemed to include incorporated as well as unincorporated persons or entities that are Underwriters at Lloyd's, London.

3. **Cancellation (all states, except California).** If this Certificate provides for cancellation and this Certificate is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

   **Cancellation (California).** If the insurance described herein provides for cancellation and if said insurance is cancelled after the inception date, earned premium must be paid for the time the insurance has been in force.

4. **Service of Suit (all states, except California).** It is agreed that in the event of the failure of Underwriters to pay any amount claimed to be due hereunder, Underwriters, at the request of the Assured, will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon the firm or person named in item 6 of the attached Declaration Page, and that in any suit instituted against any one of them upon this contract, Underwriters will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

   The above-named are authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event such a suit shall be instituted.

   Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters hereby designate the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary hereunder arising out of this contract of insurance, and hereby designate the above-mentioned as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**Service of Suit Clause (California)**.  In the event of the failure of Underwriters to pay any amount claimed to be due under the insurance described herein, Underwriters have agreed that, at the request of the Assured, they will submit to the jurisdiction of a Court of competent jurisdiction within the United States.   Nothing in this Clause constitutes or should be understood to constitute a waiver of Underwriters' rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States.  In any suit instituted against any one of them upon the insurance described herein, Underwriters have agreed to abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

Underwriters have further agreed that service of process in such suit may be made upon the firm or person named in item 6 on the attached Declaration Page.  Underwriters have agreed that such firm or person is authorized and directed to accept service of process on behalf of Underwriters in any such suit and/or upon the request of the Assured to give a written undertaking to the Assured that they will enter a general appearance upon Underwriters' behalf in the event that such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefor, Underwriters have designated the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Assured or any beneficiary arising out of the insurance described herein, and have designated the above-mentioned as the person to whom the said officer is authorized to mail such process or true copy thereof.

5. **Assignment (all states, except California).** This Certificate shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

   **Assignment (California).**  The insurance described herein shall not be assigned either in whole or in part without the written consent of the Correspondent endorsed hereon.

6. **Attached Conditions Incorporated (all states, except California).** This Certificate is made and accepted subject to all the provisions, conditions and warranties set forth herein, attached or endorsed, all of which are to be considered as incorporated herein.

   **Attached Conditions Incorporated (California).**  The insurance described in this Certificate is subject to all provisions, conditions and warranties set forth herein, attached, or endorsed, all of which are to be considered incorporated herein as further descriptive of the insurance the placement of which is evidenced by this Certificate.

7. **Short Rate Cancellation (all states, except California).** If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation.

   **Short Rate Cancellation (California).**  If the attached provisions provide for cancellation, the table below will be used to calculate the short rate proportion of the premium when applicable under the terms of cancellation. Premiums for cancellations pursuant to Paragraph 6 of the Notice on page 1 of this Certificate will be prorated.

**Short Rate Cancellation Table For Term of One Year (for all states, including California).**

| Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium | Days Insurance in Force | Per Cent of one year Premium |
|---|---|---|---|---|---|---|---|
| 1 | 5% | 66 - 69 | 29% | 154 - 156 | 53% | 256 - 260 | 77% |
| 2 | 6 | 70 - 73 | 30 | 157 - 160 | 54 | 261 - 264 | 78 |
| 3 - 4 | 7 | 74 - 76 | 31 | 161 - 164 | 55 | 265 - 269 | 79 |
| 5 - 6 | 8 | 77 - 80 | 32 | 165 - 167 | 56 | 270 - 273 ( 9 mos ) | 80 |
| 7 - 8 | 9 | 81 - 83 | 33 | 168 - 171 | 57 | 274 - 278 | 81 |
| 9 - 10 | 10 | 84 - 87 | 34 | 172 - 175 | 58 | 279 - 282 | 82 |
| 11 - 12 | 11 | 88 - 91 ( 3 mos ) | 35 | 176 - 178 | 59 | 283 - 287 | 83 |
| 13 - 14 | 12 | 92 - 94 | 36 | 179 - 182 ( 6 mos ) | 60 | 288 - 291 | 84 |
| 15 - 16 | 13 | 95 - 98 | 37 | 183 - 187 | 61 | 292 - 296 | 85 |
| 17 - 18 | 14 | 99 - 102 | 38 | 188 - 191 | 62 | 297 - 301 | 86 |
| 19 - 20 | 15 | 103 - 105 | 39 | 192 - 196 | 63 | 302 - 305 ( 10 mos ) | 87 |
| 21 - 22 | 16 | 106 - 109 | 40 | 197 - 200 | 64 | 306 - 310 | 88 |
| 23 - 25 | 17 | 110 - 113 | 41 | 201 - 205 | 65 | 311 - 314 | 89 |
| 26 - 29 | 18 | 114 - 116 | 42 | 206 - 209 | 66 | 315 - 319 | 90 |
| 30 - 32 ( 1 mos ) | 19 | 117 - 120 | 43 | 210 - 214 ( 7 mos ) | 67 | 320 - 323 | 91 |
| 33 - 36 | 20 | 121 - 124 ( 4 mos ) | 44 | 215 - 218 | 68 | 324 - 328 | 92 |
| 37 - 40 | 21 | 125 - 127 | 45 | 219 - 223 | 69 | 329 - 332 | 93 |
| 41 - 43 | 22 | 128 - 131 | 46 | 224 - 228 | 70 | 333 - 337 ( 11 mos ) | 94 |
| 44 - 47 | 23 | 132 - 135 | 47 | 229 - 232 | 71 | 338 - 342 | 95 |
| 48 - 51 | 24 | 136 - 138 | 48 | 233 - 237 | 72 | 343 - 346 | 96 |
| 52 - 54 | 25 | 139 - 142 | 49 | 238 - 241 | 73 | 347 - 351 | 97 |
| 55 - 58 | 26 | 143 - 146 | 50 | 242 - 246 ( 8 mos ) | 74 | 352 - 355 | 98 |
| 59 - 62 ( 2 mos ) | 27 | 147 - 149 | 51 | 247 - 250 | 75 | 356 - 360 | 99 |
| 63 - 65 | 28 | 150 - 153 ( 5 mos ) | 52 | 251 - 255 | 76 | 361 - 365 ( 12 mos ) | 100 |

Rules applicable to insurance with terms less than or more than one year:

A.   If insurance has been in force for one year or less, apply the short rate table for annual insurance to the full annual premium determined as for insurance written for a term of one year.

B.   If insurance has been in force for more than one year:

1.   Determine full annual premium as for insurance written for a term of one year.

2.   Deduct such premium from the full insurance premium, and on the remainder calculate the pro rata earned premium on the basis of the ratio of the length of time beyond one year the insurance has been in force to the length of time beyond one year for which the policy was originally written.

3.   Add premium produced in accordance with items (1) and (2) to obtain earned premium during full period insurance has been in force.

8.   **(California)** The certificate is intended for use as evidence of the placement of the insurance described herein, in accordance with Section 1764 of the California Insurance Code.

**This Declaration Page is attached to and forms part of Certificate provisions (Form SLC-3 USA NMA2868)**

Previous No.   *        Authority Ref. No.   *        Certificate No.   *

* As stated elsewhere in the Policy

1.    Name and address of the Assured:

As stated elsewhere in the Policy

2.    Effective from   *   to   *   both days at 12:01 a.m. standard time.

* As stated elsewhere in the Policy

3.    Insurance is effective with certain **UNDERWRITERS AT LLOYD'S, LONDON.**

   Percentage:  As stated elsewhere on the Policy  %

4.    Amount   *         Coverage   *          Rate   *        Premium   *

* As stated elsewhere in the Policy

5.    Forms attached hereto and special conditions:

As stated elsewhere in the Policy

6.    Service of Suit may be made upon:

As stated elsewhere in the Policy

7.    In the event of a claim, please notify the following:

As stated elsewhere in the Policy

**Dated**  As stated elsewhere in the Policy                by       As stated elsewhere in the Policy

Correspondent



One Lime Street London EC3M 7HA

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## INDIAN HARBOR INSURANCE COMPANY AMENDATORY

WITH RESPECT TO THE COVERAGE PROVIDED BY **INDIAN HARBOR INSURANCE COMPANY**, THE FOLLOWING CLAUSES SHALL APPLY:

### Service of Process Clause

1. **The following Service of Process Clause applies to all policies written in Alabama, Arkansas, Colorado, Connecticut, Delaware, District of Columbia, Florida, Georgia, Hawaii, Indiana, Iowa, Kansas, Maryland, Massachusetts, Mississippi, Montana, Nevada, New Hampshire, New Jersey, North Carolina, Oklahoma, Oregon, Pennsylvania, Tennessee, Texas, Washington and Wyoming:**

#### Service of Process

The Commissioner of Insurance of the above applicable state is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

Sarah Mims
Assistant Secretary
505 Eagleview Boulevard, Suite 100
Exton, Pennsylvania 19341-0636

as its agent in the above applicable state to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

2. **The following Service of Process Clause applies to all policies written in Alaska, Arizona, Idaho, Illinois, Nebraska, South Carolina and South Dakota:**

#### Service of Process

The Director of Insurance of the above applicable state is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

Sarah Mims
Assistant Secretary
505 Eagleview Boulevard, Suite 100
Exton, Pennsylvania 19341-0636

as its agent in the above applicable state to whom such process shall be forwarded by the Director of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

XL SOP 11 12

3. **The following Service of Process Clause applies to all policies written in Kentucky, Louisiana and West Virginia:**

### Service of Process

The Secretary of State of the above applicable state is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in the above applicable state to whom such process shall be forwarded by the Secretary of State.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

4. **The following Service of Process Clause applies to all policies written in New Mexico, New York and Ohio:**

### Service of Process

The Superintendent of Insurance of the above applicable state is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in the above applicable state to whom such process shall be forwarded by the Superintendent of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

5. **The following Service of Process Clause applies to all policies written in California:**

### Service of Process

The Commissioner of Insurance of the State of California is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> John Oster
> 1990 North California Boulevard
> Suite 740
> Walnut Creek, CA 94596

XL SOP 11 12

as its agent in California to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

6. **The following Service of Process Clause applies to all policies written in Maine:**

## Service of Process

The Acting Superintendent of Insurance of the State of Maine is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> CT Corporation System
> One Portland Square
> Portland, ME 04101

as its agent in Maine to whom such process shall be forwarded by the Acting Superintendent of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

7. **The following Service of Process Clause applies to all policies written in Michigan:**

## Service of Process

The Commissioner of Insurance of the State of Michigan is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> The Corporation Company
> 30600 Telegraph Road
> Bingham Farms, MI 48025

as its agent in Michigan to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

8. **The following Service of Process Clause applies to all policies written in Minnesota:**

## Service of Process

The Commissioner of Commerce of the State of Minnesota is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

XL SOP 11 12

Sarah Mims
Assistant Secretary
505 Eagleview Boulevard, Suite 100
Exton, Pennsylvania 19341-0636

as its agent in Minnesota to whom such process shall be forwarded by the Commissioner of Commerce.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

9. **The following Service of Process Clause applies to all policies written in Missouri:**

### Service of Process

The Director of the Department of Insurance of the State of Missouri is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

Sarah Mims
Assistant Secretary
505 Eagleview Boulevard, Suite 100
Exton, Pennsylvania 19341-0636

as its agent in Missouri to whom such process shall be forwarded by the Director of the Department of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

10. **The following Service of Process Clause applies to all policies written in Rhode Island:**

### Service of Process

The Commissioner of Insurance of the State of Rhode Island is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

Ms. Sherry A. Goldin
CT Corporation System
10 Weybosset Street
Providence, RI 02903

as its agent in Rhode Island to whom such process shall be forwarded by the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

XL SOP 11 12

**11. The following Service of Process Clause applies to all policies written in Utah:**

## Service of Process

The Commissioner of Insurance and Lieutenant Governor of the State of Utah is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in Utah to whom such process shall be forwarded by the Commissioner of Insurance or Lieutenant Governor.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

**12. The following Service of Process Clause applies to all policies written in Virginia:**

## Service of Process

The Clerk of the Commissioner of Insurance of the State of Virginia is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy. The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

as its agent in Virginia to whom such process shall be forwarded by the Clerk of the Commissioner of Insurance.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.

**13. The following Service of Process Clause applies to all policies written in Wisconsin:**

## Service of Process

The Commissioner of Insurance and the Department of Financial Institutions of the State of Wisconsin is hereby designated the true and lawful attorney of the Company upon whom may be served all lawful process in any action, suit or proceeding arising out of this policy.  The Company further designates:

> Sarah Mims
> Assistant Secretary
> 505 Eagleview Boulevard, Suite 100
> Exton, Pennsylvania 19341-0636

XL SOP 11 12

as its agent in Wisconsin to whom such process shall be forwarded by the Commissioner of Insurance or the Department of Financial Institutions.

