**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **PORT CARGO SERVICE, LLC AND MICHOUD BLVD. COMMERCE CENTER, LLC** | **CIVIL ACTION** |
| **VERSUS** | **NO: 18-6192** |
| **CERTAIN UNDERWRITERS AT LLOYD'S LONDON, *ET. AL.*** | **SECTION: "S" (4)** |

**ORDER AND REASONS**

**IT IS HEREBY ORDERED** that the Plaintiffs' Motion to Remand Claims Against the Domestic Insurers (Doc. #7) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Litigation Pending Arbitration (Doc. #4) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **STAYED** pending arbitration. The parties shall notify the court when the arbitration is concluded.

**BACKGROUND**

This matter is before the court on the defendants' motion to stay the litigation pending arbitration, and the plaintiffs' motion to remand as to all domestic insurance companies.

On March 1, 2016, plaintiffs, Port Cargo Service, LLC and Michoud Blvd. Commerce Center, LLC, purchased a surplus lines insurance policy. The following nine individual insurance companies share the risk on the policy: Certain Underwriters at Lloyd's London; International Insurance Company of Hannover SE; Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; and, Princeton Excess and Surplus Lines Insurance Company. Certain Underwriters is a citizen of the United Kingdom of Great Britain

and Northern Ireland. Hannover is a citizen of Germany. As such, Certain Underwriters and Hannover are referred to as the "foreign insurers." The rest of the insurers are citizens of the United States of America, and are referred to as the "domestic insurers."

Plaintiffs' Louisiana-based insurance agent negotiated the terms of the policy with Swett and Crawford of Georgia, Inc., a surplus lines insurance broker that is licensed in Louisiana and has its headquarters in Georgia. The policy was printed and published in Texas by AmRisc, LLC, the Managing General Agency for defendants, and delivered to plaintiffs' insurance broker, Swett & Crawford, in Georgia. The Schedule of Forms and Endorsements page states that "[t]his insurance policy is delivered as surplus lines coverage under the Louisiana Insurance Code."

There is one insurance policy document as to all of the insurers. However, the Declarations Page lists individual policy numbers as to each insurer. The Contract Allocation Endorsement provides that the policy document "shall be constructed as a separate contract between the Insured and each of the [insurers]", and that the evidence of coverage consists of "separate policies issued by the insurance company(ies)." It also states: "[t]he liability of each separate contract listed and for each Underwriter represented thereby for any loss or losses of amounts payable is several as to each and shall not exceed its participation percentage as shown below. . .".

The policies had effective dates of March 1, 2016, to March 1, 2017, and included coverage for a warehouse and office facility located at 4150-4200 Michoud Boulevard, New Orleans, Louisiana ("the property"), which was valued at $7,500,000. On February 7, 2017, the property was damaged by an EF-3 tornado, causing property damage and business interruption losses. On June 12, 2017, the City of New Orleans wrote to Port Cargo declaring that the property was "damaged

at approximately ninety-five percent (95%) . . . only a complete rebuild will achieve current code compliance", and any newly rebuilt structure would need to be "elevated to current City and Federal flood elevation requirements in order to be compliant." Plaintiffs forwarded the City's letter to defendants on July 27, 2017, requesting payment of what was owed under the insurance policies. Plaintiffs contends that it would cost more than $7,5000,000 to replace the structure in compliance with the City code.

On June 7, 2018, plaintiffs filed the instant action in the Civil District Court, Parish of Orleans, State of Louisiana alleging that defendants failed to pay the amounts due under the policies. Plaintiffs allege that the insurance policies provide coverage for property damage and losses resulting from business interruption and the enforcement of City ordinances, regulations and/or laws caused by direct physical damage or destruction of the property. Plaintiffs allege that they provided defendants with proofs of loss and documentation demonstrating that their damages exceed the policy limits and they are entitled to all amounts due under the policy, as follows: $7,500,000 for the direct physical loss and/or damage to the property; up to $750,000 in business interruption losses; and at least $1,500,000 in additional losses resulting from enforcement of ordinances and laws.

Defendants removed the case to the United States District Court for the Eastern District of Louisiana alleging that this court has original subject matter jurisdiction pursuant to 9 U.S.C. §§ 202, 203 and 205, because the insurance policies have an arbitration clause covered by the Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"). The arbitration clause states, in pertinent part:

> All matters in difference between the Insured and the companies (hereinafter referred to as "the parties") in relation to this insurance,

> including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration tribunal in the manner hereinafter set out.
>
> * * *
>
> The seat of the Arbitration shall be in New York and the Arbitration tribunal shall apply the law of New York as the proper law of this insurance.

