UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| PORT CARGO SERVICE, LLC, AND MICHOUD BLVD. COMMERCE CENTER, LLC | * * * | CIVIL ACTION NO. 18-cv-06192 |
| | * | SECTION: S |
| VERSUS | * * | |
| | * | |
| CERTAIN UNDERWRITERS AT LLOYD'S, LONDON; INDIAN HARBOR INSURANCE COMPANY; QBE SPECIALTY INSURANCE COMPANY; STEADFAST INSURANCE COMPANY; GENERAL SECURITY INDEMNITY COMPANY OF ARIZONA; UNITED SPECIALTY INSURANCE COMPANY; LEXINGTON INSURANCE COMPANY; PRINCETON EXCESS AND SURPLUS LINES INSURANCE COMPANY; and INTERNATIONAL INSURANCE COMPANY OF HANNOVER SE | * * * * * * * * * * * * * | JUDGE: MARY ANN VIAL LEMMON<br><br>MAG. DIV.: 4<br><br>MAG. JUDGE: KAREN WELLS ROBY |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION
OR, ALTERNATIVELY, CERTIFICATION FOR INTERLOCUTORY APPEAL**

Port Cargo Service, LLC and Michoud Blvd. Commerce Center, LLC (collectively, "Port

Cargo") respectfully request reconsideration of this Court's Order and Reasons (Rec. Doc. 21)

("Order") denying Port Cargo's Motion to Remand Claims against the Domestic Insurers (Rec.

Doc. 7) ("Motion to Remand") and granting Defendants' Motion to Stay Litigation Pending

Arbitration (Rec. Doc. 4) ("Motion to Stay") and compelling Port Cargo to arbitrate its claims

against the domestic insurers.[1] Alternatively, it is requested that the Court should certify its Order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

In the Order, the Court held that Port Cargo would be required to arbitrate its claims against the domestic insurers on the basis of an equitable estoppel theory pursuant to *Grigson v. Creative Artists Agency L.L.C.* We suggest, however, that the Court did not consider that *Grigson* was subsequently modified by the United State Supreme Court in *Arthur Andersen LLP v. Carlisle* and the Fifth Circuit in *Crawford Professional Drugs Inc. v. CVS Caremark Corp*. Had the Court considered these cases, it may not have ordered Port Cargo to arbitrate its claims against the domestic insurers. Therefore, we suggest that reconsideration is appropriate and necessary.

In *Crawford*, the Fifth Circuit made clear that "prior decisions allowing nonsignatories to compel arbitration based on federal common law, rather than state contract law, such as *Grigson*, have been modified to conform with [the United States' Supreme Court decision in] *Arthur Andersen*," which "instructs that a non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on . . . equitable estoppel ***if the relevant state contract law so permits***." (emphasis added).

Pursuant to *Arthur Andersen* and *Crawford*, the Court should have considered whether Louisiana law would permit a non-signatory to an arbitration agreement in an insurance policy to compel a signatory to that agreement to arbitrate based on equitable estoppel. It is well settled in Louisiana law that an arbitration provision in an insurance policy is against public policy and not enforceable. Louisiana's strong public policy and statute prohibits mandatory arbitration of insurance policy disputes. Accordingly, applying equitable estoppel in such cases would violate

---

[1]     Port Cargo does not in this motion challenge the Court's Order in so far as it compels Port Cargo to arbitrate its claims against the two foreign insurers, Hannover and Lloyd's. The domestic insurers, who are American citizens, are the seven remaining defendant insurers.

{N3651071.4}

the traditional notion embedded in Louisiana's state contract law that courts cannot use estoppel to enforce illegal contracts. *Crawford* is controlling, and the Court should accordingly revise its Order forcing Port Cargo to arbitrate its claims against the domestic insurers.

Alternatively, we suggest that the Court should certify its Order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b), because the Order involves (1) a controlling question of law (2) as to which there is substantial ground for difference of opinion and (3) an immediate appeal from the Order will materially advance the ultimate termination of the litigation.