For Illinois exposures, the Insurer further designates the Director of the Illinois Division of Insurance and his successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of an Illinois exposure and this contract of insurance.


All other terms and conditions of this policy remain unchanged.

XL SOP 11 12

# NOTICE TO POLICYHOLDERS

**FRAUD NOTICE**

| | |
|---|---|
| **Arkansas** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Colorado** | **It is unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company. Penalties may include imprisonment, fines, denial of insurance, and civil damages. Any insurance company or agent of an insurance company who knowingly provides false, incomplete, or misleading facts or information to a policyholder or claimant for the purpose of defrauding or attempting to defraud the policyholder or claimant with regard to a settlement or award payable for insurance proceeds shall be reported to the Colorado Division of Insurance within the Department of Regulatory Agencies.** |
| **District of Columbia** | **WARNING:** It is a crime to provide false or misleading information to an insurer for the purpose of defrauding the insurer or any other person. Penalties include imprisonment and/or fines. In addition, an insurer may deny insurance benefits if false information materially related to a claim was provided by the applicant. |
| **Florida** | Any person who knowingly and with intent to injure, defraud, or deceive any insurer files a statement of claim or an application containing any false, incomplete, or misleading information is guilty of a felony of the third degree. |
| **Kansas** | A "fraudulent insurance act" means an act committed by any person who, knowingly and with intent to defraud, presents, causes to be presented or prepares with knowledge or belief that it will be presented to or by an insurer, purported insurer, broker or any agent thereof, any written, electronic, electronic impulse, facsimile, magnetic, oral, or telephonic communication or statement as part of, or in support of, an application for the issuance of, or the rating of an insurance policy for personal or commercial insurance, or a claim for payment or other benefit pursuant to an insurance policy for commercial or personal insurance which such person knows to contain materially false information concerning any fact material thereto; or conceals, for the purpose of misleading, information concerning any fact material thereto. |
| **Kentucky** | Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any materially false information or conceals, for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime. |
| **Louisiana** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Maine** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties may include imprisonment, fines, or denial of insurance benefits. |
| **Maryland** | Any person who knowingly or willfully presents a false or fraudulent claim for payment of a loss or benefit or who knowingly or willfully presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **New Jersey** | Any person who includes any false or misleading information on an application for an insurance policy is subject to criminal and civil penalties. |
| **New Mexico** | ANY PERSON WHO KNOWINGLY PRESENTS A FALSE OR FRAUDULENT CLAIM FOR PAYMENT OF A LOSS OR BENEFIT OR KNOWINGLY PRESENTS FALSE INFORMATION IN AN APPLICATION FOR INSURANCE IS GUILTY OF A CRIME AND MAY BE SUBJECT TO CIVIL FINES AND CRIMINAL PENALTIES. |

# NOTICE TO POLICYHOLDERS

| New York | **General: All applications for commercial insurance, other than automobile insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the stated value of the claim for each such violation.<br><br>**All applications for automobile insurance and all claim forms:** Any person who knowingly makes or knowingly assists, abets, solicits or conspires with another to make a false report of the theft, destruction, damage or conversion of any motor vehicle to a law enforcement agency, the department of motor vehicles or an insurance company, commits a fraudulent insurance act, which is a crime, and shall also be subject to a civil penalty not to exceed five thousand dollars and the value of the subject motor vehicle or stated claim for each violation.<br><br>**Fire:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance containing any false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime.<br><br>The proposed insured affirms that the foregoing information is true and agrees that these applications shall constitute a part of any policy issued whether attached or not and that any willful concealment or misrepresentation of a material fact or circumstances shall be grounds to rescind the insurance policy. |
|---|---|
| Ohio | Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud. |
| Oklahoma | **WARNING:** Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy containing any false, incomplete or misleading information is guilty of a felony. |
| Pennsylvania | **All Commercial Insurance, Except As Provided for Automobile Insurance:** Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.<br><br>**Automobile Insurance:** Any person who knowingly and with intent to injure or defraud any insurer files an application or claim containing any false, incomplete or misleading information shall, upon conviction, be subject to imprisonment for up to seven years and the payment of a fine of up to $15,000. |
| Puerto Rico | **Any person who knowingly and with the intention of defrauding presents false information in an insurance application, or presents, helps, or causes the presentation of a fraudulent claim for the payment of a loss or any other benefit, or presents more than one claim for the same damage or loss, shall incur a felony and, upon conviction, shall be sanctioned for each violation by a fine of not less than five thousand dollars ($5,000) and not more than ten thousand dollars ($10,000), or a fixed term of imprisonment for three (3) years, or both penalties. Should aggravating circumstances [be] present, the penalty thus established may be increased to a maximum of five (5) years, if extenuating circumstances are present, it may be reduced to a minimum of two (2) years.** |

# NOTICE TO POLICYHOLDERS

| | |
|---|---|
| **Rhode Island** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **Tennessee** | **All Commercial Insurance, Except As Provided for Workers' Compensation** It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.<br><br>**Workers' Compensation:**  It is a crime to knowingly provide false, incomplete or misleading information to any party to a workers' compensation transaction for the purpose of committing fraud. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Utah** | **Workers' Compensation:**  Any person who knowingly presents false or fraudulent underwriting information, files or causes to be filed a false or fraudulent claim for disability compensation or medical benefits, or submits a false or fraudulent report or billing for health care fees or other professional services is guilty of a crime and may be subject to fines and confinement in state prison. |
| **Virginia** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **Washington** | It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits. |
| **West Virginia** | Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance is guilty of a crime and may be subject to fines and confinement in prison. |
| **All Other States** | Any person who knowingly and willfully presents false information in an application for insurance may be guilty of insurance fraud and subject to fines and confinement in prison.  (In Oregon, the aforementioned actions may constitute a fraudulent insurance act which may be a crime and may subject the person to penalties). |

QBIL-0217 (04-15)

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# QBE INSURANCE COMPANY
# SERVICE OF PROCESS ENDORSEMENT

When a cause of action arises in any of the states listed below, service of process applies as shown below for that state. As used in this endorsement, "the Company" shall mean QBE Specialty Insurance Company.

### ALABAMA Service of Process Clause

The Company hereby designates the Commissioner of the State of Alabama as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 2 North Jackson Street, Suite 605, Montgomery, AL  36104 as the person to whom the Commissioner shall mail process.

### ALASKA Service of Process Clause

Upon any cause of action arising in Alaska under this contract, the Company may be sued. The Company appoints the Director of Insurance for the State of Alaska as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Director, or their successors in office, shall be lawful service upon the Company. The Company further designates CT Corporation System, 9360 Glacier Highway, Suite 202, Juneau, AK 99801 as the person to whom the Director is authorized to mail such process or a true copy thereof.

### ARIZONA Service of Process Clause

Upon any cause of action arising in Arizona under this contract, QBE Specialty Insurance Company (hereafter referred to as "the Company") may be sued in the circuit court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Arizona by the clerk of the court in which the action is brought. The Company further designates CT Corporation System, 2390 East Camelback Road, Phoenix, AZ 85016 as the person to whom the Director shall mail process.

### ARKANSAS Service of Process Clause

Upon any cause of action arising in Arkansas under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Arkansas and his successors in office by the clerk of the court in which the action is brought.  The Company further designates The Corporation Company, 124 West Capitol Avenue, Suite 1900, Little Rock, AR 72201 as the person to whom the Commissioner shall mail process.

### CALIFORNIA Service of Suit Clause

We hereby appoint Nancy Flores, c/o C.T. Corporation System, 818 West 7th Street, 2nd Floor,Los Angeles, California, 90017, as our true and lawful attorney in and for the State of California, upon whom all lawful process may be served in any action, "suit" or proceeding instituted in California by or on behalf of any insured or beneficiary against us arising out of this insurance policy, provided a copy of any process, "suit", complaint or summons is sent by certified or registered mail to: 88 Pine Street – 16th Floor, New York, NY 10005.

### COLORADO Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance for the State of Colorado as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates The Corporation Company, 1675 Broadway, Suite 1200, Denver, CO 80202 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### CONNECTICUT Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose. The Company appoints the Commissioner of Insurance for the State of Connecticut as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company. The Company further designates CT Corporation System, One Corporate Center, Floor 11, Hartford, CT 06103 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### DELAWARE Service of Process Clause

The Company hereby designates the Commissioner of the State of Delaware, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801 as the person to whom the Commissioner shall mail process.

### FLORIDA Service of Process Clause

The Company hereby designates the Chief Financial Officer of the Office of Insurance Regulation, as its agent upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance. The Company further designates CT Corporation System, 1200 South Pine Island Road, Plantation, FL 33324 as the person to whom the Chief Financial Officer shall mail process.

### GEORGIA Service of Process

Upon any cause of action under this policy, the Company may be sued in the superior court of the county in which the cause of action arose. The Company appoints the Georgia Commissioner of Insurance as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company. The Company further designates CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, GA 30361 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### HAWAII Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose. The Company appoints the Commissioner of Insurance for the State of Hawaii as its attorney for acceptance of service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company. The Company further designates The Corporation Company, Inc., 1136 Union Mall, Suite 301, Honolulu, HI 96813 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### IDAHO Service of Process Clause

Upon any cause of action arising in Idaho under this contract, the Company may be sued in the district court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Idaho. The Company further designates CT Corporation System, 921 S. Orchard Street, Suite G, Boise, ID 83705 as the person to whom the Director shall mail process.

### ILLINOIS Service of Process Clause

The Company hereby designates the Director of the Illinois Department of Insurance and his successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance. The Company further designates CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, IL 60604 as the person to whom the Director shall mail process.

### INDIANA Service of Process Clause

Upon any cause of action arising in Indiana under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Indiana by the clerk of the court in which the action is brought. The Company further designates C T Corporation System, 150 West Market Street, Suite 800, Indianapolis, IN 46204 as the person to whom the Commissioner shall mail process.

### KANSAS Service of Process Clause

Upon any cause of action arising in Kansas under this policy, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon

the Commissioner of Insurance of the State of Kansas and his successor or successors in office. The Company further designates The Corporation Company, Inc., 112 S.W. Seventh Street, Suite 3C, Topeka, KS 66603 as the person to whom the Commissioner shall mail process.

## KENTUCKY Service of Process Clause

Upon any cause of action arising in Kentucky under this contract, the Company may be sued in the circuit court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Secretary of State by the clerk of the court in which the action is brought. The Company further designates CT Corporation System, 306 West Main Street, Suite 512, Frankfort, KY 40601 as the person to whom the Secretary of State shall mail process.

## LOUISIANA Service of Process Clause

Upon any cause of action arising in Louisiana under this contract, the Company may be sued in the district court of the parish in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Secretary of State. The Company further designates CT Corporation System, 5615 Corporate Boulevard, Suite 400B, Baton Rouge, LA 70808 as the person to whom the Secretary of State shall mail process.

## MAINE Service of Process Clause

Upon any cause of action arising in this State under this policy, the Company may be sued in the Superior Court. Service of legal process against the Company may be made in any such action by service of two copies upon the designated agent. The Company further designates CT Corporation System, 1536 Main Street, Readfield, ME 04355 as the agent.

## MARYLAND Service of Process Clause

Upon any cause of action arising in Maryland under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Insurance Commissioner of the State of Maryland by the clerk of the court in which the action is brought. The Company further designates The Corporation Trust Incorporated, 351 West Camden Street, Baltimore, MD 21201 as the person to whom the Commissioner shall mail process.

## MASSACHUSETTS Service of Process Clause

The Company hereby designates the Commissioner of the State of Massachusetts, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates C T Corporation System, 155 Federal Street, Suite 700, Boston, MA 02110 as the person to whom the Commissioner shall mail process.

## MICHIGAN Service of Process Clause

Upon any cause of action arising in Michigan under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon Director of Insurance, c/o Resident Agent, of the State of Michigan by the clerk of the court in which the action is brought. The Company further designates The Corporation Company, 30600 Telegraph Road, Suite 2345, Bingham Farms, MI 48025 as the person to whom the Commissioner shall mail process.

## MINNESOTA Service of Process Clause

Upon any cause of action arising in Minnesota under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Commissioner of Commerce of the State of Minnesota by the clerk of the court in which the action is brought. The Company further designates C T Corporation System, Inc., 100 South 5th Street, Suite 1075, Minneapolis, MN 55402 as the person to whom the Commissioner shall mail process.