Defendants claim that, in a June 7, 2018, letter, plaintiffs invoked their right to arbitrate this dispute. All defendants also invoked their right to arbitrate the dispute in a letter dated June 22, 2018.

Defendants filed the instant motion to stay the litigation pending arbitration arguing that arbitration under the Convention is appropriate because Hannover and Certain Underwriters are both foreign insurers. Defendants contend that the matter should be referred to arbitration as to all of the insurers. Plaintiffs do not contest that arbitration is appropriate as to their claims against Hannover and Certain Underwriters[1], but argue that their claims against the domestic insurance companies are not subject to the Convention, and arbitration is inappropriate as to them. Thus, plaintiffs filed the instant motion to remand as to all domestic insurance companies, namely: Indian Harbor Insurance Company; QBE Specialty Insurance Company; Steadfast Insurance Company; General Security Indemnity Company of Arizona; United Specialty Insurance Company; Lexington Insurance Company; and, Princeton Excess and Surplus Lines Insurance Company.

---

[1] Plaintiffs concede that their contracts with Hannover and Certain Underwriters contain arbitration clauses that are covered by the Convention. Louisiana Revised Statute § 22:868 prohibits mandatory arbitration clauses in insurance policies delivered in Louisiana. Plaintiffs argue that the statute applies. However, plaintiffs acknowledge that the United States Court of Appeals for the Fifth Circuit has held that La. Rev. Stat. § 22:868 does not reverse-preempt the Convention because it is a treaty not included within the scope of an "Act of Congress" as those words are used in the McCarran-Ferguson Act, and the Convention, the treaty, rather than the Convention Act, the statutes, determines the parties' respective rights and obligations. Safety Nat. Cas. Corp., 587 F.3d 714, 718 (5th Cir. 2009). Plaintiffs also acknowledge that this court is bound to follow precedent set by the United States Court of Appeals for the Fifth Circuit, but, to preserve the argument for appeal, plaintiffs contend that the holding of Safety Nat. is incorrect.

## ANALYSIS

### I. Plaintiffs Have Separate Contracts with Each Insurer

A threshold issue in this dispute is whether the insurance policies in question create one contract between plaintiffs and the defendants, or whether plaintiffs have individual contracts with each of the insurers. Defendants contend that, although there are different reference numbers for each insurer and each insurer is obligated for only its share of the risk, there is one policy, and arbitration under the Convention is mandatory as to all of the insurers. Plaintiffs argue that they have separate insurance contracts as to each insurer.

The insurance in question is commercial property coverage to which all of the defendant insurers subscribe with varying levels of participation. Each insurer receives a portion of the premium in accordance with its proportion of the risk. The Contract Allocation Endorsement provides that the policy document "shall be constructed as a **separate** contract between the Insured and each of the [insurers]", and that the evidence of coverage consists of "**separate** policies issued by the insurance company(ies)." (emphasis added). It also states: "[t]he liability of each **separate** contract listed and for each Underwriter represented thereby for any loss or losses of amounts payable is several as to each and shall not exceed its participation percentage as shown below. . .". (emphasis added).

Under both Louisiana and New York law,[2] an insurance policy is a contract and should be interpreted in accordance with the intent of the parties as written. Green v. Johnson, 149 S.3d 766, 770 (La. 2014); Dan Tait, Inc. v. Farm Family Cas. Ins. Co., 2018 WL 3298012, - - - N.Y.S.3d - -

[2] The parties dispute whether Louisiana or New York law applies. It is immaterial to the issue whether plaintiffs have a separate contract with each of the insurers, because the applicable substantive law is the same in both Louisiana and New York. Thus, a choice of law analysis is unnecessary in this section.

-, (N.Y. Sup. Ct. 2018). The policy language, which is the law between the parties, specifies that the plaintiffs have separate insurance contracts with each of the insurers. Thus, the plaintiffs have a separate contract with each of the insurers.

## II. Removal Jurisdiction Under the Convention

Defendants argue that the Convention provides this court with original jurisdiction as to plaintiffs' claims against all of the insurers. Plaintiffs contend that they have separate contracts with each of the insurers and their claims against the domestic insurers are not subject to the Convention. Thus, plaintiffs argue that this court is exercising supplemental jurisdiction over their claims against the domestic insurers and should decline to do so after their claims against Certain Underwriters and Hannover are referred to arbitration.