## BACKGROUND

The Court is well versed with the facts of this case. Port Cargo sued each of its nine insurers[2] in Civil District Court for the Parish of Orleans for breaching the insurance contracts and bad faith in violation of La. R.S. §§ 22:1892 and 22:1973.[3]

Thereafter, Defendants removed the case to this Court alleging that the Court had original subject matter jurisdiction pursuant to 9 U.S.C. §§ 202, 203, and 205, because the insurance policies have an arbitration clause covered by the Convention on Recognition and Enforcement of Foreign Arbitral Awards (the "Convention").[4] Defendants also filed a motion to stay the litigation

---

[2]     The nine insurers are: (1) Certain Underwriters at Lloyd's, London Subscribing to Certificate No. AMR-36298-02 ("Lloyd's"), (2) Indian Harbor Insurance Company ("Indian Harbor"), (3) QBE Specialty Insurance Company ("QBE"), (4) Steadfast Insurance Company ("Steadfast"), (5) General Security Indemnity Company of Arizona ("General Security"), (6) United Specialty Insurance Company ("United Specialty"), (7) Lexington Insurance Company ("Lexington"), (8) Princeton Excess and Surplus Lines Insurance Company ("Princeton"), and (9) International Insurance Company of Hannover SE ("Hannover") (all, collectively referred to herein as "Insurers" or "Defendants").

[3]     Rec. Doc. 1-1, Petition for Breach of Contract and Damages.

[4]     Rec. Doc. 1, Notice of Removal.

pending arbitration arguing that the matter should be referred to arbitration as to all of the insurers under the Convention because Hannover and Lloyd's are foreign insurers.[5]

In response, Port Cargo filed a Motion to Remand the claims against the domestic insurers and an Opposition to the Motion to Stay.[6] Port Cargo asserted that since it signed separate policies and separate contracts with each defendant insurer, the claims against the domestic insurers— who are American citizens—do not fall under the Convention; thus, arbitration is inappropriate as to them. Further, because Defendants alleged no other basis for subject matter jurisdiction, Port Cargo argued that the Court should remand all claims against the seven domestic insurers.

After oral argument, on August 24, 2018, the Court entered its Order denying Port Cargo's Motion to Remand, granting Defendants' Motion to Stay, and compelling Port Cargo to arbitrate all of its claims against *both* the foreign and domestic insurers.[7] First, the Court found that Port Cargo has a separate contract with each of the nine insurers because the policy language (as the law between the parties) specifies that Port Cargo has separate insurance contracts with each insurer.[8] Second, the Court found that Port Cargo *cannot* be compelled by the Convention to arbitrate its claims against the domestic insurers because the parties to those contracts are all American citizens, and thus the claims against the domestic insurers do not satisfy the criteria for ordering arbitration under the Convention.[9] Despite these findings, the Court found that the domestic insurers could compel arbitration under the theory of equitable estoppel established in *Grigson*.[10]

---

[5]     Rec. Doc. 4, Motion to Stay.
[6]     Rec. Doc. 7, Motion to Remand; Rec. Doc. 8, Opposition to Motion to Stay.
[7]     Rec. Doc. 21, Order and Reasons.
[8]     *Id*. at p. 6.
[9]     *Id*. at p. 11.
[10]    *Id*. at pp. 12-14.