## MISSISSIPPI Service of Process Clause

The Company hereby designates the Commissioner of the State of Mississippi, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance. The Company further designates CT Corporation System, 645 Lakeland East Drive, Suite 101, Flowood, MS 39232 as the person to whom the Commissioner shall mail process.

## MISSOURI Service of Process Clause

Upon any cause of action arising in Missouri under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Missouri and his successors in office by the clerk of the court in which

the action is brought.  The Company further designates CT Corporation System, 120 South Central Avenue, Clayton, MO 63105 as the person to whom the Director shall mail process.

### MONTANA Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose.  The Company appoints the Commissioner of Insurance of the State of Montana, as its attorney for acceptance of the service of all legal process issued in this state in any action or proceeding arising out of this policy.  Service of process upon the Commissioner shall be lawful service upon the Company.  The Company further designates CT Corporation System, 208 North Broadway, Suite 313, Billings, MT 59101 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

### NEBRASKA Service of Process Clause

Upon any cause of action arising in Nebraska under this policy, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Director of Insurance of the State of Nebraska.  The Company further designates CT Corporation System, 5601 South 59th Street, Lincoln, NE 68516 as the person to whom the Director shall mail process.

### NEVADA Service of Process Clause

Upon any cause of action arising in Nevada under this contract, the Company may be sued in a district court of Nevada.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Nevada or the Commissioner's authorized representative.  The Company further designates The Corporation Trust Company of Nevada, 311 South Division Street, Carson City, NV 89703 as the person to whom the Commissioner shall mail process.

### NEW HAMPSHIRE Service of Process Clause

Upon any cause of action arising in New Hampshire under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of New Hampshire by the clerk of the court in which the action is brought.  The Company further designates C T Corporation System, 9 Capitol Street, Concord, NH 03301 as the person to whom the Commissioner shall mail process.

### NEW MEXICO Service of Process Clause

Upon any cause of action arising in New Mexico under this contract, the Company may be sued in the district court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Superintendent of Insurance of the State of New Mexico by the clerk of the court in which the action is brought.  The Company further designates Registered Agent:  C T Corporation System, 123 East Marcy, Santa Fe, NM 87501 as the person to whom the Superintendent shall mail process.

### NEW YORK Service of Process Clause

QBE Specialty Insurance Company  (hereafter referred to as "the Company") pursuant to the provisions of Regulation 41, promulgated by New York (11 NYCRR 27.16) by issuance of this policy hereby constitutes and appoints the Superintendent of Insurance of the State of New York as its true and lawful attorney upon whom all lawful process may be served in any action, suit, or proceeding instituted in this State by or on behalf of the insured or any beneficiary against the Company arising out of this policy of insurance.  The Company further designates CT Corporation System, 111 Eighth Avenue, 13th Floor, New York, NY 10011 as the person to whom the Superintendent shall mail process.

### NORTH CAROLINA Service of Process Clause

The Company hereby designates the Commissioner of Insurance of the State of North Carolina, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.   The Company further designates CT Corporation System, 150 Fayetteville Street, Box 1011, Raleigh, NC 27601 as the person to whom the Commissioner shall mail process.

### OHIO Service of Process Clause

Upon any cause of action arising in Ohio under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Superintendent of Insurance of the State of Ohio by the clerk of the court in which the action is brought.  The Company further designates C T Corporation System, 1300 East 9th Street, Cleveland, OH 44114 as the person to whom the Superintendent shall mail process.

### OKLAHOMA Service of Process Clause

Upon any cause of action arising in Oklahoma under this contract, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Oklahoma by the clerk of the court in which the action is brought.  The Company further designates The Corporation Company, 1833 South Morgan Road, Oklahoma City, OK 73128 as the person to whom the Commissioner shall mail process.

### OREGON Service of Process Clause

Upon any cause of action arising in Oregon under this contract, the Company may be sued in the circuit court of the county in which the cause of action arose.  The Company further designates:  CT Corporation System, 388 State Street, Suite 420, Salem, OR 97301 as the person to whom the process shall be mailed.

### PENNSYLVANIA Service of Process Clause

It is agreed that in the event of the failure of the Insurer(s) or Underwriter(s) herein to pay any amount claimed to be due hereunder, the Insurer(s) or Underwriter(s) herein, at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give such court jurisdiction, and all matters arising hereunder shall be determined in accordance with the law and practice of such court. It is further agreed that in any such action instituted against any one of them upon this contract, Insurer(s) or Underwriter(s) will abide by the final decision of such court or of any appellate court in the event of an appeal. Service of process shall be made pursuant to the procedures provided by 42 Pa.C.S. Ch. 53 Subch. B (relating to interstate and international procedure). When making service of process by mail, such process shall be mailed to:  CT Corporation System, 116 Pine Street, Suite 320, Harrisburg, PA 17101.  The above-named is authorized and directed to accept service of process on behalf of the Insured(s) or Underwriter(s) in any such action or upon the request of the insured (or reinsured) to give a written undertaking to the insured (or reinsured) that it or they will enter a general appearance for the Insurer(s) or Underwriter(s) in the event such an action shall be instituted.  Further, pursuant to any statute of any state, territory or district of the United States of America, which makes provisions therefor, the Insured(s) or Underwriter(s) hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute or his successor or successors in office, as the true and lawful attorney upon whom any lawful process may be served in any action, suit or proceeding instituted by or on behalf of the insured (or reinsured) or any beneficiary hereunder arising out of his contract of insurance (or reinsurance), and hereby designates the above-named as the person on whom such process or a true copy thereof shall be served.

### RHODE ISLAND Service of Process Clause

Upon any cause of action arising in Rhode Island under this policy, the Company may be sued in the court of the county in which the cause of action arose.  Service of process against the Company may be made in such action by service upon the Secretary of State by the clerk of the court in which the action is brought.  The Company further designates CT Corporation System, 450 Veterans Memorial Parkway, Suite 7A, East Providence, RI 02914 as the person to whom the Secretary of State shall mail process.

### SOUTH DAKOTA Service of Process Clause

Any cause of action against the Company arising in South Dakota under this policy shall be brought in the circuit court for the county in which the cause of action arose.  Service of legal process against the Company may be made in any such action by service upon the Director of Insurance of the State of South Dakota and his successors in office.  The Company further designates CT Corporation System, 319 South Coteau Street, Pierre, SD 57501 as the person to whom the Director shall mail a copy of the process.  The copy shall be mailed by prepaid registered or certified mail with return receipt requested.  The Company shall have thirty days from the date of service upon the Director within which to plead, answer, or otherwise defend the action.

### TENNESSEE Service of Process Clause

The Company hereby designates the Commissioner of the State of Tennessee, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary arising out of this contract of insurance.  The Company further designates CT Corporation System, 800 S. Gay Street, Suite 2021, Knoxville, TN 37929-9710 as the person to whom the Commissioner shall mail process.

### TEXAS Service of Process Clause

The Company hereby designates the Commissioner of the State of Texas as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance.  The Company further designates CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201 as the person to whom the Commissioner shall mail process.

### UTAH Service of Process Clause

The Company hereby designates the Commissioner and Lieutenant Governor of the State of Utah, as its agent upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance. The Company further designates CT Corporation System, 1108 East South Union Avenue, Midvale, UT 84047 as the person to whom the Commissioner or Lieutenant Governor shall mail process.

### VIRGINIA Service of Process Clause

The Company hereby designates the clerk of the Commission of the State of Virginia as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance. The Company further designates CT Corporation System, 4701 Cox Road, Suite 285, Glen Allen, VA 23060 as the person to whom the clerk of the Commission shall mail process.

### WASHINGTON Service of Process Clause

Upon any cause of action arising in Washington under this contract, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Washington by the clerk of the court in which the action is brought. The Company further designates C T Corporation System, Inc., 505 Union Ave. S.E., Suite 120, Olympia, WA 98501 as the person to whom the Commissioner shall mail process.

### WEST VIRGINIA Service of Process Clause

Upon any cause of action arising in West Virginia under this policy, the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Secretary of State by the clerk of the court in which the action is brought. The Company further designates CT Corporation System, 5400 D Big Tyler Road, Charleston, WV 25313 as the person to whom the Secretary of State shall mail process.

### WISCONSIN Service of Process Clause

Upon any cause of action arising in Wisconsin under this policy the Company may be sued in the court of the county in which the cause of action arose. Service of process against the Company may be made in such action by service upon the Commissioner of Insurance of the State of Wisconsin. The Company further designates CT Corporation System, 8020 Excelsior Drive, Suite 200, Madison, WI 53717 as the person to whom the Commissioner shall mail process.

### WYOMING Service of Process Clause

Upon any cause of action under this policy, the Company may be sued in the district court of the county in which the cause of action arose. The Company appoints the Commissioner of Insurance of the State of Wyoming, as its attorney for acceptance of the service of all legal process issued in this state in any action or proceeding arising out of this policy. Service of process upon the Commissioner shall be lawful service upon the Company. The Company further designates CT Corporation System, 1712 Pioneer Avenue, Suite 120, Cheyenne, WY 82001 as the person to whom the Commissioner is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy remain unchanged.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# STEADFAST INSURANCE COMPANY AMENDATORY

WITH RESPECT TO THE COVERAGE PROVIDED BY STEADFAST INSURANCE COMPANY, THE FOLLOWING CLAUSES SHALL APPLY:

## Service Of Suit and In Witness Clause

1.  **The following Service Of Suit and In Witness Clause applies to all policies written in Alabama, Alaska, Arkansas, Colorado, Connecticut, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Oregon, Pennsylvania, Puerto Rico, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Vermont, Washington, West Virginia or Wyoming:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy. This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, this Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

2.  **The following Service Of Suit and In Witness Clause applies to all policies written in Arizona, Virginia or Washington:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.

In Witness Whereof, the Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

3.  **The following Service Of Suit and In Witness Clause applies to all policies written in California:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder

arising out of this policy of insurance and hereby designates Carpenter & Moore Insurance Services, Inc., 111 Pine Street, Suite 777, San Francisco, California 94111 as whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.  This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, the Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

4.   **The following Service Of Suit and In Witness Clause applies to all policies written in Delaware:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States.  It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Zurich American Insurance Company of Illinois, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates the above named General Counsel as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy.  This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, this Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

5.  **The following Service Of Suit and In Witness Clause applies to all policies written in District of Columbia:**

**Service Of Suit**

In the event of failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the "Insured", will submit to the jurisdiction of a court of competent jurisdiction within the United States. Nothing in this condition constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or any state in the United States. It is further agreed that service of process in such suit may be made upon General Counsel, Law Department, Steadfast Insurance Company, 1400 American Lane, Schaumburg, Illinois 60196-1056, or his or her representative, and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provisions therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance, or other officer specified for that purpose in the statute, or his or her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the "Insured" or any beneficiary hereunder arising out of this policy of insurance and hereby designates Douglas A. Henry, c/o CT Corporation, 1025 Vermont Avenue, N.W., Washington, DC 20005 as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**In Witness Clause**

In return for the payment of premium, and subject to the terms of the policy, the Company agrees with the "Insured" to provide insurance as stated in this policy. This policy shall not be valid unless signed by the duly authorized Representative of the Company.

In Witness Whereof, this Company has executed and attested these presents, and where required by law, has caused this policy to be signed by its duly authorized Representative.

# Disclosure Statement



**ZURICH**

It is our pleasure to present the enclosed policy to you
for presentation to your customer.

**INSTRUCTION TO AGENT OR BROKER:**

WE REQUIRE THAT YOU TRANSMIT THE ATTACHED/ENCLOSED DISCLOSURE STATEMENT TO THE CUSTOMER
WITH THE POLICY.

Once again, thank you for your interest, and we look forward to meeting your needs and those of your customers.

# Disclosure Statement


**ZURICH**

**NOTICE OF DISCLOSURE FOR AGENT & BROKER COMPENSATION**

If you want to learn more about the compensation Zurich pays agents and brokers visit:

http://www.zurichnaproducercompensation.com

or call the following toll-free number:  (866) 903-1192.

This Notice is provided on behalf of Zurich American Insurance Company

and its underwriting subsidiaries.

# OFAC Notice and Sanction Limitation Clauses

## Office of Foreign Assets Control ("OFAC") Regulations

## Advisory notice to policyholders regarding the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC") regulations

No coverage is provided by this policyholder notice nor can it be construed to replace any provisions of your policy.  You should read your policy and review your declarations page for complete information on the coverages you are provided.

This notice provides information concerning possible impact on your insurance coverage due to directives issued by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC").