The Convention is an international treaty that provides citizens of the signatory countries with the right to enforce arbitration agreements. The Supreme Court of the United States has explained that "[t]he goal of the [C]onvention, and the principal purpose underlying American adoption and implementation of it, was to encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standard by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co., 94 S.Ct. 2449, 2457 n. 15 (1974). The United States, Germany, and the United Kingdom of Great Britain and Northern Ireland are signatories to the Convention.

In 1970, Congress promulgated the Convention Act, which is Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201-208, to establish procedures for the courts of the United States to implement the Convention. McDermott Int'l, Inc. v. Lloyd's Underwriters of London, 944

F.2d 1199, 1208 (5th Cir. 1991). "The Convention Act incorporates the FAA except where the FAA conflicts with the Convention Act's few specific provisions." Id. (citing 9 U.S.C. § 208).

The Convention Act covers "[a]n arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2[3] of this title." 9 U.S.C. § 202. The Convention does not apply to "[a]n agreement or award arising out of [a commercial] relationship which is entirely between citizens of the United States . . . unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states." Id.

Section 203, Title 9 of the United States Code provides that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States."Id. at § 203. Thus, the district courts of the United States have original jurisdiction over such an action or proceeding, regardless of the amount in controversy. Id. [see also 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States.")].

---

[3] Section 2, Title 9 of the United States Code provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C.A. § 2.

The Convention Act also provides for removal of covered actions. Section 205 provides that "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending." Id. at § 205. The statute does not define "relates to." "However, the federal courts have recognized that the plain and expansive language of the removal statute embodies Congress's desire to provide the federal courts with broad jurisdiction over Convention Act cases in order to ensure reciprocal treatment of arbitration agreements by cosignatories of the Convention." Acosta v. Master Maint. and Constr. Inc., 452 F.3d 373, 376 (5th Cir. 2006).

Plaintiffs do not dispute that their claims against Hannover and Certain Underwriters arise under the Convention Act, were removable, and come within this court's original jurisdiction conferred by § 203. However, plaintiffs argue that their claims against the domestic insurers are not subject to an arbitration clause under the Convention, and thus, this court does not have original jurisdiction over those claims pursuant to § 203, but rather is exercising supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367.

Under Fifth Circuit precedent, plaintiffs' claims against the domestic insurers were removable under § 205. Relying on the dictionary definition of "relate" meaning "to have connection, relation, or reference," the United States Court of Appeals for the Fifth Circuit has held that "a clause determining the forum for resolution of specific types of disputes relates to a lawsuit that seeks the resolution of such disputes[,]" and makes an action removable under the Convention Act. Id. at 378.

Plaintiffs raise coverage dispute claims against all of the insurers. The arbitration provision in the policy, which undisputedly falls under the Convention as to Hannover and Certain Underwriters, specifies the forum for resolving coverage disputes. Therefore, plaintiffs' claims against the domestic insurers "relate to" the arbitration clause and were removable under the Convention Act, considering that "easy removal is exactly what Congress intended in § 205." Beiser v. Weyler, 284 F.3d 665, 674 (5th Cir. 2002).

Once this action was removed under § 205, this court gained jurisdiction to determine whether plaintiffs' claims against the foreign and domestic insurers are subject to the Convention. In Beiser, 284 F.3d at 675, the United States Court of Appeals for the Fifth Circuit recognized that, after removal under § 205, "[t]he arbitrabily of a dispute will ordinarily be the first issue the district court decides[.]" "If the district court decides that [the Convention does not apply], and no other ground for federal jurisdiction exists, the court must ordinarily remand the case back to state court." Id. Similarly, the United States Court of Appeals for the Fourth Circuit has "read § 203 to authorize federal jurisdiction over all claims within an action, but to those claims not falling under the Convention, this jurisdiction is supplemental in nature[,]" under 28 U.S.C. § 1367. ESAB Group, Inc. v. Zurich Ins. PLC, 685 F.3d 376, 394 (4th Cir. 2012). In reaching that conclusion, the Fourth Circuit persuasively reasoned:

> Although § 203 refers to jurisdiction over an "action or proceeding," the statutory grant of federal question jurisdiction, 28 U.S.C. § 1331, similarly confers upon district courts "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Notwithstanding the potential breadth of this language, the Supreme Court has interpreted § 1331 to require supplemental jurisdiction (or its antecedents) over certain claims within a constitutional cases that do not themselves give rise to federal jurisdiction.