{N3651071.4}

The Court explained in *Grigson* the Fifth Circuit held that a non-signatory may compel arbitration under an equitable estoppel theory in two circumstances: when a signatory to the contract containing an arbitration clause (1) relies on the terms of the contract containing the arbitration clause in asserting its claims against the non-signatories to those contracts or (2) raises allegations of substantially interdependent and concerted misconduct by both the non-signatory and a signatory to the contract.[11] The Court found that the "first *Grigson* situation does not apply in this case because [Port Cargo's] claims against the domestic insurers do not rely on existence of plaintiffs' contracts with the foreign insurers."[12] The Court, however, found that the second *Grigson* scenario was present and that the domestic insurers who were not signatories to the arbitration agreements between the foreign insurers and Port Cargo (which were subject to the Convention) could use equitable estoppel to compel Port Cargo to arbitrate its claims against the domestic insurers.[13]  The Court stated that allowing Port Cargo to proceed in court against the domestic insurers would render meaningless the arbitration against the foreign insurers and thwart the intentions of the Convention and the federal policy in favor of arbitration.[14]

In a footnote, the Court noted that Port Cargo argued that the arbitration agreements in their contracts with the domestic insurers were unenforceable pursuant to La. R.S. § 22:868 and the McCarran-Ferguson Act, but stated that because the Court had found that the domestic insurers can invoke the arbitration clauses in the foreign insurers' contracts under the Convention through equitable estoppel, it was unnecessary to determine whether Port Cargo's arbitration agreements with the domestic insurers are enforceable.[15]

---

[11]     *Id*. at p. 12.
[12]     *Id*. at p. 13.
[13]     *Id*. at pp. 13-14.
[14]     *Id*. at p. 14.
[15]     *Id*.
{N3651071.4}

As demonstrated below, the Court erred by failing to apply controlling law that mandates that equitable estoppel cannot be applied to compel arbitration of Port Cargo's claims against the domestic insurers because Louisiana law prohibits enforcement of arbitration clauses in insurance policy disputes.[16] Therefore, we ask that the Court reconsider its Order, deny the domestic insurers' Motion to Stay, and grant Port Cargo's Motion to Remand the case to state court.

## LAW AND ARGUMENT

I.    **The Court did not consider and apply controlling decisions by the United States Supreme Court and the Fifth Circuit, which required that the Court consider and apply Louisiana law that prohibits arbitration agreements in insurance contracts and bars application of the equitable estoppel theory relied upon by the Court.**

A.    **Standard of Review**

A motion for reconsideration filed within twenty-eight (28) days of entry of an order is considered a motion to alter or amend a judgment under Rule 59(e) of the Federal Rules of Civil

---

[16]    For the reasons stated in Port Cargo's prior memorandums (Rec. Docs. 7-1, 8), Port Cargo also maintains its contention that the Court erred in its finding that allowing Port Cargo to proceed in court against the domestic insurers would render meaningless the arbitration against the foreign insurers and thwart the intentions of the Convention and the federal policy in favor of arbitration. Because Port Cargo has separate contracts with each of the nine insurers, any decision involving any one insurer, whether in arbitration or litigation, is not binding on another. Accordingly, while having separate arbitration and court proceedings may be inefficient, the claims are completely independent and separable. Therefore, equitable estoppel does not apply under *Grigson. See Realty Tr. Grp., Inc. v. Ace Am. Ins. Co.*, No. 1:07CV573-HSO-JMR, 2007 WL 4365352, at *4 (S.D. Miss. Dec. 11, 2007) (finding that the second *Grigson* test was inapplicable, where, like Port Cargo, even though there was one policy document and the claims for breach of contract and bad faith were virtually identical as to each defendant insurer, each defendant insurer signed on for a separate percentage of the risk pursuant to the policy endorsements. Therefore, the court found that the defendant insurers were not intertwined in the fashion contemplated by *Grigson* because the arbitration provisions subject to the Convention were contained in two policy provisions that were separate from those applicable to the domestic insurer defendants).

Further, because the policy contracts with the domestic insurers *contained* arbitration clauses, independent of the policy contracts with the foreign insurers that also had arbitration clauses (which were unenforceable under Louisiana law), the Court should not have considered or applied equitable estoppel which applies only where there is a non-signatory to an arbitration agreement.