**Please read this Notice carefully.**

OFAC administers and enforces sanctions policy based on Presidential declarations of "national emergency".  OFAC has identified and listed numerous:

- Foreign agents;
- Front organizations;
- Terrorists;
- Terrorist organizations; and
- Narcotics traffickers;

as "Specially Designated Nationals and Blocked Persons."  This list can be located on the United States Treasury's web site – http://www.treasury.gov/about/organizational-structure/offices/Pages/Office-of-Foreign-Assets-Control.aspx.

In accordance with OFAC regulations, if it is determined that you or any other insured, or any person or entity claiming the benefits of this insurance has violated U.S. sanctions law or is a Specially Designated National and Blocked Person, as identified by OFAC, this insurance will be considered a blocked or frozen contract and all provisions of this insurance are immediately subject to OFAC restrictions.  When an insurance policy is considered to be such a blocked or frozen contract, no payments or premium refunds may be made without authorization from OFAC.  Other limitations on premiums and payments also apply.

includes copyrighted material of Insurance Service Office, Inc. with its permission                 U-GU-1041-A (3/11)

## Sanction Limitation and Exclusion Clause

No (re)insurer shall be deemed to provide cover and no (re)insurer shall be liable to pay any claim or provide any benefit hereunder to the extent that the provision of such cover, payment of such claim or provision of such benefit would expose that (re)insurer to any sanction, prohibition or restriction under United Nations resolutions or the trade or economic sanctions, laws or regulations of the European Union, United Kingdom or United States of America.

LMA3100   9/15/2010 (USA date)

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## VARIOUS COMPANIES' SERVICE OF SUIT CLAUSES

WITH RESPECT TO THE COVERAGE PROVIDED BY:

> GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; OR
> INTERNATIONAL INSURANCE COMPANY OF HANNOVER SE; OR
> LEXINGTON INSURANCE COMPANY; OR
> UNITED SPECIALTY INSURANCE COMPANY; OR
> PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY.

THE FOLLOWING APPLICABLE CLAUSES SHALL APPLY TO THE INDICATED COMPANY(IES), PROVIDED THAT COMPANY IS PARTICIPATING ON THE POLICY:

## Service of Suit Clause

It is agreed that in the event of the failure of the Company hereon to pay any amount claimed to be due hereunder, the Company hereon, at the request of the Insured (or Reinsured), will submit to the jurisdiction of a Court of competent jurisdiction within the United States. Nothing in this Clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any Court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another Court as permitted by the laws of the United States or of any State in the United States. It is further agreed that service of process in such suit may be made upon:

### General Security Indemnity Company of Arizona
> One Seaport Plaza
> 199 Water Street
> New York, NY 10038-3526
> Attn.: Henry Klecan, CEO

> With copy to:
> One Seaport Plaza
> 199 Water Street
> New York, NY 10038-3526
> Attn.: Maxine Verne, General Legal Counsel,

### International Insurance Company of Hannover SE
> Drinker Biddle & Reath LLP
> 1177 Avenue of the Americas, 41st Floor
> New York, NY 10036-2714
> Attn.: Andrea Best

### Lexington Insurance Company
> 100 Summer Street
> Boston, MA 02110
> Facsimile:  (866) 753-8411
> Attn.:  Division Executive, Commercial Property

With copies to:

| | |
|---|---|
| AIG Property Casualty U.S.    and | Lexington Insurance Company |
| 175 Water Street - 18th Floor | 100 Summer Street, #2000 |
| New York, NY 10038 | Boston, MA 02110 |
| Facsimile: (212) 458-7080 | Facsimile: (617) 772-4588 |
| Attn.: General Counsel | Attn.: General Counsel |

**United Specialty Insurance Company**

> 1900 L. Don Dodson Drive
> Bedford, Texas 76021
> Attn.: Terry L. Ledbetter

and that in any suit instituted against any one of them upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above-named are authorized and directed to accept service of process on behalf of the Company in any such suit and/or upon the request of the Insured (or Reinsured) to have a written undertaking to the Insured (or Reinsured) that they will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute of any state, territory or district of the United States which makes provision therefore, the Company hereon hereby designates the Superintendent, Commissioner or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Insured (or Reinsured) or any beneficiary hereunder arising out of this contract of insurance (or reinsurance), and hereby designate the above-named person to whom the said officer is authorized to mail such process or a true copy thereof.

**AS RESPECTS PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY ONLY:**

## Service of Process Clause

We designate the Superintendent of Insurance, Insurance Commissioner, Director of Insurance, or other officer specified by law, pursuant to the laws of the State where this policy is delivered, as our true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted in the State in which this policy is delivered, by, or on behalf of, the Named Insured or any beneficiary hereunder arising out of this Policy. We designate the General Counsel of The Princeton Excess and Surplus Lines Insurance Company, 555 College Road East, Princeton, New Jersey 08543 as the person to whom the said officer is authorized to mail such process or true copy thereof.

## Compass Sinkhole Loss Extension

It is understood and agreed that this policy is amended as follows:

1.  The words **"Sinkhole Loss"** are deleted from the Earth Movement Definition in Section VIII.I.5. of the AR Compass 01 15 Form.

2.  The Compass Form is extended to cover **Sinkhole Loss**, as defined under Section VIII.AA.

All other terms and conditions remain unchanged.

AR Compass Sinkhole 01 15

ACCOUNT NUMBER:   377201

## CONTRACTORS EQUIPMENT EXTENSION

**A.** INSURING CLAUSE

In consideration of the premium charged and subject to the terms, conditions and exclusions of the policy to which this extension is attached and to the following terms, conditions and exclusions, this policy is extended to cover Contractors Equipment.

**B.** PROPERTY INSURED

This policy covers contractor's machinery, tools and equipment, including appurtenances thereof, as shown in the Schedule of Contractor's Equipment on page two of this endorsement or, if so stated, on the latest Statement of Values on file with the Company, being the property of the insured or the property of others for which the insured may be legally liable in the event of loss.

**C.** LIMIT OF LIABILITY

  **1.** The Limit of Liability under this extension shall in no event exceed the amount of $ 232,000
  per occurrence which amount is part of and not in addition of the Limits of Liability set forth in the Schedule of this policy.

  **2.** In the event of loss hereunder, the liability of the Company shall be limited to the least of the following:

  **a.** The actual adjusted amount of loss, less applicable deductible(s);

  **b.** The Limit of Liability shown in item C.1. above;

  **c.** The total stated value for the property involved, as shown in the Schedule of Contractor's Equipment on page two of this endorsement or, if so stated, in the latest Statement of Values on file with the Company, less applicable deductible(s);

**D.** DEDUCTIBLE

The sum of $_____*_____ shall be deducted from each adjusted loss.

**E.** PROPERTY EXCLUDED UNDER THIS EXTENSION

In addition to the Property Excluded in the All Risk Property Form, this policy does not cover:

  **1.** Plans, blueprints, designs or specifications;
  **2.** Property while located underground or in caissons, or underwater;
  **3.** Property which has become a permanent part of any structure;
  **4.** Property while waterborne except while being transported on any regular ferry.

**F.** SCHEDULE OF CONTRACTORS EQUIPMENT

| Description of Property | Manufacturer | Serial Number | Value of Item |
|---|---|---|---|

**Per schedule on file with AmRisc.**

**G.** ADDITIONAL EXCLUSIONS WHICH APPLY TO THIS EXTENSION

In addition to the Exclusions in the All Risk Property Form, this policy does not insure against:

  **1.** Loss or damage occasioned by the weight of a load exceeding the registered lifting capacity of the machine;
  **2.** Loss or damage to dynamos, lamps, switches, motors or other electrical parts or devices, including wiring, caused by electricity other than lighting unless fire ensues and then only for loss or damage from such ensuing fire;

*See applicable deductible form(s).

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. Loss or damage to crane or derrick boom(s) and jib(s) while being operated, unless such loss is caused directly by fire, lightning, explosion, windstorm, tornado, earthquake (if insured under this policy)  or  upset of the unit if which it is a part.

**H.** ADDITIONAL CONDITIONS WHICH APPLY TO THIS EXTENSION

1. Valuation

   In case of loss of or damage to Contractor's Equipment insured hereunder, the basis of adjustment shall be as follows:

   **a.** On property of others, at the amount for which the Insured is legally liable, but in no event to exceed the actual cash value;

   **b.** On all other property, at the actual cash value immediately prior to the loss.

   The above valuations shall also be used for the purpose of premium computation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this extension is attached other than as above stated.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

COMMERCIAL PROPERTY
CP 04 38 10 12

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# FUNCTIONAL BUILDING VALUATION

This endorsement modifies insurance provided under the following:

BUILDING AND PERSONAL PROPERTY COVERAGE FORM
CONDOMINIUM ASSOCIATION COVERAGE FORM

### SCHEDULE

| Premises Number | Building Number | Limit Of Insurance |
|---|---|---|
| See Endt 1 | See Endt 1 | $ Per schedule on file. |
| | | $ |
| | | $ |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A.** The Limit Of Insurance shown in the above Schedule is the only limit of insurance applicable to the building described in the above Schedule.

**B.** The **Coinsurance** Additional Condition does not apply to the building described in the above Schedule.

**C.** With respect to the building described in the above Schedule, the following replaces Items **a.** and **b.** of the **Valuation** Loss Condition:

1. If you contract for repair or replacement of the loss or damage to restore the building shown in the above Schedule for the same occupancy and use, within 180 days of the damage unless we and you otherwise agree, we will pay the smallest of the following, **a., b., c.** or **d.:**

   **a.** The Limit Of Insurance shown in the above Schedule as applicable to the damaged building;

   **b.** In the event of a total loss, the cost to replace the damaged building on the same site (or on a different site if relocation is required by an ordinance or law as described in Paragraph **E.2.a.** below), with a less costly building that is functionally equivalent to the damaged building;

   **c.** In the event of partial loss:

      **(1)** The cost to repair or replace the damaged portion of the building with less costly material, if available, in the architectural style that existed before the loss or damage occurred; and

      **(2)** The amount you actually spend to demolish and clear the site of undamaged parts of the building as described in Paragraph **E.2.b.** below.

   **d.** The amount you actually spend:

      **(1)** That is necessary to repair or replace the lost or damaged building with less costly material if available; and

      **(2)** To demolish and clear the site of undamaged parts of the building as described in Paragraph **E.2.b.** below.

2. If you do not make a claim under Paragraph **1.** above, we will pay the smallest of the following, **a., b.** or **c.:**

   **a.** The Limit Of Insurance shown in the above Schedule as applicable to the damaged building;

   **b.** The "market value" of the damaged building, exclusive of the land value, at the time of loss; or

© Insurance Services Office, Inc., 2011

Wolters Kluwer Financial Services | Uniform Forms™

c. The amount it would cost to repair or replace the damaged building on the same site, with less costly material in the architectural style that existed before the damage occurred, less allowance for physical deterioration and depreciation.

**D. Other Insurance**

1. You may have other insurance subject to the same plan, terms, conditions and provisions as the insurance under this Functional Building Valuation insurance. If you do, we will pay our share of the covered loss or damage. Our share is the proportion that the applicable Limit of Insurance under this Functional Building Valuation insurance bears to the Limits of Insurance of all insurance covering on the same basis.

2. If there is other insurance covering the same loss or damage, other than that described in **1.** above, our insurance is excess. But we will not pay more than the applicable Limit of Insurance.

**E. Ordinance Or Law Coverage**

1. **Application Of Coverage**

    The Ordinance Or Law Coverage provided under this endorsement applies to the building described in the above Schedule only if both **E.1.a.** and **E.1.b.** are satisfied and are then subject to the qualifications set forth in **E.1.c.**

    a. The ordinance or law:

        (1) Regulates the demolition, construction or repair of buildings, or establishes zoning or land use requirements at the described premises; and

        (2) Is in force at the time of loss.

    But Ordinance Or Law Coverage under this endorsement applies only in response to the minimum requirements of the ordinance or law. Losses and costs incurred in complying with recommended actions or standards that exceed actual requirements are not covered under this endorsement.

    b. (1) The building sustains direct physical damage that is covered under this policy and as a result of such damage, you are required to comply with the ordinance or law; or

        (2) The building sustains both direct physical damage that is covered under this policy and direct physical damage that is not covered under this policy, and as a result of the building damage in its entirety, you are required to comply with the ordinance or law.

        (3) But if the building sustains direct physical damage that is not covered under this policy, and such damage is the subject of the ordinance or law, then there is no Ordinance Or Law Coverage under this endorsement even if the building has also sustained covered direct physical damage.

    c. In the situation described in **E.1.b.(2)** above, we will not pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this endorsement. Instead, we will pay a proportion of such loss, meaning the proportion that the covered direct physical damage bears to the total direct physical damage.