Id. at 393-94. As noted by the Fourth Circuit in ESAB Group, § 203 echos § 1331 and confers original jurisdiction on the federal district courts over "[a]n action or proceeding falling under the Convention [which] shall be deemed to arise under the laws and treaties of the United States." Therefore, whether this court has original jurisdiction under § 203 over plaintiffs' claims against the domestic insurers depends upon whether those claims are subject to arbitration under the Convention. If they are not, this court is exercising supplemental jurisdiction over plaintiffs' claims against the domestic insurers, and has the discretion to remand them under § 1367.[4] Id.; see also Cleanese Corp. v. The BOC Grp. PLC, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006) (quoting Beiser, and finding that once claims are determined not to be arbitrable under the Convention, remand to state court is appropriate); Realty Trust Grp. Inc. v. Ace Am. Ins. Co., 2007 WL 4365352 (S.D. Miss. Dec. 11, 2007) (finding that once claims are deemed not to be subject to arbitration under the Convention, the court should determine whether it is appropriate to exercise supplemental jurisdiction over those clause pursuant to § 1367).

**II. Arbitrability of Plaintiffs' Claims Under the Convention**

The court conducts a limited inquiry in determining whether the Convention requires compelling arbitration in a case. Freudensprung v. Offshore Technical Servs., Inc., 379 F.3d 327, 339 (5th Cir. 2004). The court should compel arbitration if: (1) there is an agreement in writing to arbitrate the dispute; (2) the agreement provides for arbitration in the territory of a Convention signatory; (3) the agreement arises out of a commercial legal relationship; and, (4) a party to the agreement is not an American citizen. Id. at 339. If the foregoing "requirements are met, the

---

[4] Defendants did not assert in their Notice of Removal diversity subject matter jurisdiction under 28 U.S.C. § 1332.

Convention requires the district court [] to order arbitration, . . . unless it finds that said agreement is null and void, inoperative or incapable of being performed." Id. (quotations omitted).

Plaintiffs' claims against the foreign insurers are undisputedly subject to arbitration under the Convention. Hannover and Certain Underwriters are not American citizens. The insurance policies arise out of a commercial legal relationship and contain a written arbitration agreement that provides for arbitration in New York, which is in the territory of the United States, a Convention signatory. Therefore, plaintiffs' claims against Hannover and Certain Underwriters will proceed in arbitration in accordance with the applicable arbitration clause.

On the other hand, plaintiffs' claims against the domestic insurers do not satisfy the traditional criteria for ordering arbitration under the Convention. Although the insurance contracts between plaintiffs and the domestic insurers fit the first three criteria for compelling arbitration under the Convention, the parties to those contracts are all America citizens. Therefore, plaintiffs cannot be compelled by the Convention to arbitrate their claims against the domestic insurers.

Although the Convention does not apply to plaintiffs' claims against the domestic insurers by its terms, the domestic insurers argue that they can use the foreign arbitration clause in plaintiffs' contracts with Hannover and Certain Underwriters to compel plaintiffs to arbitrate their claims against the domestic insurers. The domestic insurers argue that, even as nonsignatories to the contracts between plaintiffs and Hannover and Certain Underwriters, they have the right to compel arbitration of plaintiffs' claims against them because: (1) plaintiffs allege similar improper activity against both the signatory foreign insurers and the nonsignatory domestic insurers in that they all improperly failed to pay amounts due under the insurance policy; and, (2) the results of the

arbitration between plaintiffs and the foreign insurers may impact any pending court action between plaintiffs and the domestic insurers.

Generally, there is "a strong federal policy in favor of arbitration, and any doubts about the scope of an agreement are to be resolved in favor of arbitration." Palmer v. Ventures LLC v. Deutsche Bank AG, 254 Fed. Appx. 426, (5th Cir. 2007) (citing Safer v. Nelson Fin. Grp., Inc., 422 F.3d 289, 294 (5th Cir. 2005)). However, a nonsignatory may "invoke an arbitration agreement only in rare circumstances." Id. (citing Westmoreland v. Sadoux, 299 F.3d 462, 465 (5th Cir. 2002)). The domestic insurers argue that they should be able to compel arbitration under the theory of equitable estoppel.

In Grigson v. Creative Artists Agency L.L.C., 210 F.3d 524, 527 (5th Cir. 2000), the United States Court of Appeals for the Fifth Circuit held that a nonsignatory may compel arbitration under an equitable estoppel theory in two circumstances:

> *First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory.* When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate. *Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.*

(emphasis in original) (quoting MS Dealer Serv. Corp. v. Franklin, 177 F.32d 942, 947 (11th Cir. 1999)). Each case turns on its own facts, and "[t]he linchpin for equitable estoppel is

equity—fairness." Id. at 527-28. Whether to use equitable estoppel to permit a nonsignatory to compel arbitration is within the district court's discretion. Id. at 528.