Procedure.[17] A motion for reconsideration must "clearly establish either a manifest error of law or fact or must present newly discovered evidence."[18] The Court may grant relief under Rule 59(e) "if an intervening change in controlling law occurs; if new evidence becomes available; or to correct a clear error [of] law or prevent manifest injustice."[19] The Court has "considerable discretion" in deciding whether to grant a Rule 59(e) motion.[20] However, "[a] district court abuses its discretion if it bases its decision on an erroneous view of the law or on a clearly erroneous assessment of the evidence."[21]

This motion is brought within twenty-eight (28) days of the Court's Order issued on August 24, 2018.[22] We suggest that in granting Defendants' Motion to Stay and compelling arbitration of the domestic insurer claims and denying Port Cargo's Motion to Remand, the Court did not apply critical legal precedent governing purely legal matters raised in the briefing in these motions.

**B.**   **The Court erred in compelling Port Cargo to arbitrate its claims against the domestic insurers based on the *Grigson* equitable estoppel theory because it failed to consider and apply the controlling United States Supreme Court and Fifth Circuit cases which modified *Grigson* to require courts to consider relevant state law when applying equitable estoppel.**

The Court relied entirely on the *Grigson* equitable estoppel theory to compel Port Cargo to arbitrate its claims against the domestic insurers, finding that "the domestic insurers can invoke the arbitration clauses in the foreign insurers' contracts with [Port Cargo] under the Convention through equitable estoppel."[23] The Court, in applying the doctrine of equitable estoppel to compel arbitration as to the domestic insurers, did not consider the United States Supreme Court decision

---

[17]    *Fick v. Exxon Mobil Corp.*, No. CV 13-6608, 2016 WL 483198, at *1 (E.D. La. Feb. 8, 2016).

[18]    *Id.* (quoting *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005)).

[19]    *Id.* (quoting *McGillivray v. Countrywide Home Loans, Inc.*, 360 F. App'x 533, 537 (5th Cir. 2010)).

[20]    *Id.* (quoting *Hale v. Townley*, 45 F.3d 914, 921 (5th Cir. 1995)).

[21]    *Ross*, 426 F.3d at 763 (internal quotation omitted).

[22]    Rec. Doc. 21, Order and Reasons.

[23]    *Id.* at p. 14.

{N3651071.4}

in *Arthur Andersen* and the Fifth Circuit decision in *Crawford*, which specifically modified *Grigson* and prohibit arbitration of this insurance policy dispute.

In *Arthur Andersen LLP v. Carlisle*, the United State Supreme Court reversed the Sixth Circuit's conclusion that "nonparties to a contract are categorically barred from § 3 relief," holding instead that "traditional principles of ***state law*** allow a contract to be enforced by or against nonparties to the contract through [various theories including] ... estoppel."[24] The Fifth Circuit considered *Arthur Andersen* in *Crawford Professional Drugs, Inc. v. CVS Caremark Corp.*, noting that state law applies when considering estoppel in the arbitration context.[25] The Fifth Circuit made clear that *Grigson* was no longer good law on this point: "***prior decisions allowing nonsignatories to compel arbitration based on federal common law, rather than state contract law, such as Grigson, have been modified to conform with Arthur Andersen,*** " which "*instructs that a **non-signatory to an arbitration agreement may compel a signatory to that agreement to arbitrate based on . . . equitable estoppel if the relevant state contract law so permits***."[26]

*Grigson* is the seminal Fifth Circuit case on equitable estoppel involving claims against non-signatory defendants, upon which the Court based its Order. But as stated in *Arthur Andersen*, *Grigson* does not apply if inconsistent with Louisiana law.[27] Indeed, in the line of cases post-*Arthur Andersen*, such as *Crawford*, courts have consistently confirmed *Arthur Andersen*'s modification and have only applied the theory of equitable estoppel to compel non-signatories to