        (Section **G.** of this endorsement provides an example of this procedure.)

        However, if the covered direct physical damage alone would have resulted in a requirement to comply with the ordinance or law, then we will pay the full amount of loss otherwise payable under the terms of Coverages **A, B** and/or **C** of this endorsement.

2. **Description Of Coverage**

    The following coverage(s) applies to the building described in the above Schedule, subject to Paragraph **C.** and all other provisions of this endorsement.

    This is not additional insurance; losses covered under Coverages **A, B** and **C** are included within the Limit Of Insurance shown in the above Schedule as applicable to the building.

    a. **Coverage A — Coverage For Loss To The Undamaged Portion Of The Building**

        With respect to the building that has sustained covered direct physical damage, we will pay under Coverage **A** for the loss in value of the undamaged portion of the building as a consequence of a requirement to comply with an ordinance or law that requires the demolition of undamaged parts of the same building.

 © Insurance Services Office, Inc., 2011

**b. Coverage B — Demolition Cost Coverage**

With respect to the building that has sustained covered direct physical damage, we will pay the cost to demolish and clear the site of undamaged parts of the same building, as a consequence of a requirement to comply with an ordinance or law that requires demolition of such undamaged property.

**c. Coverage C — Cost To Reconstruct In Compliance With An Ordinance Or Law**

With respect to the building that has sustained covered direct physical damage, the cost to repair, reconstruct or remodel the damaged and/or undamaged portions of the building (whether or not demolition is required) will include costs that are a consequence of a requirement to comply with the minimum standards of the ordinance or law. If the building is repaired or rebuilt, it must be intended for similar occupancy as the current building, unless otherwise required by zoning or land use ordinance or law.

However, we will not pay for the cost to reconstruct in compliance with an ordinance or law if the building is not repaired or replaced.

**3.** We will not pay under this endorsement for:

**a.** Enforcement of or compliance with any ordinance or law which requires the demolition, repair, replacement, reconstruction, remodeling or remediation of property due to contamination by "pollutants" or due to the presence, growth, proliferation, spread or any activity of "fungus", wet or dry rot or bacteria; or

**b.** The costs associated with the enforcement of or compliance with any ordinance or law which requires any insured or others to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants", "fungus", wet or dry rot or bacteria.

**4.** Under this endorsement, we will not pay for loss due to any ordinance or law that:

**a.** You were required to comply with before the loss, even if the building was undamaged; and

**b.** You failed to comply with.

**F.** The following definition is added:

"Market value", as used in this endorsement, means the price which the property might be expected to realize if offered for sale in a fair market.

**G.** Example of proportionate loss payment for Ordinance Or Law Coverage losses (procedure as set forth in Section **E.1.c.** of this endorsement)

Assume:

- Wind is a Covered Cause Of Loss; Flood is an excluded Cause Of Loss
- The building sustains a partial loss
- Total direct physical damage to building: $100,000
- Portion of direct physical damage that is covered (caused by wind): $30,000
- Portion of direct physical damage that is not covered (caused by flood): $70,000
- The cost to repair the building includes $60,000 attributable to enforcement of an ordinance (Coverage **C**)

Step **1:**

Determine the proportion that the covered direct physical damage bears to the total direct physical damage.

$30,000 ÷ $100,000 = .30

Step **2:**

Apply that proportion to the Ordinance or Law loss.

$60,000 x .30 = $18,000

In this example, the most we will pay under this endorsement for the Coverage **C** loss is $18,000, subject to the applicable Limit of Insurance and any other applicable provisions.

**NOTE:** The same procedure applies to losses under Coverages **A** and **B** of this endorsement.

 © Insurance Services Office, Inc., 2011

# <u>Louisiana Notices</u>

**IMPORTANT INFORMATION REQUIRED BY THE
LOUISIANA DEPARTMENT OF INSURANCE**

Fire Insurance Policy Coverage Disclosure Summary
**(other than Homeowners)**

Or

**Commercial Insurance Policy Coverage Disclosure Summary**
**This form is promulgated pursuant to LSA-R.S. 22:1319**

**THIS IS ONLY A SUMMARY OF YOUR COVERAGE AND DOES NOT AMEND, EXTEND, OR ALTER THE COVERAGES OR ANY OTHER PROVISIONS CONTAINED IN YOUR POLICY. INSURANCE IS A CONTRACT. THE LANGUAGE IN YOUR POLICY CONTROLS YOUR LEGAL RIGHTS AND OBLIGATIONS.**

**\*\* READ YOUR INSURANCE POLICY
FOR COMPLETE POLICY TERMS AND CONDITIONS\*\***

## <u>COVERAGE(S) FOR WHICH PREMIUM WAS PAID</u>

Real & Personal Property
Time Element

## <u>DEDUCTIBLES</u>

**This policy sets forth certain deductibles that will be applied to claims for damages. When applicable, a deductible will be subtracted from your total claim and you will be paid the balance subject to applicable coverage limits.**

**- You may be able to reduce your premium by increasing your deductible. Contact your producer (agent) or insurer for details.**

**<u>NOTICE:</u> This policy does set forth a separate deductible for covered losses caused by hurricane; wind; named storm as defined in the policy.**

**<u>Separate Deductible Example - Hurricane, Wind or Named Storm Damage.</u>**

**If applicable, the following illustrates how a separate deductible applying to hurricane, wind or named storm damage is applied under your policy:**

**The following assumes no co-insurance penalty, no Business Income coverage and a 2% per building named storm (including hurricane) deductible. The amounts of loss to the damaged property are $50,000 (building) and $20,000 (business personal property).**

| | |
|---|---|
| Limits of insurance on building | $ 100,000.00 |
| Limits of insurance on the business personal property | $ 50,000.00 |
| Total amount of loss to building and business personal property | $ 70,000.00 |
| Less 2% deductible ($150,000 x .02) | -$ 3,000.00 |
| Net payment to Insured for loss | $ 67,000.00 |

However, the loss may be subject to minimum named storm (including hurricane) Deductible amount.  If the policy has a  $ 50,000  minimum named  storm (including hurricane) Deductible, the net payment to the Insured is $20,000.00

The All Other Wind Deductible (not named storm or hurricane), may be a flat deductible such as $50,000 or $100,000.

## TO SEE EXACTLY HOW YOUR SEPARATE HURRICANE, WIND OR NAMED STORM DEDUCTIBLE WILL APPLY, PLEASE REFER TO YOUR POLICY.

## LIMITATIONS OR EXCLUSIONS UNDER THIS POLICY

FLOOD – Flood damage __ is X is not covered, regardless of how caused, when flood is the peril that causes the loss.  Flood water includes, but is not limited to, storm surge, waves, tidal water, overflow of a body of water, whether driven by wind or not.

Flood Insurance may be available through the National Flood Insurance Program (NFIP).  NFIP flood insurance may provide coverage for damage to your dwelling or building and/or contents subject to the coverage limits and terms of the policy.

Excess Flood Insurance may be available under a separate policy, from this or another insurer, if the amount of the primary flood insurance is not enough to cover the value of your property.

- You may contact your producer (agent) or insurer for more information on the NFIP and excess flood insurance.

MOLD – Damage caused solely by mold is not covered under this policy.

**FOR ALL OTHER LIMITATIONS OR EXCLUSIONS REFER TO YOUR POLICY FOR COMPLETE DETAILS ON TERMS AND PROVISIONS**

## Louisiana Surplus Lines insurance from Unauthorized Insurers

## NOTICE

**This insurance policy is delivered as surplus lines coverage under the Louisiana Insurance Code.  In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific types of policies issued by insurance companies authorized to do business in Louisiana.**

**LA SLN 11 13**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION OF CERTIFIED ACTS OF TERRORISM

A. The following definition is added with respect to the provisions of this endorsement:

"Certified Act of Terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "Certified Act of Terrorism" include the following:

1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and
2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

B. The following exclusion is added:

**CERTIFIED ACT OF TERRORISM EXCLUSION**

The Companies will not pay for loss or damage caused directly or indirectly by a "Certified Act of Terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

C. **Exception Covering Certain Fire Losses**

As respects to property located in states that have Standard Fire Policy or similar laws mandating that insurance Companies provide coverage for "fire following" any Certified Acts of Terrorism, the following exception to the exclusion in Paragraph B. applies:

If a "Certified Act of Terrorism" results in fire, the Companies will pay for the loss or damage caused by that fire. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements which apply to those forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and the Companies have met their insurer deductible under the Terrorism Risk Insurance Act, the Companies shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

D. **Application Of Other Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War and Military Action Exclusion.

All other terms and conditions remain unchanged.

AR TRIA EXCL 02 15

Mortgagees/ Loss Payees:

CW Capital, LLC
Attn: John Byrne
63 Kendrick St
Needham Heights, MA 02494

J P Morgan Chase Bank, NA
201 St. Charles Ave., Floor 8
New Orleans, LA 70170

Wells Fargo Bank N.A.
7711 Plantation Road
MAC R4057-01Q
Roanoke, VA 24019

Whitney Bank
ISAOA ATIMA
P.O. Box 690190
San Antonio, TX 78269-0190

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 6

This endorsement, effective on _10/31/2016_ , at 12:01 A.M. standard time, forms a part of:

Account No. _377201_

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-36298-02 |
| Indian Harbor Insurance Company Policy No. | AMP7520729-03 |
| QBE Specialty Insurance Company Policy No. | MSP-10453-07 |
| Steadfast Insurance Company Policy No. | CPP9184255-05 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-04148-16-01 |
| United Specialty Insurance Company Policy No. | USI-14624-01 |
| Lexington Insurance Company | LEX-084298866-01 |
| Princeton Excess and Surplus Lines Insurance Company | 7DA3CM0003996-01 |
| International Insurance Company of Hannover SE | HAN-14116-01 |

Issued to:  Port Cargo Service, LLC

By:  See Contract Allocation Endorsement AR CA



Authorized Representative

In consideration of a total return premium of $3,143.00, it is understood and agreed that the policy is amended as follows:

1. The following location is deleted in its entirety:

   601 Market Street
   New Orleans, LA 70130
   Values- Building: $2,730.000
           Business Income:  $366,461

2. Section I.D.2. on Form AR  Compass 01 15 "Commercial Property Compass Form" is amended as follows:

   I.D.2.  $117,558,425 maximum limit of liability.

3. Form AR CA 12 14 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached revised AR CA 12 14 "Contract Allocation Endorsement".

4. The breakdown of return premium by Company is as follows:

   | | |
   |---|---|
   | AMR-36298-02: | $943.00 |
   | AMP7520729-03: | $189.00 |
   | MSP-10453-07: | $723.00 |
   | CPP9184255-05: | $377.00 |
   | 10T029659-04148-16-01: | $220.00 |
   | USI-14624-01: | $282.00 |
   | LEX-084298866-01: | $252.00 |
   | 7DA3CM0003996-01: | $94.00 |
   | HAN-14116-01: | $63.00 |

All other terms and conditions of the policy shall remain unchanged.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date: 10/31/2016
Endorsement No: 6