The first Grigson situation does not apply in this case because plaintiffs' claims against the domestic insurers do not rely on existence of plaintiffs' contracts with the foreign insurers. The insurance policy specifies that plaintiffs have a separate contracts with each insurer. Plaintiffs filed suit against the domestic insurers pursuant to the terms of each individual contract that they have with the domestic insurers. Thus, plaintiffs do not directly rely on the terms of the written agreements containing the arbitration clause that arises under the Convention in asserting their claims against the nonsignatories to those contracts, i.e. the domestic insurers.

The second Grigson scenario, a signatory to the contract containing an arbitration clause raising allegations of substantially interdependent and concerted misconduct by both the nonsignatory and a signatory to the contract, is present. Although the insurance policy states that plaintiffs have separate contracts with each insurer, there is one insurance policy document that sets forth the terms and conditions of the coverage on the risk. The operative policy language is identical as to all of the insurers, foreign and domestic. The policy provides that all claims are to be reported to AmRisc Claims Department and adjusted by CJW and Associates.[5] Indeed, plaintiffs allege in their complaint that the insurance contracts all follow "the same terms, conditions, limitations and exclusions" and that the defendants together refused to pay the full amounts due under the policy, "thereby breaching their obligations as set forth in the Policy." There are no allegations that one specific insurer breached the terms of the policy. Instead, plaintiffs allege that they insurers all

[5] The policy allows each insurer to elect to use its own adjustors, but there is no allegation that this occurred this case.

breached the terms of the policy together through the shared adjustor. In this dispute, the coverage arguments as to all insurers are going to be identical, and the plaintiffs' evidence as to the damage to the property and the alleged breach of the insurance policy is going to be identical as to all insurers. Allowing plaintiffs to proceed in court against the domestic insurers while simultaneously proceeding in arbitration against the foreign insurers would render meaningless the arbitration clause and thwart the intentions of the Convention and the federal policy in favor of arbitration. Further, plaintiffs' contracts with the domestic insurers contain arbitration clauses that are identical to the arbitration clauses in plaintiffs' contracts with Hannover and Certain Underwriters.[6] When the parties negotiated the insurance policy, it was contemplated that all disputes against all of the insurers would be determined in one arbitration. Thus, the plaintiffs' claims against the signatories and nonsignatories to the foreign arbitration clauses are substantially interdependent, and equitable estoppel is warranted. Plaintiffs must proceed in arbitration against all of the defendants.

Because this court has determined that the domestic insurers can utilize the theory of equitable estoppel to compel plaintiffs to arbitrate their claims against the domestic insurers by the terms of an arbitration agreement that is subject to the Convention, this court has original subject matter jurisdiction pursuant to § 203 over plaintiffs' claims against the domestic insurers. As such, plaintiffs' motion to remand is DENIED.

---

[6] Plaintiffs argue that the arbitration agreements in their contracts with the domestic insurers are unenforceable by operation of La. Rev. Stat. § 22:868 and the McCarran-Ferguson Act. Defendants contend that La. Rev. Stat. § 22:868 does not apply. Because this court has found that the domestic insurers can invoke the arbitration clauses in the foreign insurers' contracts with plaintiffs under the Convention through equitable estoppel, it is unnecessary to determine whether plaintiffs' arbitration agreements with the domestic insurers are enforceable.

## III. Staying this Litigation

Once the court orders arbitration under the Convention, the parties may seek a stay of the litigation under 9 U.S.C. § 3, a provision of the domestic FAA. Todd v. Steamship Mut. Underwriting Ass'n (Bermuda) Ltd., 601 F.3d 329, 332 (5th Cir. 2010). Section 3, Title 9 of the United States Code provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C.A. § 3. Thus, a stay is warranted. Defendants' motion to stay is GRANTED, and this matter is hereby STAYED pending arbitration.

## CONCLUSION

**IT IS HEREBY ORDERED** that the Plaintiffs' Motion to Remand Claims Against the Domestic Insurers (Doc. #7) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Stay Litigation Pending Arbitration (Doc. #4) is **GRANTED**.

**IT IS FURTHER ORDERED** that this matter is **STAYED** pending arbitration. The parties shall notify the court when the arbitration is concluded.

New Orleans, Louisiana, this 24th day of August, 2018.

**MARY ANN VIAL LEMMON**
**UNITED STATES DISTRICT JUDGE**