---

[24]     556 U.S. 624, 631 (2009) (citation and quotation marks omitted).
[25]     48 F.3d 249, 255 (5th Cir. 2014).
[26]     *Id.* at 261–62 (emphasis added) (citing *Arthur Andersen*, 556 U.S. 624, 129 (2009)); *see id.* at 255, 257.
[27]     *Id.*

arbitrate after it found that the relevant state law would so permit.[28] Courts have applied *Arthur Andersen* and evaluated the relevant state law regardless whether the non-signatory is invoking an arbitration agreement under the FAA or the Convention.[29]

Accordingly, the Court should not have applied the theory of equitable estoppel without determining whether Louisiana law so permits as required by *Arthur Andersen* and *Crawford*.

### 1. Louisiana state law, not New York law, applies.

As explained in detail in Port Cargo's opposition to the Motion to Stay, Louisiana state law applies because, even though the contracts with the domestic insurers contain a New York choice of law provision, these choice of law agreements are ***void*** as against Louisiana's strong public policy and state law prohibiting choice of law provisions ***and*** mandatory arbitration provisions in insurance policies delivered or issued for delivery in Louisiana.[30] Conflicts of law rules instruct the Court to look to Louisiana's public policy, rather than New York's, because, absent the choice of law provision, Louisiana law is the state law that would normally apply due to Louisiana's significant contacts with the parties, properties, and policies at issue.[31]

---

[28] *See e.g.*, *USHealth Grp., Inc. v. South*, 636 F. App'x 194 (5th Cir. 2015) (citing *Arthur Andersen* and declining to apply *Grigson* where inconsistent with Texas law); *Donaldson Co. v. Burroughs Diesel, Inc.*, 581 F.3d 726, 732 (8th Cir. 2009) (citing *Arthur Andersen* and declining to apply *Grigson* where inconsistent with Mississippi law); *Wise v. Zwicker & Assocs.*, PC, No. 5:12-CV-01653, 2013 WL 1195555, at *7 (N.D. Ohio Mar. 22, 2013) (citing *Arthur Andersen* and declining to apply *Grigson* where inconsistent with Utah law).

[29] *Growtech Partners v. Accenture LLP*, 118 F.Supp.3d 920, 946 n. 4 (S.D.Tex.2015) (citing *Arthur Andersen* and declining to apply *Grigson* to allow a non-signatory to invoke an arbitration agreement under the Convention where inconsistent with Texas law).

[30] *See* La. Civ. Code art. 3540; La. R.S. 22:868; Rec. Doc. 8, Memorandum in Opposition to Motion to Stay, pp. 9-19.

[31] *See* La. Civ. Code art. 3537; Rec. Doc. 8, Memorandum in Opposition to Motion to Stay, pp. 9-13.

2.      **Louisiana law prohibits mandatory arbitration of insurance disputes for policies delivered or issued for delivery in Louisiana.**

The Louisiana statute (La. R.S. § 22:868),[32] which prohibits mandatory arbitration of insurance disputes, and the relevant jurisprudence declaring that forcing Louisiana residents to arbitrate insurance disputes is against public policy, applies here because the policies were delivered or issued for delivery in Louisiana.[33] Louisiana courts have consistently held that compulsory arbitration clauses in contracts of insurance are unenforceable and prohibited as a matter of ***public policy*** because they operate to deprive Louisiana courts of jurisdiction of the action against the insurer.[34] Further, such provisions deny Louisiana citizens of free access to its courts, a right guaranteed by the State's constitution.[35] Therefore, whether the domestic insurers have arbitration provisions in their contracts and/or the domestic insurers seek to enforce arbitration under the theory of equitable estoppel, the arbitration agreements are invalid pursuant to La. R.S. § 22:868(A)(2).

3.      **Louisiana state contract law does not permit application of equitable estoppel to circumvent Louisiana's strong public policy and statute prohibiting mandatory arbitration of insurance disputes.**

As explained above, pursuant to *Arthur Andersen* and *Crawford,* the Court may use equitable estoppel to compel a signatory to arbitrate its claims against a non-signatory only if the

---

[32]    La. R.S. § 22:868 was formerly designated § 22:629.