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of "Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $117,558,425 | excess of | Deductibles | AR EXCL NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,229,090 | 7.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,229,090 | 7.0000% | $0.471 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,526,753 | 3.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,526,753 | 3.0000% | $0.471 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | XLA16-Tech | IndianH | AMP7520729-03 | $7,053,506 | 6.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | NW | XLA16-Tech | IndianH | AMP7520729-03 | $7,053,506 | 6.0000% | $0.471 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,877,921 | 5.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $17,633,764 | 15.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | B123016AMR253 | Lloyds | AMR-36298-02 | $11,755,843 | 10.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,877,921 | 5.0000% | $0.471 |
| $117,558,425 | excess of | Deductibles | NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $14,694,803 | 12.5000% | $0.471 |
| $117,558,425 | excess of | Deductibles | NW | B123016AMR252 | Lloyds | AMR-36298-02 | $14,694,803 | 12.5000% | $0.471 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | STF16-Tech | Steadfast | CPP9184255-05 | $14,107,011 | 12.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | NW | STF16-Tech | Steadfast | CPP9184255-05 | $14,107,011 | 12.0000% | $0.471 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | HAN16 | HAN | HAN-14116-01 | $2,351,169 | 2.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | NW | HAN16 | HAN | HAN-14116-01 | $2,351,169 | 2.0000% | $0.471 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | LEX16 | LEX | LEX-084298866-01 | $9,404,674 | 8.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | NW | LEX16 | LEX | LEX-084298866-01 | $9,404,674 | 8.0000% | $0.471 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | QBE16 | QBE | MSP-10453-07 | $27,038,438 | 23.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | NW | QBE16 | QBE | MSP-10453-07 | $27,038,438 | 23.0000% | $0.471 |
| $117,558,425 | excess of | Deductibles | AR EXCL NW | USI16 | USI | USI-14624-01 | $10,580,258 | 9.0000% | $0.103 |
| $117,558,425 | excess of | Deductibles | NW | USI16 | USI | USI-14624-01 | $10,580,258 | 9.0000% | $0.471 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts. The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: | CAUSE OF LOSS | SYMBOL | | CODE | COMPANY |
|---|---|---|---|---|---|
| | Basic | BA | | Lloyds | Certain Underwriters at Lloyd's, London |
| | Broad | BR | | | |
| | Special | SP | | Indian H | Indian Harbor Insurance Company |
| | All Risk excl F/Q | AR | | QBE | QBE Specialty Insurance Company |
| | Difference in Conditions | DIC | | | |
| | Windstorm and Hail | WH | | Steadfast | Steadfast Insurance Company |
| | Named Windstorm | NW | | GSI | General Security Indemnity Company of Arizona |
| | All Other Windstorm | AOW | | | |
| | Named Storm Flood | NF | | USI | United Specialty Insurance Company |
| | Flood | F | | LEX | Lexington Insurance Company |
| | All Other Flood | AOF | | | |
| | Earthquake | Q | | Peslic | Princeton Excess and Surplus Lines Insurance Company |
| | Terrorism Coverages (T3) | T | | HAN | International Insurance Company of Hannover |
| | Certified Terrorism as Defined by TRIA, if available | T1 | | | |
| | Non-Certified Terrorism | T2 | | | |
| | Equipment Breakdown | EBD | | | |
| | Excluding | EXCL | | | |
| | Including | INCL | | | |
| | Cyber and Data Compromise | CYB | | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T, T1 and T2 | |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #          **377201**

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

Account #:    377201

Certificate #:   AMR-36298-02

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 510 | KLN |
| 33 | HIS |
| 1886 | QBP |
| 510 | KLN |
| 2003 | SJC |
| 2987 | BRT |
| 4444 | CNP |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 1980 | ISN |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 2007 | NVA |
| 2014 | ACA |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 1183 | TAL |
| 1969 | APL |
| 1225 | AES |
| 2015 | CHN |
| 2987 | BRT |
| 727 | SAM |
| 780 | ADV |
| 1861 | ANV |
| 5820 | JCD |
| 318 | MSP |
| 5820 | JCD |
| 1861 | ANV |
| 727 | SAM |
| 623 | BEA |

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 5

This endorsement, effective on ___06/24/2016___ , at 12:01 A.M. standard time, forms a part of:

Account No. ___377201___

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-36298-02 |
| Indian Harbor Insurance Company Policy No. | AMP7520729-03 |
| QBE Specialty Insurance Company Policy No. | MSP-10453-07 |
| Steadfast Insurance Company Policy No. | CPP9184255-05 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-04148-16-01 |
| United Specialty Insurance Company Policy No. | USI-14624-01 |
| Lexington Insurance Company | LEX-084298866-01 |
| Princeton Excess and Surplus Lines Insurance Company | 7DA3CM0003996-01 |
| International Insurance Company of Hannover SE | HAN-14116-01 |

Issued to: Port Cargo Service, LLC

By: See Contract Allocation Endorsement AR CA



Authorized Representative

In consideration of a total additional premium of $20,973.00, it is understood and agreed that the policy is amended as follows:

1. The following locations are added:

   6000 A Jefferson Highway
   Harahan, LA 70123
   Values- Building: $2,800,000
           Contents: $400,000
           Business Income: $400,000

   6000 B Jefferson Highway
   Harahan, LA 70123
   Values- Building: $220,000
           Contents: $100,000
           Business Income: $100,000

2. Section I.D.2. on Form AR  Compass 01 15 "Commercial Property Compass Form" is amended as follows:

   I.D.2. $120,654,886 maximum limit of liability.

3. Form AR CA 12 14 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached revised AR CA 12 14 "Contract Allocation Endorsement".

4. The breakdown of additional premium by Company is as follows:

    AMR-36298-02:           $6,290.00
    AMP7520729-03:          $1,259.00
    MSP-10453-07:           $4,825.00
    CPP9184255-05:          $2,517.00
    10T029659-04148-16-01:  $1,468.00
    USI-14624-01:           $1,887.00
    LEX-084298866-01:       $1,678.00
    7DA3CM0003996-01:       $629.00
    HAN-14116-01:           $420.00

All other terms and conditions of the policy shall remain unchanged.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date: 6/24/2016
Endorsement No: 5

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of"Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $120,654,886 excess of | Deductibles | AR EXCL NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,445,842 | 7.0000% | $0.101 |
| $120,654,886 excess of | Deductibles | NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,445,842 | 7.0000% | $0.461 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,619,647 | 3.0000% | $0.101 |
| $120,654,886 excess of | Deductibles | NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,619,647 | 3.0000% | $0.461 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | XLA16-Tech | IndianH | AMP7520729-03 | $7,239,293 | 6.0000% | $0.101 |
| $120,654,886 excess of | Deductibles | NW | XLA16-Tech | IndianH | AMP7520729-03 | $7,239,293 | 6.0000% | $0.461 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $6,032,744 | 5.0000% | $0.101 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $15,081,861 | 12.5000% | $0.101 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | B123016AMR253 | Lloyds | AMR-36298-02 | $15,081,861 | 12.5000% | $0.101 |
| $120,654,886 excess of | Deductibles | NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $6,032,744 | 5.0000% | $0.461 |
| $120,654,886 excess of | Deductibles | NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $15,081,861 | 12.5000% | $0.461 |
| $120,654,886 excess of | Deductibles | NW | B123016AMR252 | Lloyds | AMR-36298-02 | $15,081,861 | 12.5000% | $0.461 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | STF16-Tech | Steadfast | CPP9184255-05 | $14,478,586 | 12.0000% | $0.101 |
| $120,654,886 excess of | Deductibles | NW | STF16-Tech | Steadfast | CPP9184255-05 | $14,478,586 | 12.0000% | $0.461 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | HAN16 | HAN | HAN-14116-01 | $2,413,098 | 2.0000% | $0.101 |
| $120,654,886 excess of | Deductibles | NW | HAN16 | HAN | HAN-14116-01 | $2,413,098 | 2.0000% | $0.461 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | LEX16 | LEX | LEX-084298866-01 | $9,652,391 | 8.0000% | $0.101 |
| $120,654,886 excess of | Deductibles | NW | LEX16 | LEX | LEX-084298866-01 | $9,652,391 | 8.0000% | $0.461 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | QBE16 | QBE | MSP-10453-07 | $27,750,624 | 23.0000% | $0.101 |
| $120,654,886 excess of | Deductibles | NW | QBE16 | QBE | MSP-10453-07 | $27,750,624 | 23.0000% | $0.461 |
| $120,654,886 excess of | Deductibles | AR EXCL NW | USI16 | USI | USI-14624-01 | $10,858,940 | 9.0000% | $0.101 |
| $120,654,886 excess of | Deductibles | NW | USI16 | USI | USI-14624-01 | $10,858,940 | 9.0000% | $0.461 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts. The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

**SYMBOLS USED HEREIN:**

| CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|
| Basic | BA | Lloyds | Certain Underwriters at Lloyd's, London |
| Broad | BR | | |
| Special | SP | Indian H | Indian Harbor Insurance Company |
| All Risk excl F/Q | AR | QBE | QBE Specialty Insurance Company |
| Difference in Conditions | DIC | Steadfast | Steadfast Insurance Company |
| Windstorm and Hail | WH | | |
| Named Windstorm | NW | GSI | General Security Indemnity Company of Arizona |
| All Other Windstorm | AOW | USI | United Specialty Insurance Company |
| Named Storm Flood | NF | | |
| Flood | F | LEX | Lexington Insurance Company |
| All Other Flood | AOF | Peslic | Princeton Excess and Surplus Lines Insurance Company |
| Earthquake | Q | | |
| Tria Coverages | T | HAN | International Insurance Company of Hannover |
| Certified Terrorism as Defined by TRIA, if available | T1 | | |
| Non-Certified Terrorism | T2 | | |
| Equipment Breakdown | EBD | | |
| Excluding | EXCL | | |
| Including | INCL | | |
| Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T1 and T2 | |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #      **377201**

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**   377201

**Certificate #:**   AMR-36298-02

| Syndicate Number | Syndicate Abbreviation |
|------------------|------------------------|
| 510 | KLN |
| 33 | HIS |
| 1886 | QBP |
| 510 | KLN |
| 2003 | SJC |
| 2987 | BRT |
| 4444 | CNP |
| 1980 | ISN |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 2007 | NVA |
| 2014 | ACA |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 1183 | TAL |
| 1225 | AES |
| 2015 | CHN |
| 2987 | BRT |
| 727 | SAM |
| 780 | ADV |
| 1969 | APL |
| 1861 | ANV |
| 5820 | JCD |
| 318 | MSP |
| 5820 | JCD |
| 1861 | ANV |
| 727 | SAM |
| 623 | BEA |

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 4

This endorsement, effective on ___05/16/2016___ , at 12:01 A.M. standard time, forms a part of:

Account No. __377201__

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-36298-02 |
| Indian Harbor Insurance Company Policy No. | AMP7520729-03 |
| QBE Specialty Insurance Company Policy No. | MSP-10453-07 |
| Steadfast Insurance Company Policy No. | CPP9184255-05 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-04148-16-01 |
| United Specialty Insurance Company Policy No. | USI-14624-01 |
| Lexington Insurance Company | LEX-084298866-01 |
| Princeton Excess and Surplus Lines Insurance Company | 7DA3CM0003996-01 |
| International Insurance Company of Hannover SE | HAN-14116-01 |

Issued to: __Port Cargo Service, LLC__

By: __See Contract Allocation Endorsement AR CA__

_____
Authorized Representative

It is understood and agreed that the policy is amended as follows:

1. The following equipment is added:

   JG Boom Lift Model 450AJ
   Serial # 0300210495
   Value: $72,804

2. Section I.D.2. on Form AR Compass 01 15 "Commercial Property Compass Form" is amended as follows:

   I.D.2. $116,634,886 maximum limit of liability.

3. Form AR CA 12 14 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached revised AR CA 12 14 "Contract Allocation Endorsement".

4. Form COEQ (07//04) "Contractors Equipment Extension" is deleted in its entirety and replaced with the attached revised COEQ (07/04) "Contractors Equipment Extension".

All other terms and conditions of the policy shall remain unchanged.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date:  5/16/2016
Endorsement No:  4