[33]    *See* Rec. Doc. 8, Opposition to Motion to Stay, pp. 9-19.

[34]    *See* La. Const. Art. I, § 22; La. R.S. 22:868(A)(2); *Hobbs v. IGF Ins. Co.,* 02-26 (La. App. 3d Cir. 10/23/02); 834 So. 2d 1069, 1071; *Green Project, Inc. v. Evanston Ins. Co.,* No. CV 07-7744, 2008 WL 11355074, at \*2 (E.D. La. Oct. 8, 2008); *Doucet v. Dental Health Plans Mgmt. Corp.,* 412 So. 2d 1383, 1384 (La. 1982); *Dore v. Shelter Mut. Ins. Co.,* 13-0545 (La. App. 1st Cir. 11/1/13), 2013 WL 5915141, at \*2 n.2 (unpublished); *Courville v. Allied Professionals Ins. Co.,* 16-1354 (La. App. 1st Cir. 4/12/17); 218 So.3d 144, 148; *Macaluso v. Watson,* 171 So. 2d 755, 757 (La. App. 4th Cir. 1965); *McDermott Int'l, Inc. v. Lloyds Underwriters of London,* 120 F.3d 583, 585–86 (5th Cir. 1997); *see also* Rec. Doc. 8, pp. 15-16.

[35]    *Supra* note 34.

{N3651071.4}

relevant state law so permits. There is no theory or principle in Louisiana's contract law, however, that would support using the doctrine of equitable estoppel to circumvent Louisiana's strong public policy and violate one of its statutes. Further, there is no case in Louisiana, state or federal, in which a court has used the non-signatory line of cases to compel arbitration, where the "non-signatories" (the domestic insurers) are actually signatories to arbitration agreements, which are void as against Louisiana law and public policy, albeit non-signatories to the contracts containing arbitration agreements under the Convention.

Applying equitable estoppel in such cases would also violate the traditional notion embedded in Louisiana's state contract law that courts will not enforce illegal contracts.[36] Courts have uniformly refused to invoke any "estoppel" against a party to a contract who challenges the enforcement of the contract on grounds that it is against public policy or contrary to law.[37] In *Kennedy v. Johnson Lumber Co.*, the court held that "[a]n estoppel can never be invoked in aid of contract which is expressly prohibited by a constitutional or statutory provision."[38] The court explained that "when a contract is in contravention of public policy, is contrary to the public good, the individual interests of the immediate parties are subordinated to the superior concern of the public in general, so that, so long as the condemnatory vice remains in it, there is nothing that the

---

[36]   *See* La. Civ. Code. arts. 7, 1968, 2030; *State v. Pelas*, 99-0150 (La. App. 1st Cir. 11/5/99), 745 So. 2d 1215, 1217–18 ("Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity."); *Inter-Continental Promotions, Inc. v. Miami Beach First Nat'l Bank*, 441 F.2d 1356, 1361 (5th Cir. 1971) (in the event of a contract for an unlawful purpose, "the law will leave the parties where it finds them, and no relief shall be granted because of the dominant public interest").

[37]   *Kennedy v. Johnson Lumber Co.,* 33 So. 2d 558, 563 (La. App. 2d Cir. 1947); *Sonnier v. Fris*, 58 So. 2d 393, 395 (1952); *Boxwell v. Dep't of Highways*, 14 So. 2d 627, 633 (1943); *Cilluffa v. Monreale Realty Co*., 24 So. 2d 606, 609 (1945).