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous:  "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below.  The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract.  An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives.  Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of"Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters.  This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below.  This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $116,634,886 excess of | Deductibles | AR EXCL NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,164,442 | 7.0000% | $0.101 |
| $116,634,886 excess of | Deductibles | NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,164,442 | 7.0000% | $0.463 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,499,047 | 3.0000% | $0.101 |
| $116,634,886 excess of | Deductibles | NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,499,047 | 3.0000% | $0.463 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | XLA16-Tech | IndianH | AMP7520729-03 | $6,998,093 | 6.0000% | $0.101 |
| $116,634,886 excess of | Deductibles | NW | XLA16-Tech | IndianH | AMP7520729-03 | $6,998,093 | 6.0000% | $0.463 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,831,744 | 5.0000% | $0.101 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $14,579,361 | 12.5000% | $0.101 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | B123016AMR253 | Lloyds | AMR-36298-02 | $14,579,361 | 12.5000% | $0.101 |
| $116,634,886 excess of | Deductibles | NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,831,744 | 5.0000% | $0.463 |
| $116,634,886 excess of | Deductibles | NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $14,579,361 | 12.5000% | $0.463 |
| $116,634,886 excess of | Deductibles | NW | B123016AMR252 | Lloyds | AMR-36298-02 | $14,579,361 | 12.5000% | $0.463 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | STF16-Tech | Steadfast | CPP9184255-05 | $13,996,186 | 12.0000% | $0.101 |
| $116,634,886 excess of | Deductibles | NW | STF16-Tech | Steadfast | CPP9184255-05 | $13,996,186 | 12.0000% | $0.463 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | HAN16 | HAN | HAN-14116-01 | $2,332,698 | 2.0000% | $0.101 |
| $116,634,886 excess of | Deductibles | NW | HAN16 | HAN | HAN-14116-01 | $2,332,698 | 2.0000% | $0.463 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | LEX16 | LEX | LEX-084298866-01 | $9,330,791 | 8.0000% | $0.101 |
| $116,634,886 excess of | Deductibles | NW | LEX16 | LEX | LEX-084298866-01 | $9,330,791 | 8.0000% | $0.463 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | QBE16 | QBE | MSP-10453-07 | $26,826,024 | 23.0000% | $0.101 |
| $116,634,886 excess of | Deductibles | NW | QBE16 | QBE | MSP-10453-07 | $26,826,024 | 23.0000% | $0.463 |
| $116,634,886 excess of | Deductibles | AR EXCL NW | USI16 | USI | USI-14624-01 | $10,497,140 | 9.0000% | $0.101 |
| $116,634,886 excess of | Deductibles | NW | USI16 | USI | USI-14624-01 | $10,497,140 | 9.0000% | $0.463 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts. The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

| SYMBOLS USED HEREIN: CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|
| Basic | BA | Lloyds | Certain Underwriters at Lloyd's, London |
| Broad | BR | Indian H | Indian Harbor Insurance Company |
| Special | SP | | |
| All Risk excl F/Q | AR | QBE | QBE Specialty Insurance Company |
| Difference in Conditions | DIC | Steadfast | Steadfast Insurance Company |
| Windstorm and Hail | WH | | |
| Named Windstorm | NW | GSI | General Security Indemnity Company of Arizona |
| All Other Windstorm | AOW | USI | United Specialty Insurance Company |
| Named Storm Flood | NF | | |
| Flood | F | LEX | Lexington Insurance Company |
| All Other Flood | AOF | Peslic | Princeton Excess and Surplus Lines Insurance Company |
| Earthquake | Q | | |
| Tria Coverages | T | HAN | International Insurance Company of Hannover |
| Certified Terrorism as Defined by TRIA, if available | T1 | | |
| Non-Certified Terrorism | T2 | | |
| Equipment Breakdown | EBD | | |
| Excluding | EXCL | | |
| Including | INCL | | |
| Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake | Any One Occurrence and Aggregate |
| Named Windstorm | |
| Wind and Hail EXCL NW | |
| All Other Perils EXCL F, Q | |
| T1 and T2 | |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #    **377201**

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**    377201

**Certificate #:**   AMR-36298-02

| Syndicate Number | Syndicate Abbreviation |
|:---:|:---:|
| 510 | KLN |
| 33 | HIS |
| 1886 | QBP |
| 510 | KLN |
| 2003 | SJC |
| 2987 | BRT |
| 4444 | CNP |
| 1980 | ISN |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 2007 | NVA |
| 2014 | ACA |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 1183 | TAL |
| 1225 | AES |
| 2015 | CHN |
| 2987 | BRT |
| 727 | SAM |
| 780 | ADV |
| 1969 | APL |
| 1861 | ANV |
| 5820 | JCD |
| 318 | MSP |
| 5820 | JCD |
| 1861 | ANV |
| 727 | SAM |
| 623 | BEA |

ACCOUNT NUMBER:   377201

## CONTRACTORS EQUIPMENT EXTENSION

**A.** INSURING CLAUSE

In consideration of the premium charged and subject to the terms, conditions and exclusions of the policy to which this extension is attached and to the following terms, conditions and exclusions, this policy is extended to cover Contractors Equipment.

**B.** PROPERTY INSURED

This policy covers contractor's machinery, tools and equipment, including appurtenances thereof, as shown in the Schedule of Contractor's Equipment on page two of this endorsement or, if so stated, on the latest Statement of Values on file with the Company, being the property of the insured or the property of others for which the Insured may be legally liable in the event of loss.

**C.** LIMIT OF LIABILITY

   **1.** The Limit of Liability under this extension shall in no event exceed the amount of $ 773,972 per occurrence which amount is part of and not in addition of the Limits of Liability set forth in the Schedule of this policy.

   **2.** In the event of loss hereunder, the liability of the Company shall be limited to the least of the following:

      **a.** The actual adjusted amount of loss, less applicable deductible(s);

      **b.** The Limit of Liability shown in item C.1. above;

      **c.** The total stated value for the property involved, as shown in the Schedule of Contractor's Equipment on page two of this endorsement or, if so stated, in the latest Statement of Values on file with the Company, less applicable deductible(s);

**D.** DEDUCTIBLE

The sum of $ * shall be deducted from each adjusted loss.

**E.** PROPERTY EXCLUDED UNDER THIS EXTENSION

In addition to the Property Excluded in the All Risk Property Form, this policy does not cover:

   **1.** Plans, blueprints, designs or specifications;
   **2.** Property while located underground or in caissons, or underwater;
   **3.** Property which has become a permanent part of any structure;
   **4.** Property while waterborne except while being transported on any regular ferry.

**F.** SCHEDULE OF CONTRACTORS EQUIPMENT

| Description of Property | Manufacturer | Serial Number | Value of Item |
|---|---|---|---|

**Per schedule on file with AmRisc.**

**G.** ADDITIONAL EXCLUSIONS WHICH APPLY TO THIS EXTENSION

In addition to the Exclusions in the All Risk Property Form, this policy does not insure against:
   **1.** Loss or damage occasioned by the weight of a load exceeding the registered lifting capacity of the machine;
   **2.** Loss or damage to dynamos, lamps, switches, motors or other electrical parts or devices, including wiring, caused by electricity other than lighting unless fire ensues and then only for loss or damage from such ensuing fire;

*See applicable deductible form(s).

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

   3.  Loss or damage to crane or derrick boom(s) and jib(s) while being operated, unless such loss is caused directly by fire, lightning, explosion, windstorm, tornado, earthquake (if insured under this policy)  or  upset of the unit if which it is a part.

H.  ADDITIONAL CONDITIONS WHICH APPLY TO THIS EXTENSION

   1.  Valuation

      In case of loss of or damage to Contractor's Equipment insured hereunder, the basis of adjustment shall be as follows:

      a.  On property of others, at the amount for which the Insured is legally liable, but in no event to exceed the actual cash value;

      b.  On all other property, at the actual cash value immediately prior to the loss.

      The above valuations shall also be used for the purpose of premium computation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this extension is attached other than as above stated.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 3

This endorsement, effective on ___03/01/2016___ , at 12:01 A.M. standard time, forms a part of:

Account No. ___377201___

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-36298-02 |
| Indian Harbor Insurance Company Policy No. | AMP7520729-03 |
| QBE Specialty Insurance Company Policy No. | MSP-10453-07 |
| Steadfast Insurance Company Policy No. | CPP9184255-05 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-04148-16-01 |
| United Specialty Insurance Company Policy No. | USI-14624-01 |
| Lexington Insurance Company | LEX-084298866-01 |
| Princeton Excess and Surplus Lines Insurance Company | 7DA3CM0003996-01 |
| International Insurance Company of Hannover SE | HAN-14116-01 |

Issued to:   Port Cargo Service, LLC

By:   See Contract Allocation Endorsement AR CA

_____
Authorized Representative

It is understood and agreed that Form COEQ (07/04) "Contractors Equipment Extension" is deleted in its entirety and replaced with the attached revised COEQ (07/04) "Contractors Equipment Extension".

All other terms and conditions of the policy shall remain unchanged.

ACCOUNT NUMBER:   377201

## CONTRACTORS EQUIPMENT EXTENSION

**A.  INSURING CLAUSE**

In consideration of the premium charged and subject to the terms, conditions and exclusions of the policy to which this extension is attached and to the following terms, conditions and exclusions, this policy is extended to cover Contractors Equipment.

**B.  PROPERTY INSURED**

This policy covers contractor's machinery, tools and equipment, including appurtenances thereof, as shown in the Schedule of Contractor's Equipment on page two of this endorsement or, if so stated, on the latest Statement of Values on file with the Company, being the property of the insured or the property of others for which the Insured may be legally liable in the event of loss.

**C.  LIMIT OF LIABILITY**

**1.**  The Limit of Liability under this extension shall in no event exceed the amount of $ 701,168 per occurrence which amount is part of and not in addition of the Limits of Liability set forth in the Schedule of this policy.

**2.**  In the event of loss hereunder, the liability of the Company shall be limited to the least of the following:

  **a.**  The actual adjusted amount of loss, less applicable deductible(s);

  **b.**  The Limit of Liability shown in item C.1. above;

  **c.**  The total stated value for the property involved, as shown in the Schedule of Contractor's Equipment on page two of this endorsement or, if so stated, in the latest Statement of Values on file with the Company, less applicable deductible(s);

**D.  DEDUCTIBLE**

The sum of $_____*_____ shall be deducted from each adjusted loss.

**E.  PROPERTY EXCLUDED UNDER THIS EXTENSION**

In addition to the Property Excluded in the All Risk Property Form, this policy does not cover:

**1.**  Plans, blueprints, designs or specifications;
**2.**  Property while located underground or in caissons, or underwater;
**3.**  Property which has become a permanent part of any structure;
**4.**  Property while waterborne except while being transported on any regular ferry.

**F.  SCHEDULE OF CONTRACTORS EQUIPMENT**

| Description of Property | Manufacturer | Serial Number | Value of Item |
|---|---|---|---|

**Per schedule on file with AmRisc.**

**G.  ADDITIONAL EXCLUSIONS WHICH APPLY TO THIS EXTENSION**

In addition to the Exclusions in the All Risk Property Form, this policy does not insure against:
**1.**  Loss or damage occasioned by the weight of a load exceeding the registered lifting capacity of the machine;
**2.**  Loss or damage to dynamos, lamps, switches, motors or other electrical parts or devices, including wiring, caused by electricity other than lighting unless fire ensues and then only for loss or damage from such ensuing fire;

*See applicable deductible form(s).

COEQ (07/04)
Page 1 of 2

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

3. Loss or damage to crane or derrick boom(s) and jib(s) while being operated, unless such loss is caused directly by fire, lightning, explosion, windstorm, tornado, earthquake (if insured under this policy)  or  upset of the unit if which it is a part.

H. ADDITIONAL CONDITIONS WHICH APPLY TO THIS EXTENSION

1. Valuation

In case of loss of or damage to Contractor's Equipment insured hereunder, the basis of adjustment shall be as follows:

a. On property of others, at the amount for which the Insured is legally liable, but in no event to exceed the actual cash value;

b. On all other property, at the actual cash value immediately prior to the loss.

The above valuations shall also be used for the purpose of premium computation.

Nothing herein contained shall be held to vary, alter, waive or extend any of the terms, conditions, or limitations of the policy to which this extension is attached other than as above stated.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

(The Attaching Clause needs to be completed only when this endorsement is issued subsequent to preparation of the policy.)

## ENDORSEMENT 2

This endorsement, effective on   03/01/2016   , at 12:01 A.M. standard time, forms a part of:

Account No.   377201

| | |
|---|---|
| Certain Underwriters at Lloyds, London Certificate No. | AMR-36298-02 |
| Indian Harbor Insurance Company Policy No. | AMP7520729-03 |
| QBE Specialty Insurance Company Policy No. | MSP-10453-07 |
| Steadfast Insurance Company Policy No. | CPP9184255-05 |
| General Security Indemnity Company of Arizona Policy No. | 10T029659-04148-16-01 |
| United Specialty Insurance Company Policy No. | USI-14624-01 |
| Lexington Insurance Company | LEX-084298866-01 |
| Princeton Excess and Surplus Lines Insurance Company | 7DA3CM0003996-01 |
| International Insurance Company of Hannover SE | HAN-14116-01 |

Issued to:   Port Cargo Service, LLC

By:   See Contract Allocation Endorsement AR CA

_____
Authorized Representative

In consideration of an additional premium of $4,230.00, it is understood and agreed that the policy is amended as follows:

1. The following location is added:

   40136 Highway 942 (Carriage House)
   Darrow, LA 70725
   Values- Building: $500,000
          Contents: $250,000

2. Section I.D.2. on Form AR Compass 01 15 "Commercial Property Compass Form" is amended as follows:

   I.D.2. $116,562,082 maximum limit of liability.

3. Form AR CA 12 14 "Contract Allocation Endorsement" is deleted in its entirety and replaced with the attached revised AR CA 12 14 "Contract Allocation Endorsement".

4. The breakdown of additional premium by Company is as follows:

   | | |
   |---|---|
   | AMR-36298-02: | $1,268.00 |
   | AMP7520729-03: | $253.00 |
   | MSP-10453-07: | $975.00 |
   | CPP9184255-05: | $508.00 |
   | 10T029659-04148-16-01: | $296.00 |
   | USI-14624-01: | $381.00 |
   | LEX-084298866-01: | $338.00 |
   | 7DA3CM0003996-01: | $127.00 |
   | HAN-14116-01: | $84.00 |

All other terms and conditions of the policy shall remain unchanged.