[38]   33 So. 2d at 563.

particular parties to the contract may do which will make it otherwise than it was ab initio—void as against public policy, and therefore non-enforceable by the courts."[39]

Here, the Court held that "the domestic insurers can utilize the theory of equitable estoppel to compel [Port Cargo] to arbitrate its claims against the domestic insurers by the terms of an arbitration agreement that is subject to the Convention" without considering whether Louisiana law permits the application of equitable estoppel in such cases.[40] Port Cargo submits that this finding is incorrect in light of the Supreme Court's decision in *Arthur Andersen*, which specifically instructs courts to look to the relevant state law to determine the applicability of equitable estoppel. Applying equitable estoppel in a case like this would turn Louisiana state contract law on its head, essentially giving effect to what would otherwise be an illegal contract by using equitable estoppel to invoke an identical arbitration agreement under the Convention, which does not apply to the seven domestic insurers who are all American citizens. Accordingly, the Court should reconsider its Order and find that the claims against the domestic insurers are not subject to arbitration.

### C. Since equitable estoppel cannot be used to compel arbitration of the domestic insurers' claims, the Court should remand all claims against the domestic insurers.

If the Court reconsiders its Order and finds that the claims against the domestic insurers are not subject to arbitration, then only the two foreign insurers subject to the Convention will be referred to arbitration. Therefore, the only claims remaining to be litigated before this Court would be the non-Convention, state-law claims against the domestic insurers.[41] In such a scenario, the

---

[39] *Id.*
[40] Rec. Doc., Order and Reasons, p. 14.
[41] As explained above, while the seven domestic insurers' contracts ostensibly contain arbitration provisions, compulsory arbitration provisions in insurance contracts delivered in Louisiana are void as a matter of public policy because they deprive Louisiana courts of jurisdiction over actions against insurers. La. R.S. § 22:868(A)(2).

{N3651071.4}

Court should decline to exercise supplemental jurisdiction over those remaining claims and remand the state-law claims against the seven domestic insurers.[42]

## II.    Alternatively, this Court should certify its Order for immediate appeal.

Alternatively, if this Court declines to alter its Order compelling Port Cargo to arbitrate its claims against the domestic insurers, this Court should certify its Order for immediate interlocutory appeal. Pursuant to 28 U.S.C. § 1292(b), a district court can certify a judgment for immediate interlocutory appeal when the court is "of the opinion that such order involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and that [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation."[43] Here, all three elements exist for certification pursuant to § 1292(b).

First, the Court's Order presents controlling issues of law. Here, the pivotal issue in this Court's Order is whether Louisiana state law allows non-signatories (domestic insurers) to an arbitration agreement to use the theory of equitable estoppel to compel signatories (Port Cargo) to an arbitration agreement to arbitrate the claims against the non-signatories (domestic insurers) where arbitration of the non-signatories' claims violates Louisiana's strong public policy and state law prohibiting mandatory arbitration of insurance disputes for policies delivered in Louisiana.

---

[42]    *See* Rec. Doc. 21, Order and Reasons, p. 10; *ESAB Group, Inc. v. Arrowood Indemnity Co*., No. 4:09-cv-1701, 2011 WL 13176143 (D. S.C. Feb. 23, 2011), *aff'd sub nom., ESAB Grp., Inc. v. Zurich Ins. PLC*, 685 F.3d 376 (4th Cir. 2012); *see also Cleanese Corp. v. The BOC Grp. PLC*, 2006 WL 3513633 (N.D. Tex. Dec. 6, 2006) (quoting *Beiser*, and finding that once claims are determined not to be arbitrable under the Convention, remand to state court is appropriate); *Realty Trust Grp. Inc*, 2007 WL 4365352 (finding that once claims are deemed not to be subject to arbitration under the Convention, the court should determine whether it is appropriate to exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367).

[43]    28 U.S.C. § 1292(b); *see also Swint v. Chambers Cnty. Comm'n*, 514 U.S. 35, 47 (1995).

This is a purely a legal issue that has yet to be addressed by this Court or the Fifth Circuit or any other Louisiana district court and is thus ripe for certification.