# CONTRACT ALLOCATION ENDORSEMENT

Effective Date: 3/1/2016
Endorsement No: 2

This insurance is effected with certain insurance underwriters (hereinafter called the "Underwriters"). The following words shall be deemed to be synonymous: "Underwriters", "Insurers" and "Company".

The liability of each Underwriter on this contract with the Insured is limited to the participation amount shown in the schedule below. The liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses or amounts payable is several as to each and shall not exceed its participation percentage shown below and there is no joint liability of any Underwriters pursuant to this contract. An Underwriter shall not have its liability hereunder increased or decreased by reason of failure or delay of another Underwriter, its successors, assigns, or legal representatives. Any loss otherwise payable under the provisions of the attached policy that exceeds the allocation of"Risk" as defined herein shall be bourne proportionately by the contracts as to their limit of liability at the time and place of the loss bears to the total allocated

This contract shall be constructed as a separate contract between the Insured and each of the Underwriters. This evidence of coverage consists of separate sections of a composite insurance for all Underwriter's at Lloyd's combined and separate policies issued by the insurance company(ies), all as identified below. This evidence of coverage does not constitute in any manner or form a joint certificate of coverage by Underwriter's at Lloyd's with any other insurance company(ies).

In witness whereof, the following Underwriters execute and attest these presents, and subscribe for the amount of insurance provided.

The security is as noted below.

| LAYER OF PARTICIPATION | | PERILS (AS PER POLICY) | CONTRACT # | COMPANY CODE | POLICY # / CERTIFICATE # | PARTICIPATION | | rate |
|---|---|---|---|---|---|---|---|---|
| $116,562,082 excess of | Deductibles | AR EXCL NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,159,346 | 7.0000% | $0.101 |
| $116,562,082 excess of | Deductibles | NW | GSI16 | GSI | 10T029659-04148-16-01 | $8,159,346 | 7.0000% | $0.463 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,496,862 | 3.0000% | $0.101 |
| $116,562,082 excess of | Deductibles | NW | PES16 | Peslic | 7DA3CM0003996-01 | $3,496,862 | 3.0000% | $0.463 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | XLA16-Tech | IndianH | AMP7520729-03 | $6,993,725 | 6.0000% | $0.101 |
| $116,562,082 excess of | Deductibles | NW | XLA16-Tech | IndianH | AMP7520729-03 | $6,993,725 | 6.0000% | $0.463 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,828,104 | 5.0000% | $0.101 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $14,570,260 | 12.5000% | $0.101 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | B123016AMR253 | Lloyds | AMR-36298-02 | $14,570,260 | 12.5000% | $0.101 |
| $116,562,082 excess of | Deductibles | NW | B123016AMR1022 | Lloyds | AMR-36298-02 | $5,828,104 | 5.0000% | $0.463 |
| $116,562,082 excess of | Deductibles | NW | B123016AMR1139 | Lloyds | AMR-36298-02 | $14,570,260 | 12.5000% | $0.463 |
| $116,562,082 excess of | Deductibles | NW | B123016AMR252 | Lloyds | AMR-36298-02 | $14,570,260 | 12.5000% | $0.463 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | STF16-Tech | Steadfast | CPP9184255-05 | $13,987,450 | 12.0000% | $0.101 |
| $116,562,082 excess of | Deductibles | NW | STF16-Tech | Steadfast | CPP9184255-05 | $13,987,450 | 12.0000% | $0.463 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | HAN16 | HAN | HAN-14116-01 | $2,331,242 | 2.0000% | $0.101 |
| $116,562,082 excess of | Deductibles | NW | HAN16 | HAN | HAN-14116-01 | $2,331,242 | 2.0000% | $0.463 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | LEX16 | LEX | LEX-084298866-01 | $9,324,967 | 8.0000% | $0.101 |
| $116,562,082 excess of | Deductibles | NW | LEX16 | LEX | LEX-084298866-01 | $9,324,967 | 8.0000% | $0.463 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | QBE16 | QBE | MSP-10453-07 | $26,809,279 | 23.0000% | $0.101 |
| $116,562,082 excess of | Deductibles | NW | QBE16 | QBE | MSP-10453-07 | $26,809,279 | 23.0000% | $0.463 |
| $116,562,082 excess of | Deductibles | AR EXCL NW | USI16 | USI | USI-14624-01 | $10,490,587 | 9.0000% | $0.101 |
| $116,562,082 excess of | Deductibles | NW | USI16 | USI | USI-14624-01 | $10,490,587 | 9.0000% | $0.463 |

**ALLOCATION OF LIABILITY:**

The contracts herein cover mutually exclusive perils. The maximum limit of liability is not to exceed the per occurrence participation stated herein, regardless of whether multiple perils and multiple contracts are involved. Recognition of liability by either of the contracts reduces the limit of liability of any corresponding contract.

The liability otherwise determined to exist under the terms and conditions of this policy shall be bourne by the contract covering the proximate cause of loss identified in the allocation of security. Any loss covered by the policy by a peril not allocated to a contract herein shall be bourne by the contract covering the most comprehensive perils, generally in accordance with the ISO Special Causes of Loss Contracts. The liability of the policy shall not be increased or decreased by any condition of the allocation to specific contracts on this endorsement.

Covered perils shall be defined by the applicable forms attached to this policy or otherwise as per the industry standard definition.

**SYMBOLS USED HEREIN:**

| CAUSE OF LOSS | SYMBOL | CODE | COMPANY |
|---|---|---|---|
| Basic | BA | Lloyds | Certain Underwriters at Lloyd's, London |
| Broad | BR | | |
| Special | SP | Indian H | Indian Harbor Insurance Company |
| All Risk excl F/Q | AR | QBE | QBE Specialty Insurance Company |
| Difference in Conditions | DIC | | |
| Windstorm and Hail | WH | Steadfast | Steadfast Insurance Company |
| Named Windstorm | NW | GSI | General Security Indemnity Company of Arizona |
| All Other Windstorm | AOW | | |
| Named Storm Flood | NF | USI | United Specialty Insurance Company |
| Flood | F | LEX | Lexington Insurance Company |
| All Other Flood | AOF | | |
| Earthquake | Q | Peslic | Princeton Excess and Surplus Lines Insurance Company |
| Tria Coverages | T | HAN | International Insurance Company of Hannover |
| Certified Terrorism as Defined by TRIA, if available | T1 | | |
| Non-Certified Terrorism | T2 | | |
| Equipment Breakdown | EBD | | |
| Excluding | EXCL | | |
| Including | INCL | | |
| Cyber and Data Compromise | CYB | | |

"Risk" as per contract terms, shall be defined as follows:

| Risk | Basis of Limits |
|---|---|
| Flood and Earthquake Named Windstorm Wind and Hail EXCL NW All Other Perils EXCL F, Q T1 and T2 | Any One Occurrence and Aggregate |
| Maximum "Risk" is defined as | Any One Occurrence |

This schedule forms a part of the original Account #    __377201__

by

Authorized Signature

# CERTAIN UNDERWRITER'S AT LLOYD'S, LONDON - Syndicate List

If Certain Underwriter's at Lloyd's, London are listed as security on the Contract Allocation Endorsement attached to the policy, the list of syndicates is shown below:

**Account #:**   377201

**Certificate #:**   AMR-36298-02

| Syndicate Number | Syndicate Abbreviation |
|---|---|
| 510 | KLN |
| 33 | HIS |
| 1886 | QBP |
| 510 | KLN |
| 2003 | SJC |
| 2987 | BRT |
| 4444 | CNP |
| 1980 | ISN |
| 2010 | MMX |
| 382 | HDU |
| 5000 | SPL |
| 2007 | NVA |
| 2121 | ARG |
| 780 | ADV |
| 2007 | NVA |
| 2014 | ACA |
| 1200 | AMA |
| 2015 | CHN |
| 2623 | BEA |
| 1183 | TAL |
| 1225 | AES |
| 2015 | CHN |
| 2987 | BRT |
| 727 | SAM |
| 780 | ADV |
| 1969 | APL |
| 1861 | ANV |
| 5820 | JCD |
| 318 | MSP |
| 5820 | JCD |
| 1861 | ANV |
| 727 | SAM |
| 623 | BEA |

Created: 2/8/2017 2:39:54 PM

| Item | NamedInsured | Interest | DbaName | DateAdded | DateDropped | ProgramID | TransDate | CreatedByID | Address1 |
|---|---|---|---|---|---|---|---|---|---|
| 1 | 1401 Clearview Parkway Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 2 | Airline Drive Land Co, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 3 | Airline Highway Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 4 | Beven St. Properties, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 5 | Beven Street Film Studios, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 6 | Beven Street Properties Manager, Inc. | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 7 | Burnside Plantation, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 8 | CW Capital, LLC | Loss Payee | | 3/4/2016 | | | | Kcasserly | Attn: John Byrne |
| 9 | Dakin Street Commerce Center TWO, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 10 | Dakin Street Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 11 | Earhart Expressway Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 12 | Edwards Avenue Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 13 | Edwards Avenue Manger, Inc. | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 14 | France Road Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 15 | General DeGaulle Self Storage, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 16 | J P Morgan Chase Bank, NA | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 17 | Jefferson Highway Commerce Center, LLC | Loss Payee | | 3/4/2016 | | | | Kcasserly | 201 St. Charles Ave., Floor 8 |
| 18 | L&A Road Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 19 | Market Street Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 20 | Michoud Blvd Commercer Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 21 | Port Cargo Enterprises, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 22 | Port Cargo Properties, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 23 | Powell Street Properties, Inc. | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 24 | Riverside Properties Manager, Inc. | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 25 | Riverside Properties, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 26 | Robertson Street Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 27 | Robertson Street Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 28 | Royal Street Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 29 | Tchoupitoulas Commerce Center, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 30 | Thayer Street Properties, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 31 | The 176 St. Charles Street Company, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 32 | The Waterworks at Market Street | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 33 | The Waterworks at Market Street Manager, Inc. | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 34 | Tri-Property Manager, Inc | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 35 | Tri-Property, LLC | Additional Named Insured | | 3/4/2016 | | | | Kcasserly | |
| 36 | Wells Fargo Bank N.A. | Loss Payee | | 3/4/2016 | | | | Kcasserly | 7711 Plantation Road |
| 37 | Wells Fargo Bank, NA | Loss Payee | | 5/19/2016 | | | | Kcasserly | Tri-State International, Suite 400 |
| 38 | Whitney Bank ISAOA ATIMA | Loss Payee | | 3/28/2016 | | | | Kcasserly | PO Box 690190 |
| 39 | Whitney National Bank | Loss Payee | | 3/4/2016 | | | | Kcasserly | |

| Address2 | City | State | Zip | Phone | Fax | EMail | LeadInsuredKey_PK | ActiveFlag | InsuredKey_PK | DateModified | ModifiedbyID | InsuredID | FlagProvidehOC | InterestID |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | 5644862. | Y | 9130532. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130564. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130584. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130533. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130553. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130555. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130620. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130580. | | | 5644862 | Y | AI3 |
| | | | | | | | 5644862. | Y | 9130671. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130581. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130588. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130582. | | | 5644862 | Y | ANI |
| 63 Kendrick St | Needham Heights | MA | 02494 | | | | 5644862. | Y | 9130642. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130550. | 3/4/2016 | Kcasserly | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130613. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130601. | | | 5644862 | Y | ANI |
| | New Orleans | LA | 70170 | | | | 5644862. | Y | 9130556. | | | 5644862 | Y | AI3 |
| | | | | | | | 5644862. | Y | 9130686. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130602. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130591. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130576. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130567. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130542. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130540. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130548. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130645. | | | 5644862 | Y | AI3 |
| | | | | | | | 5644862. | Y | 9130648. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130661. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130589. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130634. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130594. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130577. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130543. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130569. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130623. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130604. | | | 5644862 | Y | ANI |
| | | | | | | | 5644862. | Y | 9130545. | | | 5644862 | Y | ANI |
| | Roanoke | VA | 24019 | | | | 5644862. | Y | 9130597. | | | 5644862 | Y | AI3 |
| | Lincolnshire | IL | 60069 | | | | 5644862. | Y | 9273481. | | | 5644862 | Y | AI3 |
| MAC R4057-01Q | San Antonio | TX | 78269 | | | | 5644862. | Y | 1897753. | | | 5644862 | Y | AI3 |
| | | | | | | | 5644862. | Y | 9130684. | | | 5644862 | Y | AI3 |