Additionally, this issue of law controls Port Cargo's claims because it will determine the course of litigation. Courts have found no consistent definition of when an issue of law is "controlling," but one court has found an issue of law controlling when it may "have some impact on the course of the litigation."[44] It cannot be disputed that whether Louisiana law permits application of equitable estoppel to compel arbitration in these circumstances is a controlling issue since the issue will determine whether the claims must be litigated or arbitrated. Thus, the issue presented here is a controlling issue of law.

Second, substantial ground for difference of opinion exists concerning this issue. The court in *Meche v. Richard* found this requirement satisfied when the parties thereto disputed the issue sought to be appealed.[45] Here, this standard is amply satisfied, as Defendants maintain that all of the claims against both the domestic insurers and foreign insurers must be arbitrated, while Port Cargo disagrees. Thus, substantial ground for difference of opinion exists here.

Third, granting an immediate appeal will ultimately serve the interests of efficiently terminating this matter. This third element "is closely tied to the requirement that the order involve a controlling question of law."[46] Here, if an immediate appeal is granted and the Fifth Circuit reverses, the claims against the domestic insurers can proceed to litigation. In contrast, if an immediate appeal is not granted, the claims against the domestic insurers will be sent to arbitration and these very issues may be re-litigated when the arbitration is completed and the stay is lifted. The interest of terminating this matter efficiently while avoiding the "burden of future

---

[44]    *Ryan v. Flowserve Corp.*, 444 F. Supp. 2d 718, 723 (N.D. Tex. 2006).
[45]    CIV. A. 05-0385, 2007 WL 3120017 at 2 (W.D. La. Oct. 18, 2007).
[46]    *Tesco Corp. v. Weatherford Intern., Inc.*, 722 F. Supp. 2d 755, 767 (S.D. Tex. 2010).

{N3651071.4}

proceedings," then, would be served by an immediate appeal of the Order granting the Motion to Stay and compelling arbitration and denying the Motion to Remand.

Accordingly, this matter is ripe for certification for immediate interlocutory appeal pursuant to § 1292(b). Port Cargo requests that this Court certify the Order for immediate interlocutory appeal.

## CONCLUSION

For these reasons, Port Cargo requests reconsideration of this Court's Order denying Port Cargo's Motion to Remand and granting Defendants' Motion to Stay and compelling Port Cargo to arbitrate all of its claims against the domestic insurers. Alternatively, Port Cargo requests that this Court certify the Order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b). Port Cargo submits that reconsideration and/or certification is necessary to correct legal errors made in the Court's Order because the basis of the Order, the *Grigson* case, was subsequently modified by a controlling United State Supreme Court case and Fifth Circuit case, which the Court failed to consider and apply.

Respectfully submitted,

  /s/ Edward D. Wegmann
Edward D. Wegmann (#13315)
Allison B. Kingsmill (#36532)
Jones Walker LLP
201 St. Charles Avenue, 49th Floor
New Orleans, Louisiana  70170
Telephone: (504) 582-8226
Facsimile: (504) 589-8226
dwegmann@joneswalker.com
akingsmill@joneswalker.com

Attorneys for Port Cargo Service, LLC and Michoud
Blvd. Commerce Center, LLC for Count 1 only

  /s/ Harold J. Flanagan
Harold J. Flanagan (#24091)
Ann R. Koppel (#27252)
Sean P. Brady (#30410)
Camille E. Gauthier (#34558)
Flanagan Partners LLP
201 St. Charles Avenue, Suite. 2405
New Orleans, Louisiana  70170
Telephone: (504) 569-0062
Facsimile: (504) 569-0251
hflanagan@flanaganpartners.com

Attorneys for Port Cargo Service, LLC and Michoud
Blvd. Commerce Center, LLC for Counts 2 and 3

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2018, I electronically filed the foregoing pleading

by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


  /s/     Edward D. Wegmann

{N3651071.4}

16